IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO.: 3:08-cr-142 |
| | ) | JUDGES PHILLIPS/SHIRLEY |
| | ) | |
| DAVID C. KERNELL | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPUTER FRAUD COUNT AND ITS FELONY ENHANCEMENT

Comes the Defendant, DAVID C. KERNELL, by and through counsel, North Carolina v. Pearce, 395 U.S. 711, 717 (1969), the Fifth Amendment to the U.S. Constitution, and having moved this Court for an order dismissing Count 3 of the Superseding Indictment, respectfully submits his memorandum in support. Count 3 alleges that Mr. Kernell "did aid and abet" "aiding and abetting" duplicate § 1030 violations and a state law tort. In addition, not only is the wrong state's tort law alleged to have been violated, but the government is impermissibly asserting a civil action in tort on behalf of an individual citizen. Count 3 contorts logic and language in order to make a misdemeanor into a felony, and it must be dismissed.

I.    INTRODUCTION

Count 3 in the Superseding Indictment corresponds to Count 1 in the original indictment and again charges a violation of 18 U.S.C. § 1030. The Government has alleged and must prove:

> On or about September 16, 2008, in the Eastern District of Tennessee and elsewhere, defendant DAVID C. KERNELL, in furtherance of the commission of a criminal and tortious act . . . including **aiding and abetting** *other violations of 18 U.S.C. § 1030(a)(2)(C)* (Fraud and Related Activity in Connection with Computers); and tortious invasion of privacy . . . accessed a protected computer [in violation of *18 U.S.C. § 1030(a)(2)(C)*] . . . and did **aid and abet** in same.

[Doc. 21 at Count 3].[1]

---

[1] On February 13, 2009, the government filed a response to Mr. Kernell's motion to dismiss, asserting that Count 3 of the Superseding Indictment "more than adequately states the basis for the offense and the motion to dismiss

## II. COUNT 3 FAILS TO STATE A FELONY OFFENSE.

Count 3 charges a greater punishment than Congress intended and thereby fails to state a punishable offense. Multiple offenses should not be combined into a single count and allowed to transform one another into something more than Congress intended. Charging the felony provision of section 1030 in this case impermissibly writes the misdemeanor violation of section 1030 out of the statute. The felony enhancement must be dismissed.

> *a.* *Count 3 fails to state a felony offense because it is improper to aggregate identical federal misdemeanor provisions into a felony.*

Count 3 charges, in part, a violation of section 1030(a)(2), then seeks a felony enhancement by re-alleging a violation of section 1030(a)(2). Stated differently, Mr. Kernell is charged with unauthorized access, a misdemeanor; but because Mr. Kernell is also charged with committing that misdemeanor in furtherance of unauthorized access, he is charged with a felony.[2] If the enhancement is allowed to stand and Mr. Kernell is convicted, Mr. Kernell will be punished in excess of the punishment prescribed for such conduct.

Rule 7(c)(1) of the Federal Rules of Criminal Procedures requires a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Here, Count 3 fails to allege facts sufficient, if proven, to support a felony violation of section 1030. It is implausible to suggest that Congress would have considered the temporary compromise of a personal Yahoo! e-mail account to warrant a felony punishment because the same alleged act purportedly invaded the accountholder's privacy.

---

should be denied." [Doc. 24] ("[T]his response will address the Defendant's Motion as it can be read to apply to Count 3 of the Superseding Indictment."). This Motion - not Reply – is based on the *new* charge and will allude to the government's preemptory Response only to the extent relevant.

[2] In the government's Response, the government ascribes a meaning to Count 3 not evident on its face. "The Defendant's argument presupposes that the Indictment charges *him* with the subsequent, furthered violations of §1030(a)(2)(C). It does not. Count Three of the Superseding Indictment does not, and need not, say *who* committed the furthered crimes; it need only set out the elements of the enhancing statute." [Doc. 24 at 4]. This Motion addresses the facial sufficiency of Count 3, not the government's understanding or interpretation of it.

Count 3 also fails to state a felony offense because neither Count 3 nor the introductory allegations state or raise the inference either (1) that the first alleged violation of section 1030 was motivated by a desire to commit a further violation or (2) that any alleged motivation was formed in anticipation of a further violation. The Department of Justice's manual on prosecuting computer crimes confirms common sense: the criminal or tortious act used to enhance a penalty must be a *separate* act. "Naturally, the 'in furtherance of any criminal or tortious act' language means an act *other than* the unlawful access to stored communications itself." Computer Crime & Intellectual Property Section, U.S. Dep't of Justice, *Prosecuting Computer Crimes* 82 (Feb. 2007) available at http://www.usdoj.gov/criminal/cybercrime/ccmanual/index.html [hereinafter Dep't of Justice, *Computer Crime*] (citing Boddie v. American Broadcasting Co., 731 F.2d 333, 339 (6th Cir. 1984)).

In addition, the Department notes in its manual that the "in furtherance of" language is used in the Wiretap Act, see 18 U.S.C. § 2511(2)(d), and that at least one appellate court has stated that this enhancement is operative only when a prohibited purpose is the subject's primary motivation or a determinative factor in the subject's motivation. Id. at 82 (citing United States v. Cassiere, 4 F.3d 1006, 1021 (1st Cir. 1993)). When the offender formed the requisite motivation, therefore, is central to whether the "in furtherance of" enhancement applies. The motivation must have been formed in anticipation of committing the additional crime, and sustained long enough to have caused harm. For example, in By-Prod Corp. v. Armen-Berry Co., 668 F.2d 956 (7th Cir. 1982), the Government alleged that the defendant intercepted a telephone call in order to "commit an act that is criminal or tortious under federal or state law." Id. The Seventh Circuit held that even if the Defendant formed the requisite intent to use the intercepted tape recording, his failure to actually use it was what mattered, explaining,

3

> We doubt [] that a tape recording which was never used could form the basis for liability . . . . It would be a dryly literal reading of the statute that found a violation because at the moment of pressing the "on" button a party to a conversation conceived an evil purpose though two seconds later he pressed the "off" button and promptly erased the two seconds of tape without even playing it back. A statute that provides for minimum damages of $1000 per violation must have more substantial objects in view than punishing evil purposes so divorced from any possibility of actual harm.

Id. at 959-60. See also Stockler v. Garrett, 893 F.2d 856 (6th Cir. 1990) (holding that "interception" and not "use" is all that is required to violate Wiretap Act, but failing to abrogate Boddie's holding that the criminal or tortious purpose must be "other than" the interception and/or use). Here, the penalty for a "dryly literal" interpretation is not just a fine, it is imprisonment. The act done in furtherance of the underlying act must be "other than" that underlying act. There is no additional harm to protect against or to warrant additional punishment.

      *b.   Count 3 fails to state a felony offense because aiding and abetting is twice alleged.*

Even assuming it were actually or legally possible to aid and abet aiding and abetting, for the reasons outlined above, Count 3 fails to allege a felony violation of section 1030 because the government problematically alleges that Mr. Kernell "did aid and abet" in "aiding and abetting." See Count 3 ("DAVID C. KERNELL, in furtherance of the commission of a criminal and tortious act . . . including **aiding and abetting** other violations . . . accessed a protected computer. . . and did **aid and abet** in same.").

      *c.   Count 3 fails to state a felony offense because the government did not allege a sufficient privacy interest.*

Count 3 does not indicate how the "information" allegedly obtained by Mr. Kernell was an invasion of privacy. See Cox Broad. Corp. v. Cohn, 420 U.S. 469 (1975) ("The prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the

4

information involved already appears on the public record.").  Here, the individuals depicted in the photographs are the subjects of untold numbers of photo-ops and continue to regularly and voluntarily appear in the national media; it was the national media that first reported the e-mail addresses; and an Alaska court has issued an order requiring Ms. Palin to preserve the correspondence in her private e-mail accounts on the grounds that the emails are public records.[3]

> d.  *Count 3 fails to state a felony offense because tortious invasion of privacy is a personal cause of action and cannot be asserted by the federal government.*

The right of privacy is a personal right and cannot be asserted by anyone other than the person whose privacy has been invaded.  <u>See</u> Restatement (Second) of Torts § 652I (*Personal Character of Right of Privacy*) (1977) ("Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded.");[4] <u>West v. Media General Convergence, Inc.</u>, 53 S.W.3d 640 (Tenn. 2001). Therefore, the federal government cannot assert this cause of action on behalf of a person, even though that person was a politician running for federal office.

III. <u>COUNT 3 IS DUPLICITOUS, BUT THE HARM IS GREATER THAN NORMAL BECAUSE THE GOVERNMENT SEEKS TO MAKE ONE FELONY FROM TWO MISDEMEANORS AND A TORT.</u>

The felony should be dismissed from Count 3 because the government has attempted to create a felony out of a federal misdemeanor.  Section 1030(a)(2) is a misdemeanor unless committed "in furtherance of any criminal or tortious act."  <u>See</u> 18 U.S.C. § 1030(c)(2).  In order to inflate the statutory penalty, Count 3 essentially says that Mr. Kernell accessed a computer

---

[3]Lisa Demer, *State scrambles to gather private e-mails*, Anchorage Daily News (Oct. 10, 2008) http://www.adn.com/palin/story/552319.html; *Judge: Palin must preserve e-mails on private accounts* (Oct. 10, 2008) http://community.adn.com/adn/node/132548.

[4] <u>Id.</u> (Reporter's Note to Comment a: The right of privacy is personal, and not assignable. <u>Memphis Dev. Fdn. v. Factors, Etc., Inc.</u>, 616 F.2d 956 (6 Cir.1980); <u>Hanna Mfg. Co. v. Hillerich & Bradsby Co.</u>, 78 F.2d 763 (5 Cir.1939); <u>Rosemont Enterprises, Inc. v. Random House</u>, 294 N.Y.S.2d 122 (1968)). <u>See also</u> <u>Moreno v. Hanford Sentinel, Inc.</u>, 09 Cal. Daily Op. Serv. 4208 (Cal. Ct. App. 2009); <u>Fibreboard Corp. v. Hartford Accident & Indemnity Co.</u>, 20 Cal.Rptr.2d 376 (Cal. Ct. App. 1993) (holding that corporations, partnerships and public entities were not natural persons and, therefore, could not state cause of action for invasion of privacy).

without authorization in furtherance of accessing a computer without authorization; moreover, at least in part, Count 3 says that Mr. Kernell violated § 1030(a)(2) for the purpose of violating § 1030(a)(2). In sum, the Government has charged that Mr. Kernell committed a crime in furtherance of the same crime. If the felony provision is not removed, Count 3 will remain duplicitous because the same crime is charged multiple times within the same count. Indeed, Mr. Kernell is charged with:

- ➤ violating §1030 in furtherance of violating § 1030
- ➤ aiding and abetting a violation of § 1030 in furtherance of violating § 1030
- ➤ violating § 1030 in furtherance of aiding and abetting other violations of § 1030
- ➤ aiding and abetting a violation of § 1030 in furtherance of aiding and abetting other violations of § 1030

More troubling, though, is that the nature of Count 3's misdemeanor-to-felony duplicity is such that the punishment is not doubled, it is increased exponentially. A felony conviction does not double the penalty of a misdemeanor because in addition to the significantly greater imprisonment term, the collateral consequences of having been branded a felon last a lifetime.

In addition to protecting against subsequent prosecutions for the same offense, the Double Jeopardy Clause protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969); U.S. Const. amend. V. By extension, the Double Jeopardy Clause protects against duplicitous and enhanced punishments for the same offense.

Duplicitous indictments are constitutionally infirm because they obscure the specific charge against a defendant and can violate the defendant's constitutional right to notice of the charges against him. "The ban against duplicitous indictments derives from four concerns: (1) prejudicial evidentiary rulings at trial; (2) the lack of adequate notice of the nature of the charges against the defendant; (3) prejudice in obtaining appellate review and prevention of double jeopardy; and (4) risk of a jury's non-unanimous verdict." United States v. Cooper, 966 F.2d

936, 939 n.3 (5th Cir. 1992) (citations omitted). Duplicitous indictments may prevent jurors from acquitting on a particular charge by allowing them to convict on another charge that is improperly lumped together with another offense in a single count. See United States v. Morse, 785 F.2d 771, 774 (9th Cir. 1986). When two convictions are authorized by separate statutes, the test set out in Blockburger v. United States, 284 U.S. 299 (1932), is used to determine whether Congress specifically authorized cumulative punishment for the same conduct. See Rutledge v. United States, 517 U.S. 292 (1996). Here, we need not even resort to the Blockburger test because the **same** statute is alleged twice within the same count.

Duplicitous indictments must be dismissed because of the potential to prevent appropriate sentencing. See e.g., United States v. Sturdivant, 244 F.3d 71, 77 (2d Cir. 2001). In Missouri v. Hunter, 459 U.S. 359 (1983), the U.S. Supreme Court held that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. at 366 (reasoning that legislatures, not courts, prescribe the scope of punishments). See also United States v. Salameh, 261 F.3d 271, 278 (2d Cir. 2001) (count of indictment resulting in two convictions for use of explosive device under same statute not duplicitous because Congress clearly expressed intent to enhance punishment). No such intent has been expressed here.

On the contrary, "[t]he intent of this subsection [1030(a)(2)] is to protect against the interstate or foreign theft of information by computer, not to give federal jurisdiction over all circumstances in which someone unlawfully obtains information via a computer." Dep't of Justice, *Computer Crime* at 17 (citing S. Rep. No. 104-357). By extension, the intent of the felony enhancement in 1030(c)(2)(B)(ii) is to protect against costly damages and widespread

harm,[5] not to transform all misdemeanors for unauthorized access into felonies, especially when no additional injury has been alleged.

IV.     A STATE LAW CIVIL CAUSE OF ACTION IN TORT IS INSUFFICIENT TO SUPPORT A FEDERAL CRIMINAL FELONY ENHANCEMENT.

> It might be possible to define a tort by enumerating the things that it is not. It is not crime, it is not breach of contract, it is not necessarily concerned with property rights or problems of government, but is the occupant of a large residuary field remaining if these are taken out of the law. But this again is illusory, and the conception of a sort of legal garbage-can to hold what can be put nowhere else is of no help.

*Prosser and Keeton on the Law of Torts* § 1, at 2-3 (5th ed. 1984)

Count 3 charges a greater punishment than Congress intended and thereby fails to state a punishable offense, because it alleges that Mr. Kernell accessed a computer in furtherance of a civil cause of action under the tort law of the State of Tennessee. It is incongruous and constitutionally unfair that the government could use a state common law civil cause of action in tort to transform a federal misdemeanor into a federal felony.  The term "tort" defies easy definition, see *Prosser and Keeton on the Law of Torts* § 1, at 2-3 (5th ed. 1984); BLACK'S LAW DICTIONARY (8th ed. 2004) (defining tort as "a civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another").  Compounding this uncertainty is that Count 3 does not specify or indicate (1) which variety of invasion of privacy is alleged, (2) whose right of privacy Mr. Kernell allegedly invaded, (3) where the act of invasion of privacy supposedly occurred, or (4) how the information allegedly obtained by Mr. Kernell was an invasion of privacy, see discussion *infra* § II.

---

[5] "In 2006, the latest year for which data is available, complaints to the FBI's Internet Crime Complaint Center dipped 10 percent to 207,492, but total losses by individuals rose 8 percent, to $198.4 million." *Cyber Sleuths Zero In as Web Fraud Takes Toll*, NPR, Jan. 20, 2008 available at http://www.npr.org/templates/story/story.php?storyId=18117120; see also John Markoff, *Vast Spy System Loots Computers in 103 Countries*, New York Times (March 29, 2009) (reporting that Canadian researchers have discovered that a group of Chinese hackers had created a "vast electronic spying operation [and] infiltrated . . . . at least 1,295 computers in 103 countries . . . .  to covertly gather information.").

The first problem with charging a "tortious invasion of privacy" under the laws of the State of Tennessee is a choice of law problem. Namely, it is not clear that Tennessee courts would apply Tennessee law had this matter been pursued in state court.[6] One of the first issues that a court must address in such circumstances is whether there is a conflict between the forum state and potentially applicable foreign law. See Hataway v. McKinley, 830 S.W.2d 53, 55 (Tenn. 1992); Kearney v. Salomon Smith Barney, Inc., 137 P.3d 914 (Cal. 2006); Lillegraven v. Tengs, 375 P.2d 139 (Alaska 1962) (holding that creation of tort liability is governed by law of place of injury). There is such a conflict here.

a. *The law on invasion of privacy differs in scope and interpretation among the potentially relevant states.*

In Tennessee, a civil cause of action is available for invasion of privacy,[7] but Tennessee only recognizes a cause of action for intrusion upon seclusion[8] and publicly placing a person in a false light.[9] By comparison, California recognizes causes of action for (1) intrusion into private

---

[6] The U.S. Supreme Court has held that a federal district court is obligated by the rule of Erie Railroad v. Tompkins, 204 U.S. 64 (1938), to apply the substantive law of the state in which the district court sits. This rule extends to the substantive choice of law rules of the forum state. Klaxon Co. v. Stentor Manufacturing Co., 313 U.S. 487 (1941). In this case, because this Court is sitting in the Eastern District of Tennessee, this Court must examine the substantive choice of law rules for Tennessee. Tennessee has adopted the Restatement (Second) of Conflict of Law's approach for choice of law for torts. A thorn in this analysis is that typically, the forum will not entertain an action based on the criminal law of another state or on any other penal law. In Huntington v. Attrill, 146 U.S. 657 (1892), the Supreme Court recognized this principle and defined a penal law as one whose purpose "is to punish an offense against the public justice." See also Paper Products Co. v. Doggrell, 195 Tenn. 581 (1953). A tort is not a crime, but a tort could enhance a misdemeanor into a felony.

[7] The Tennessee Pattern Jury Instructions list the elements for the tort of invasion of privacy to be proved by a **preponderance of the evidence** as follows: (1) The defendant intentionally intruded, physically or otherwise, upon the plaintiff's solitude or seclusion or the private affairs or concerns of the plaintiff; (2) The intrusion would be highly offensive to a reasonable person; and (3) **The intrusion caused injury or loss to plaintiff**. 8 Tenn. Prac., Pattern Jury Instructions T.P.I. – Civil 8.70 (emphasis added).

[8] Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 411-12 (Tenn. 2002) (recognizing a cause of action for unreasonable intrusion into private affairs set forth in section 652B of the Restatement (Second) of Torts and noting that a plaintiff cannot seek damages for intrusion into seclusion when he or she is required to make the allegedly private information available for public inspection).

[9] West v. Media General Convergence, Inc., 53 S.W.3d 640 (Tenn. 2001) (adopting with modification Section 652E of the Restatement (Second) of Torts) and noting that "plaintiffs seeking to recover on false light claims must specifically plead and prove damages allegedly suffered from the invasion of their privacy and that "the right to privacy is a personal right"). See also Rogers v. McCullough, 296 F. Supp. 2d 895, 904 (W.D. Tenn. 2003); Lewis v. NewsChannel 5 Network, L.P., 238 S.W.3d 270 (Tenn. Ct. App. 2007).

affairs,[10] (2) public disclosure of private facts,[11] (3) placing plaintiff in false light, (4) appropriation of name, picture or identity, (5) appropriation of right of publicity for commercial purposes, and (6) violations of the state constitutional right of privacy. See BAJI (California Civil Jury Instructions) § 7.20-25; Sanchez-Scott v. Alza Pharmaceuticals, 103 Cal.Rptr.2d 410 (Cal. Ct. App. 2001). For a party to prevail on an invasion of privacy claim in California, the plaintiff must have conducted himself or herself in a manner consistent with an actual expectation of privacy. Moreno v. Hanford Sentinel, Inc., 09 Cal. Daily Op. Serv. 4208 (Cal. Ct. App. 2009). [12] At the outset, the expectation must have been reasonable.[13] In Alaska, two elements are required for an invasion of privacy claim: (1) that plaintiff had a reasonable

---

[10] See Spinks v. Equity Residential Briarwood Apartments, 90 Cal.Rptr.3d 453(Cal. Ct. App. 2009) (holding that to prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding the plaintiff); Kinsey v. Macur, 165 Cal.Rptr. 608 (Cal. Ct. App. 1980) (holding that except in cases involving physical intrusion, invasion of privacy must be accompanied by publicity in sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few).

[11] One of the elements of the tortious invasion of privacy for public disclosure of public facts is that the private fact is not of legitimate public concern. See Shulman v. Group W Productions, Inc., 74 Cal.Rptr.2d 843 (Cal. 1998).

[12] Id. (discussing "newsworthiness" in terms of social value of the published facts, the depth of intrusion into ostensibly private affairs, and whether the person acceded voluntarily to a position of public notoriety"); Sanchez-Scott v. Alza Pharmaceuticals, 103 Cal.Rptr.2d 410 (Cal. Ct. App. 2001) (ruling that maxim of law that one "who consents to an act is not wronged by it" applies to the tort of invasion of privacy); see also Beruan v. French, 128 Cal.Rptr. 869 (Cal Ct. App. 1976) (holding that a candidate for public office has no right of privacy as to the flow of truthful information which may be relevant to his qualifications for office); Sipple v. Chronicle Publishing Co., 201 Cal.Rptr. 665 (Cal. Ct. App. 1984) (holding that no right of privacy attaches to a matter of general interest that has already been publicly released in a periodical or in a newspaper of local or regional circulation); Diaz v. Oakland Tribune, Inc., 188 Cal.Rptr. 762 (Cal. Ct. App. 1983) (holding that persons who voluntarily seek public office or willingly become involved in public affairs waive their right to privacy of matters connected with their public conduct); Emerson v. J. F. Shea Co., 143 Cal.Rptr. 170 (Cal. Ct. App. 1978) (holding that a person by his own activities or by force of circumstances may become a public personage, and thereby relinquish a part of his right of privacy to extent that the public has a legitimate interest in his doings, affairs or character); Johnson v. Harcourt, Brace, Jovanovich, Inc., 118 Cal.Rptr. 370 (Cal. Ct. App. 1974) (holding that people closely related to public figures also lose their right of privacy to some extent); Carlisle v. Fawcett Publications, Inc., 20 Cal.Rptr. 405 (Cal. Ct. App. 1962) (holding that people who create legitimate and widespread attention to their activities have to some extent lost the right of privacy, and people closely related to such public figures in their activities also to some extent lose their right to privacy); Forsher v. Bugliosi, 608 P.2d 716 (Cal. 1980) (holding that if information reported has previously become part of the public domain or the intrusion into an individual's private life is only slight, the publication will be privileged even though the social utility of the publication may be minimal); M.G. v. Time Warner, Inc. 107 Cal.Rptr.2d 504, 511 (Cal. Ct. App. 2001); Wasser v. San Diego Union, 236 Cal.Rptr. 772 (Cal Ct. App. 1987) (noting that teacher continued to rekindle public interest in his criminal trial and acquittal by engaging in one public lawsuit after another). See also Anti-Defamation League of B'nai B'rith v. Superior Court, 79 Cal.Rptr.2d 597 (Cal. Ct. App. 1998) (holding that individuals had sufficiently injected themselves into maelstrom of public debate).

[13] To make this determination, California courts look to the community norms. TBG Ins. Services Corp. v. Superior Court, 117 Cal.Rptr.2d 155, 160-61 (Cal. Ct. App. 2002). See also Taus v. Loftus, 151 P.3d 1185 (Ca. 2007) (for purposes of First Amendment, with respect to action by individuals for invasion of privacy).

10

expectation of privacy, and (2) that defendant intruded in a manner highly offensive to a reasonable person. <u>Greywolf v. Carroll</u>, 151 P.3d 1234 (Alaska 2007); <u>Thoma v. Hickel</u>, 947 P.2d 816 (Alaska 1997). Alaska also recognizes the claim of false light invasion of privacy which arises when the defendant publicizes a matter that places the plaintiff before the public in a false light. <u>State[14] v. Carpenter</u>, 171 P.3d 41 (Alaska 2007) (holding that false light differs from defamation because defamation claim redresses damage to reputation while a false light privacy claim redresses mental distress from exposure to public view).

   *b. Tennessee courts would likely not apply Tennessee law in an equivalent civil cause of action.*

Tennessee has adopted the Restatement (Second) of Conflict of Law's approach for choice of law for torts, referred to as the "most significant relationship" approach. <u>Hataway v. McKinley</u>, 830 S.W.2d 53 (Tenn. 1992). Under the Restatement's approach, a court applies the "law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." <u>Id.</u> (citing Restatement (Second) of Conflict of Laws). The Restatement determines which state has the most significant relationship to the occurrence and parties under the following principles:

   (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
   (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
      (a) the needs of the interstate and international systems,
      (b) the relevant policies of the forum,
      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
      (d) the protection of justified expectations,
      (e) the basic policies underlying the particular field of law,
      (f) certainty, predictability, and uniformity of result, and

---

[14] The "State" in the caption for this case does not mean that the State of Alaska sued on a tort theory. Rather, a plaintiff brought a civil action in tort, the Superior Court awarded plaintiff compensatory and punitive damages, the plaintiff moved after trial for an order declaring two state statutes unconstitutional which limited damages, and the State intervened to protect its interest in the punitive damages award. <u>Id.</u>

(g) ease in the determination and application of the law to be applied.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Hataway v. McKinley, 830 S.W.2d 53 (Tenn. 1992) (citing § 6, Choice-of-Law Principles).

Following this analysis, Tennessee courts would note that Mr. Kernell resided in Tennessee, but they would also consider that (1) California is where the protected computer was located and where the purportedly private information was stored, (2) the Yahoo! terms of service included a choice of law provision choosing California,[15] and (3) Alaska has an interest in having its law applied, because that is where the alleged victim resides. Other possible forum interests to be considered would include (1) where the campaign's headquarters was located,[16] (2) where Ms. Palin was when the Yahoo! email account was accessed,[17] or (3) where Ms. Palin was when she learned that the Yahoo! email account had been accessed. Moreover, because Count 3 alleges that Mr. Kernell aided and abetted a violation of § 1030 in furtherance of aiding and abetting other violations of § 1030, it is unclear if or where the unknown others' committed their respective torts. For example, because the allegation is that Mr. Kernell committed "tortious invasion of privacy . . . and did aid and abet in same," even if Mr. Kernell committed the tort in Tennessee (Count 3 says, "in furtherance of the commission of a criminal and tortious

---

[15] Yahoo! Terms of Service, http://info.yahoo.com/legal/us/yahoo/utos/
[16] http://www.washingtonpost.com/wp-dyn/content/article/2008/09/17/AR2008091703304.html (reporting that McCain-Palin 2008 Campaign Manager issued a statement that "[t]his is a shocking invasion of the Governor's privacy and a violation of law").
[17] According to the Washington Post, on September 15, 2008, Ms. Palin was in Colorado; on September 16, 2008, Ms. Palin was in Ohio; on September 17, Ms. Palin was in Michigan; on September 18, Ms. Palin was in Iowa and Wisconsin; on September 19, Ms. Palin was in Wisconsin and Minnesota; and on September 21, 2008, Ms. Palin was in Florida. http://projects.washingtonpost.com/2008-presidential-candidates/tracker/dates/ (last visited April 15, 2009).

act in violation of the laws of the United States and the State of Tennessee), it is unclear whether he aided and abetted others commit torts in Tennessee, or whether is accused of aiding and abetting the commission of torts in the states where others accessed the e-mail. The Restatement also directs that among the contacts to be considered (including domicil, residence, nationality, place of incorporation, and place of business), the "plaintiff's domicil . . . is the single most important contact for determining the state of the applicable law as to most situations involving the multistate publication of matter that . . . invades his right of privacy." Id. § 145 cmt.e. Here, the plaintiff [i.e., "victim"'s] domicil is Alaska.

A Tennessee court would also consider whether or not to apply its own law based on where the alleged injury occurred. Where the injury occurred depends on the **type** of invasion of privacy alleged. See Restatement (Second) of Conflict of Laws §152 (1971).[18] Here, the government has not indicated the nature of the alleged tortious invasion of privacy.

When faced with a similar choice of law issue, Tennessee law was not applied. In Inventory Locator Service, LLC v. Partsbase, Inc., No. 02-2695 MA/V, 2005 WL 2179185 (W.D. Tenn. Sept. 06, 2005), the complaint alleged violations of 18 U.S.C. § 1030 and tortious interference with business relations. The defendant's counterclaim alleged identical violations and added claims of violations of the Florida Uniform Trade Secrets Act, the Florida Deceptive and Unfair Trade Practices Act, and the Tennessee Consumer Protection Act. The district court noted that "[i]n federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state,"[19] found that "Tennessee applies the "most significant relationship" analysis of the Restatement (Second) of Conflict of Laws," and then

---

[18] Id. (providing that "the local law of the state where the invasion occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship and except when there is a multistate publication of an aggregate communication within the meaning of the rule of § 153); Id. comment b (rationale); Id. comment c. (place of invasion*). See also id. § 153.

[19] Id. (citing Gennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 136 (6th Cir. 1996)).

13

concluded that, based on the Restatement's factor's Tennessee law should apply to the complaint because, although the person who unlawfully accessed the computer was in Florida, the accessed database was in Tennessee but that Florida law should apply to the counter-complaint, because that is where the relevant database for the counter-complaint's allegations. Id. Cf. United States v. Lori Drew, No. 2:08-CR-00582-GW (although the defendant and the victim were both residents of Missouri, the case was brought in California, where the computer servers which had been accessed were located, when federal government sought to increase a misdemeanor violation of section 1030 by alleging that the defendant committed the unauthorized access in furtherance of the tort of intentional infliction of emotional distress).

V.     COUNT 3 FAILS TO STATE AN OFFENSE BECAUSE IT DOES NOT CONTAIN THE ESSENTAIL ELEMENTS AND FACTS REQUIRED UNDER THE STATUTES.

Count 3 is insufficient because it does not include the elements of the enhancing crime or the enhancing tort, it omits essential elements of the offense, and it fails to allege all facts necessary to support a violation of section 1030 or the tort of invasion of privacy.[20] There are several requirements to make an indictment sufficient. First, there is the "fair notice requirement that the indictment must furnish the defendant with" "such a description of the charge" against him so that he is able to "make his defense." United States v. Cruikshank, 92 U.S. 542, 558 (1875). The Notice Clause of the Sixth Amendment requires that a criminal defendant has the right "to be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI.; United States v. Maney, 226 F.3d 660, 663 (6th Cir.2000). Second, the indictment must allege the conduct being charged with sufficient particularity that the defendant can raise her

---

[20] In its Response, the government cites to conspiracy cases for its claim that, "[t]here is no requirement for the indictment to allege the elements of the furthered crimes, particularly if the Indictment does not charge the Defendant personally with committing those furthered crimes." [Doc. 24 at 5] (citing United States v. Branan, 4457 F.2d 1062 (6th Cir. 1972)). Branan is inapposite for two main reasons. First, it was decided in 1972, well before Apprendi. Second, it does not raise the same Sixth Amendment issue because, the defendant's were *charged* with conspiracy, and their sentences were not enhanced.

conviction or acquittal as a bar to future proceedings based on the same conduct. <u>Hamling v.</u>

<u>United States</u>, 418 U.S. at 117. That is, the indictment must be sufficiently detailed to "inform

the court of the facts alleged, so that it may decide whether they are sufficient in law to support a

conviction, if one should be had. Next, the Indictment Clause of the Fifth Amendment requires

that a defendant be charged with only those charges brought before the grand jury. U.S. Const.

amend. V.; <u>Maney</u>, 226 F.3d at 663.

> A grand jury, in order to make that ultimate determination, must necessarily
> determine what the question under inquiry was. To allow the prosecutor, or the
> court, to make a subsequent guess as to what was in the minds of the grand jury at
> the time they returned the indictment would deprive the defendant of a basic
> protection which the guaranty of the intervention of a grand jury was designed to
> secure. For a defendant could then be convicted on the basis of facts not found
> by, and perhaps not even presented to, the grand jury which indicted him.

<u>Russell v. United States</u>, 369 U.S. 749, 769-70 (1962). Consequently, an indictment is not

sufficient unless it states all material elements of the offense. <u>Hamling</u>, 418 U.S. at 117; <u>United</u>

<u>States v. Locklear</u>, 97 F.3d 196, 198-99 (7th Cir. 1996). Rule 7(c)(1) of the Federal Rules of

Criminal Procedure states, in pertinent part, that "[t]he indictment or the information shall be a

plain, concise and definite written statement of the essential facts constituting the offense

charged." This rule merely expresses and codifies what the law has always been: it remains

essential that every element of an offense be stated so that defendant is given fair notice of the

charge against him.[21] <u>See</u> <u>United States v. Hernandez</u>, 980 F.2d 868, 871 (2d Cir. 1992); <u>Honea</u>

<u>v. United States</u>, 344 F.2d 798, 803 (5th Cir. 1965); <u>United States v. Deer</u>, 131 F.Supp. 319 (D.

Wash. 1955); <u>United States v. Sermon</u>, 218 F.Supp. 871 (D. Mo. 1963).

> The "inclusion of the elements of the offense . . . known as the **"essential
> elements" requirement**, is based primarily upon a third pleading function,
> sometimes characterized as the "judicial review" function. That function has been

---

[21] Mr. Kernell has filed a motion for bill of particulars. However, a bill of particulars will not cure an insufficient indictment. <u>United States v. Salisbury</u>, 983 F.2d 1369, 1375 (6th Cir. 1993); <u>see</u> <u>also</u> <u>Russell v. United States</u>, 369 U.S. 749, 769-770 (1962); <u>United States v. Sturman</u>, 951 F.2d 1466, 1479 (6th Cir.1992).

described by the Supreme Court as "inform[ing] the [trial] court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." Although this "judicial review" function is mentioned far less frequently than the "notice" and "double jeopardy" functions, it remains a cornerstone of both federal and state pleading requirements.

United States v. Landham, 251 F.3d 1072, 1080, n.4 (6th Cir. 2001) (internal citations omitted) (emphasis added). In Lantham, the defendant had been charged with a violation 18 U.S.C. § 875(c), which is a transmission in interstate commerce of threatening communication, similar to section 1030 because of the interstate communication issue.

Although an indictment that tracks the statutory language defining an offense is usually sufficient, e.g., United States v. Caldwell, 176 F.3d 898, 901 (6th Cir. 1999), mere recitation of statutory language is acceptable *only if* all elements of the charged crime are subsumed in the language. See e.g., United States v. Pickett, 353 F.3d 62, 67 (D.C. Cir. 2004).

[I]t is a fundamental "protection[] which an indictment is intended to guarantee," that the indictment "contain[] the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." While the Government is correct that indictments have been upheld where they tracked the language of the statute, this indictment tracks only part of the statutory language. . . .

United States v. Pickett, 353 F.3d 62, 67 (D.C. Cir. 2004) (internal citations omitted).

The omission of an essential element of the offense from the indictment cannot be cured by a citation to the applicable statute. See id. at 549 (citing United States v. Hooker, 841 F.2d 1225, 1227-28 (4th Cir. 1988) (reversing RICO conspiracy conviction on basis that indictment did not allege all essential elements of the offense even though jury instructions did)).

"It is elementary that every ingredient of crime must be charged in the bill, a **general reference to the provisions of the statute being insufficient**." We have repeatedly reaffirmed this rule in subsequent cases.

United States v. Hooker, 841 F.2d 1225, 1227-28 (4th Cir. 1988) (emphasis added).

16

a. *Count 3 violates the Sixth Amendment because it does not contain the elements of the offense that the government purports to use to enhance the offense to a felony.*

Count 3 does not include any of the elements of the enhancing crime and tort, in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," id. at 490, because,

> [i]f a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not – at the moment the State is put to proof of those circumstances – be deprived of protections that have, until that point, unquestionably attached.

Id. at 484. In a series of cases, the U.S. Supreme Court has continued to limit the extent to which judges may engage in factfinding when sentencing defendants. See also Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005). "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." Blakely, 542 U.S. at 303-04. Prior to Apprendi, the Court had held that an indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998). However, two years after Apprendi, the Court had the opportunity to confirm that the Sixth Amendment requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must be charged in the indictment. United States v. Cotton, 535 U.S. 625, 627 (2002) (finding indictment unconstitutional which failed to allege a fact, drug quantity, that increased the statutory maximum sentence).

17

An enhancement must be charged in the indictment because "a criminal indictment holds a central place under the U.S. Constitution." United States v. Thompson, 515 F.3d 556, 566 (6th Cir. 2008) (insufficient indictment). See also United States v. Payne, 173 Fed. Appx. 429, 432 (6th Cir. 2006) (vacating application of sentencing enhancement where firearm type not charged in indictment). Because there are multiple ways in which section 1030(a)(2)(C) can be violated and even more ways to establish an invasion of privacy, Mr. Kernell must be given sufficient notice of the charge against him. The elements of section 1030(a)(2)(C) and invasion of privacy are not merely relevant to sentencing; because the government has alleged an enhancing crime and an enhancing tort to convert the misdemeanor 1030(a)(2) into a felony, section 1030 and the tort increase the penalty beyond the statutory maximum and the Constitution mandates that this should have been brought before a Grand Jury and charged in the Superseding Indictment.

In order for Mr. Kernell to be punished under 18 U.S.C. § 1030(c)(2)(B)(ii), the Government must prove that (1) an offense was committed, (2) the offense was committed in furtherance of a criminal act or tortious act, and (3) the criminal or tortious act was in violation of the laws of the United States. Count 3 alleges that an offense was committed[22] and that one crime and one tort were committed, but Count 3 contains neither the elements of the crime nor the elements of the tort. [Doc. 21 at Count 3].

As discussed below, assuming Tennessee law would apply, there are two recognized causes of action for tortious invasion of privacy in Tennessee. Count 3 does not specify which is alleged. As discussed below, this creates a due process notice problem. Count 3 should contain the elements of the alleged type of "tortious invasion of privacy." In addition, for purposes of the Sixth Amendment and the requirements outlined in Apprendi, according to *Tennessee Practice: Tennessee Elements of an Action*, a complaint for an action for invasion of privacy

---

[22] But see discussion *infra* of the problems with Count 3.

should describe how the intrusion caused injury or loss to the plaintiff and should allege damages. <u>Id.</u> Vol. 23, at 799 (Thompson West 2008). <u>See also</u> <u>West v. Media General Convergence, Inc.</u>, 53 S.W.3d 640 (Tenn. 2001) (holding that, as with defamation, a plaintiff pleading the tort of invasion of privacy for a false light claim must prove actual damages). However, Count 3 never alleges that *any* injury, loss, or damages. These are facts that must be included in the indictment and found by a jury.

VI.     <u>COUNT 3 AND THE STATUTE UPON WHICH IT IS BASED ARE UNCONSTITUTIONALLY VAGUE</u>.

Even if Count 3 were allowed to stand as a statutory matter, it must be dismissed because there is confusion surrounding the meaning and scope of the provisions alleged to have been violated. A criminal statute[23] is void for vagueness if it encourages arbitrary and discriminatory enforcement of the law. The vagueness doctrine serves twin purposes. First, the Due Process Clause requires that criminal statutes provide fair notice by voiding impermissibly vague statutes because they do not clearly define the prohibited conduct. <u>See</u> U.S. Const. Amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ."); <u>Coates v. Cincinnati</u>, 402 U.S. 611 (1971). Second, by striking down impermissibly vague statues, courts reduce the potential for arbitrary and discriminatory enforcement of the laws by law enforcement officers and prosecutors. <u>See</u> Robert Batey, *Vagueness and the Construction of Criminal Statutes – Balancing Acts*, 5 Va. J. Soc. Pol'y & L. 1(1997) (citing <u>Giaccio v. Pennsylvania</u>, 382 U.S. 399, 402 (1966) (voiding a costs of prosecution statute on vagueness grounds because it allowed juries to act arbitrarily and discriminatorily)).

"The proper focus of vagueness analysis is not the particular defendant, but a hypothetical ordinary person." Robert Batey, *Vagueness and the Construction of Criminal*

---

[23] Here, a state law tort is also alleged.

*Statutes – Balancing Acts*, 5 Va. J. Soc. Pol'y & L. 1(1997) (citing <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 355 n.5 (1964), which held that "[t]he determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants."); <u>Parker v. Levy</u>, 417 U.S. 733 (1974)).  <u>See also</u> <u>United States v. Lanier</u>, 117 S.Ct. 1219, 1225 (1997) (reaffirming <u>Bouie</u>'s principles); <u>Papachristou v. City of Jacksonville</u>, 405 U.S. 156, 162 (1972) ("Living under a rule of law entails various suppositions, one of which is that '(all persons) are entitled to be informed as to what the State commands or forbids.'") (quoting <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453 (1939)).

> Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.

<u>McBoyle v. United States</u>, 283 U.S. 25, 27 (1931).

An indictment, to pass constitutional muster, must provide a defendant with a sufficient description of the charges against him to enable the preparation of his defense, to ensure that he is prosecuted on the basis of facts presented to the Grand Jury, to enable him to plead jeopardy against any subsequent prosecution, and to inform the trial court of the facts alleged so that it can determine the sufficiency of the charge.  <u>See</u> <u>Russell v. United States</u>, 369 U.S. 749, 768 n.15 (1962); <u>United States v. Resendez-Ponce</u>, 127 S.Ct. 782, 788 (2007).

The degree of vagueness that is constitutionally permissible, as well as the relative importance of fair enforcement, depends at least in part on the nature of the statute at issue.  For example, economic regulations are subject to a less strict vagueness test, and courts have demonstrated tolerance of enactments with civil rather than criminal penalties, "because the

consequences of imprecision are qualitatively less severe." <u>Hoffman Estates v. Flipside</u>, 455 U.S. at 499-500. Where a statute imposes criminal penalties, the standard of certainty required is higher. <u>Kolender v. Lawson</u>, 461 U.S. at 358-59 n.8; <u>Winters v. New York</u>, 333 U.S. 507, 515 (1948) (noting that a scienter requirement may mitigate a law's vagueness with respect to the adequacy of notice). <u>Cf.</u> <u>Amusement Devices Association v. Ohio</u>, 443 F. Supp. 1040 (S.D. Oh. 1977) (observing that the Supreme Court has never held that a scienter element alone necessarily renders the statute's prohibitions sufficiently precise to withstand a vagueness challenge); <u>United States v. Lanier</u>, 520 U.S. 259, 265 (1997).

 In this case, Count 3 suffers from two types of vagueness: vagueness on its face and vagueness as applied. Because Mr. Kernell is facing a felony criminal penalty (i.e., federal prison time), the standard of certainty must be higher, and because Count 3 and the statute upon which it is based do not provide that certainty, Mr. Kernell was not given fair warning that his actions violated the law, and Count 3 must be dismissed as unconstitutionally vague.

> a. *<u>The statute Mr. Kernell is alleged to have violated in Count 3 is facially vague.</u>*

The statute Mr. Kernell is charged with violating is facially vague. Section 1030 contains an aggravated penalty provision to punish those offenders who commit the offense "in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any State." 18 U.S.C. § 1030(c)(2)(B)(ii). The number and of type of crimes and torts which may be used to enhance the penalty for violating these statutes is conceptually unlimited, and growing. <u>Cf.</u> Paul Rosenzweig, *The Overcriminalization of Social and Economic Conduct*, The Heritage Foundation Legal Memorandum, Apr. 17, 2002, at 2 <u>available at</u> <u>http://www.heritage.org/Research/LegalIssues/upload/40268_1.pdf</u> ("Estimates of the current size of the body of federal criminal law vary. It has been reported that the Congressional

Research Service cannot even count the current number of federal crimes. . . . More than 40 percent of these laws have been enacted in just the past 30 years . . . . And these laws are scattered in over 50 titles of the United States Code, encompassing roughly 27,000 pages."); Prosser & Keaton, *Law of Torts* § 1 ("The law of torts is anything but static, and the limits of its development are never set."). Because the number of "crimes or tortious acts" which can be used to transform a misdemeanor into a felony is only limited by a prosecutor's imagination, the statute does not place any checks or balances on prosecutorial discretion. The result is that one cannot know in advance how or whether he or she will be punished. See City of Chicago v. Morales, 527 U.S. 41, 56 (1999) (noting that under Supreme Court's vagueness jurisprudence, law is void if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits").

Congress has retained a misdemeanor section 1030 violation, even while other parts of the statute have been repeatedly amended. See Majid Yar, *Cybercrime and Society* 40 (2006) (discussing history of the Computer Fraud and Abuse Act and noting that the Act has been amended in "response to technological innovations and new forms of computer crime . . . on numerous occasions (1986, 1989, 1990, 1994, and 1996) . . . [and that] significant amendments to the CFAA were introduced by the USA Patriot Act of 2001 . . . [which] included the increase of maximum penalties"). If the Government is allowed to enhance Mr. Kernell's charge of unauthorized access from a misdemeanor to a felony by alleging that he accessed the computer without authorization in furtherance of unauthorized access, the misdemeanor provision will have been effectively written out of the statute.

Even if this Court finds that "any criminal or tortious act" is not facially unconstitutionally vague, this Court must construe the phrase narrowly such that only those

crimes or torts which necessarily do *not* occur whenever there is unauthorized access should be allowed to be used to enhance the predicate alleged violation. Because, in this case, the Government has alleged no fact that would distinguish Mr. Kernell's alleged conduct from a misdemeanor or make it morally or functionally any worse than the basic misdemeanor, the charge is unconstitutionally vague.

### b. *Some of the terms within section 1030 are vague.*

#### 1. *The word "access" is too vague to support criminal liability.*

Federal statutes do not define "access." Section 1030, despite its lengthy definitional section, does not define "access." <u>See</u> Orin Kerr, *Cybercrime's Scope: Interpreting "Access" and "Authorization"* 78 N.Y.U. L. Rev. 1596 (2003); <u>American Family Mut. Ins. Co. v. Rickman</u>, No. 3:08-CV-583, 2008 WL 1805798 (N.D. Ohio Apr. 18, 2008) (discussing unauthorized access). Similarly, section 1030 does not define "unauthorized." Therefore, a person such as Mr. Kernell is not put on sufficient notice that unauthorized access or access in excess of authority would violate federal law.

#### 2. *The word "information" is too vague to support criminal liability.*

Section 1030 contains another, related defect: 1030(a)(2)(C) makes it a crime to obtain "information," a term undefined in the Computer Fraud and Abuse Act, and which is unhelpfully defined by Webster's as, "the communication or reception of knowledge or intelligence." Webster's Ninth New Collegiate Dictionary 620 (1983). In other words, section 1030 makes one liable for obtaining anything and everything.

#### 3. *The word "obtain" is too vague to support criminal liability.*

Section 1030(a)(2)(C) makes it a crime to **obtain** information, a term undefined in the Computer Fraud and Abuse Act. The potentially unlimited scope of the term "information" (<u>see</u> previous section), which makes one liable is aggravated by potentially expansive interpretations

of the term "obtain."  See S. Rep. 99-432, at 6 (1986) reprinted in 1986 U.S.C.C.A.N. 2479,

2484 (suggesting that one "obtains" a communication simply by viewing it on one's computer

screen).  It is not enough to say, as the government has that:

> While the terms "crimes or tortious acts" and "information" might be broad, that
> does not mean they are unclear; to the contrary, broad statutes are *easier* to
> understand, because their provisions leave little to subjectivity and discretion.
> The Defendant does not and cannot dispute that section 1030 of Title 18 describes
> "crimes," or that electronic mail is one type of "information," or that the State of
> Tennessee recognizes the tort of invasion of privacy.  What is more, the
> Defendant cannot argue section 1030 was vague because Defendant personally
> knew that his conduct at issue here was illegal.

[Doc. 24 at 6-7].  It is not enough because

> The issue for the court when faced with a defense request [for a bill of particulars]
> is **not what the defendant knows but what the government intends to prove**.
> Further, it is no response to a motion for the government to say: "The defendant
> knows what he did, and has all the information necessary." Since the defendant is
> presumed to be innocent and may well be innocent in fact of the charge, he also
> should be presumed ignorant of the facts on which the charges are based.

1 C. Wright, *Federal Practice & Procedure*, § 130 at 667-68 (2008 ed.);  see also id. § 125 at

551 ("[I]f the statute is couched in general terms the indictment must identify the offense

sufficiently to inform the accused of the precise charge that he must meet.").

### c.  The statute Mr. Kernell is alleged to have violated is vague as applied.

Count 3 is vague as applied, because similar instances abound which have not been

treated similarly.   On one end of the spectrum, many individuals access other individuals'

computers and are not prosecuted.[24] On the other end of the spectrum, there are cases deserving

---

[24] Indeed, there are "[t]housands of daily attacks on federal and private computer systems in the United States."
David E. Sanger, John Markoff & Thom Shanker, *U.S. Plans Attack and Defense in Cyberspace Warfare*, N.Y.
Times, Apr. 28, 2009.   Some of these attacks included politicians and celebrities.   In 2008, two State Department
employees were fired for improperly accessing then-presidential candidate Barack Obama's passport file. See Glenn
Kessler, *Two Fired for Viewing Obama Passport File*, Washington Post, March 21, 2008, at A03.  Being fired is
categorically different from being prosecuted.   When similar cases are prosecuted, they are often resolved as
misdemeanors.  See e.g., United States v. Allen, No. 3:04-CR-00066 (E.D. Tenn. Sept. 21, 2004) (misdemeanor
violation for § 1030 violation settled for probation and $8,826 restitution); United States v. Vevea, No. 1:03-CR-
05410-001 (E.D. Cal. Feb. 13, 2008) (misdemeanor sentence to probation and 90 days home confinement for

of felony punishment that are not prosecuted, perhaps because the culpable parties are sophisticated computer programmers with a preexisting criminal intent who go to great lengths not to get caught. While the government has wide discretion in choosing which cases to prosecute, the vagueness of the statute allows for arbitrary enforcement that is not tolerated by the constitution.

VII.  CONCLUSION

        WHEREFORE, Mr. Kernell moves this Court to enter an Order dismissing Count 3.

                         Respectfully submitted this 11th day of May, 2009.

                         RITCHIE, DILLARD & DAVIES, P.C.

                           /s/ WADE V. DAVIES
                        WADE V. DAVIES [BPR #016052]
                         /s/ ANNE E. PASSINO
                        ANNE E. PASSINO [BPR #027456]
                        606 W. Main Street, Suite 300
                        P. O. Box 1126
                        Knoxville, TN  37901-1126
                        (865) 637-0661

                        *Counsel for David C. Kernell*

---

unlawfully accessing the e-mail account of an attorney for the purpose of sending our harassing e-mails in the attorney's name).

25

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing has been filed electronically this 11th day of May, 2009. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

        /s/ Wade V. Davies
        WADE V. DAVIES