IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO.: 3:08-cr-142 |
| | ) | JUDGES PHILLIPS/SHIRLEY |
| | ) | |
| DAVID C. KERNELL | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COUNT II ON THE BASIS THAT THE INDICTMENT
FAILS TO ALLEGE FACTS CONSTITUTING WIRE FRAUD**

Mr. Kernell has moved the Court for an order dismissing Count 2 of the Superseding Indictment because it fails to allege wire fraud. The claim that Mr. Kernell sought "information data and pictures" is not sufficient to transform this case into a case about depriving someone of money or property. Additionally, Count 2 fails because the alleged misrepresentations were not made to the alleged victim of the scheme.

**I.    The Superseding Indictment fails to state an offense
      because "information data and pictures" does not satisfy
      the requirement for recognized property interests.**

In a stretch of logic and law, the government has alleged that David Kernell committed the offense of wire fraud: that his conduct amounted to a scheme to defraud and to deprive Governor Palin of property. The indictment fails to allege a property interest protected under the wire fraud statute.

The serious criminal liability that flows from the wire fraud statute cannot be based on something as ethereal as "information data and pictures." The allegation fails as a matter of logic as would be shown at trial -- Mr. Kernell was not trying to steal from Sarah Palin; the allegation fails as a matter of law as well – failure to allege a sufficient property interest subjects an indictment to dismissal. <u>United States v. Velez, Kuehne and Ochao</u>, United States District Court for the Southern District of Florida, Case 1:05-cr-20770-MGC, R&R: Document 228 (February 20, 2009)(recommending dismissal for failure to allege a cognizable property interest).

The original indictment in this case charged only unauthorized access to a protected computer under 18 U.S.C. § 1030. [Doc. 2: Indictment, filed 10/7/08]. Wire fraud was not charged. The wire fraud theory was added into the Superseding Indictment. The addition of wire fraud marks a change in legal theory rather than a prosecution based on additional evidence. The facts are the same. While it is a common prosecutorial tactic to charge mail or wire fraud in a novel prosecution,[1] there must be a sufficient property interest before conduct can be deemed a scheme to defraud or to obtain property.

---

[1] See <u>United States v. Maze</u>, 414 U.S. 395, 405-06 (1974)(Burger, C.J., dissenting).

### A. The Indictment Claims the "Scheme" Was for Obtaining "Information Data and Pictures."

The operative language of Count 2 states that "defendant Kernell did knowingly devise, and intend to devise, a scheme and artifice to defraud, and for obtaining property, that is, information data and pictures from the e-mail account gov.palin@yahoo.com, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts." [Doc. 21: Superseding Indictment, p.5, ¶ 18].

No further allegation of property or description of the "information data and pictures" is contained in Count 2.[2]

### B. The Mail and Wire Fraud Statutes Punish People Who Are Attempting to Steal or Deprive Another of Property – Not Someone Accused of Accessing a Politician's E-mail.

As broad as the wire fraud statute is, it does not prohibit all forms of alleged misconduct. The statute was designed to punish people who deprive others of property -- people who steal. See generally Cleveland v. United States, 531 U.S. 12 (2000); McNally v. United States, 483 U.S. 350, 360 (1987) (holding that mail fraud statute is "limited in scope to the protection of property rights");

---

[2] Paragraph 10 of the Introductory Allegations in the Superseding Indictment states that confidential and personal information included, and was not limited to, other e-mail addresses of Governor Palin's family members, pictures of her family members, at least one cell phone number of her family member, the dates of birth of Governor Palin and another member of her family, and Governor Palin's address book for her Yahoo! e-mail account. That paragraph, however, is not incorporated into Count 2. Count 2 states, "The introductory allegations set forth in paragraphs **1-5** are re-alleged herein. [Doc. 21: Superseding Indictment, p. 21, ¶ 17]. The government has excluded any further description of the "information data and pictures."

Pasquantino v. United States, 544 U.S. 349, 355 (2005); Carpenter v. United States, 484 U.S. 19, 25 (1987).

The statute was passed to protect traditional notions of property. In McNally, the United States Supreme Court acted to limit the use of the mail fraud statute which had expanded far beyond its statutory language. The Court reversed a conviction of a Kentucky official when the prosecution had been based on the theory that the citizens were defrauded of their intangible right to honest government. McNally, 483 U.S. at 352.[3]

The Court noted that the statute was passed to prevent stealing:

> As first enacted in 1872, as part of a recodification of the postal laws, the statute contained a general proscription against using the mails to initiate correspondence in furtherance of "any scheme or artifice to defraud." The sponsor of the recodification stated, in apparent reference to the antifraud provision, that measures were needed "to prevent the frauds which are mostly gotten up in the large cities … by thieves, forgers, and rapscallions generally, for the purpose of deceiving and fleecing the innocent people in the country." Insofar as the sparse legislative history reveals anything, it indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property.

McNally v. United States, 483 U.S. 350, 356 (U.S. 1987)[4]

---

[3] As shown below, Congress's addition of the intangible right to honest services to the definition of a scheme to defraud does not apply in this case.
[4] A deleted footnote describes that Representative Farnsworth proceeded to describe a scheme whereby the mail was used to solicit the purchase by greedy and unwary persons of counterfeit bills, which were never delivered. Id.

The Court went on to describe the addition in 1909 of the language "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" after the original phrase "any scheme or artifice to defraud." Id. at 357-58. The rest of the opinion emphasized that both prongs of the statute require a deprivation of money or property. Id. at 358-61. The emphasis is on whether there was an economic loss to the victim or whether the defendant obtained money or property from the victim.

### C. Title 18, United States Code, Section 1346 Did Not Create Liability For The Ethereal. It Only Created An Offense For Deprivation Of Honest Services.

A little over a year after McNally was decided, Congress enacted 18 U.S.C. § 1346, which partially overruled McNally, Section 1346 provides: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of *the intangible right of honest services*." (Emphasis added.) This type of "intangible right" to honest services is not at issue in this case and the government has, therefore, not alleged a violation of §1346. The Supreme Court stated in Cleveland v. United States that 18 U.S.C. § 1346 "covers only the intangible right of honest services." 531 U.S. at 19-20. The other intangible rights theories were not restored by the passage of the "honest services" statute. Id. ("...Congress amended the law specifically to cover one of the "intangible rights" that lower courts had protected under § 1341 prior to McNally: "the intangible right of honest services." Anti-Drug Abuse Act of 1988, § 7603(a), 18 U.S.C. § 1346. Significantly, Congress covered only the intangible

5

right of honest services even though federal courts, relying on McNally, had dismissed, for want of monetary loss to any victim, prosecutions under § 1341 for diverse forms of public corruption, including licensing fraud.").

Therefore, after the passage of § 1346, the mail fraud statute requires a deprivation of a traditional property interest in all cases except those based on the intangible right to honest services.

### D. The Court Has Reemphasized that Mail/Wire Fraud Cannot Be Established Without an Economic Motive or Loss.

In Cleveland, the Court again used an economic framework to analyze whether a sufficient property interest was alleged. The Court held that the State of Louisiana was not defrauded of property rights when false statements caused it to issue licenses to operate video poker machines.

Thirteen years after McNally and twelve years after the passage of § 1346, in a unanimous opinion authored by Justice Ginsberg, the Court started by emphasizing the McNally holding that "the federal mail fraud statute is 'limited in scope to the protection of property rights.'" Cleveland, 531 U.S. at 18.

In looking at whether an interest is cognizable as a property right under the mail and wire fraud statues, the Supreme Court has looked to "traditional concepts of property." Cleveland, 531 U.S. at 23.

The phrase "information data and pictures" simply cannot satisfy the traditional concepts of property protected by the mail and wire fraud statutes.

The Court noted that its intervening decision in Carpenter also emphasized that the sufficiency of a mail and wire fraud claim is based on property interests:

> Soon after McNally, in Carpenter v. United States, 484 U.S. 19, 25, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), we again stated that § 1341 protects property rights only. Carpenter upheld convictions under § 1341 and the federal wire fraud statute, 18 U.S.C. § 1343, of defendants who had defrauded the Wall Street Journal of confidential business information. Citing decisions of this Court as well as a corporate law treatise, we observed that "[c]onfidential business information has long been recognized as property." 484 U.S., at 26, 108 S.Ct. 316.

Cleveland, 531 U.S. at 19. Thus the court emphasized that whether an indictment properly alleges a cognizable property interest should be judged by traditional notions of property. In Carpenter, for example, the scheme deprived the Wall Street Journal of something economically valuable, the exclusive use of confidential business information. See also, United States v. Henry, 29 F.3d 112, 115 (3d Cir. 1994) ("[T]o determine whether a particular interest is property for purposes of the fraud statutes, we look to whether the law traditionally has recognized and enforced it as a property right."); United States v. Granberry, 908 F.2d 278, 280 (8th Cir. 1990) ("[T]he indictment must...allege that the injured party has been deprived of something that fairly deserves the label of property under traditional usage.").

In Cleveland, the Court stated that, "[i]t does not suffice ... that the object of the fraud may become property in the recipient's hands; for purposes of the

mail fraud statute, the thing obtained must be property in the hands of the victim." 531 U.S. at 15.

### E. The Indictment Does Not Even Allege that It Was an Object of the Scheme to Obtain and Keep Anything that Resembles Traditional Property.

The indictment alleges that the scheme was to obtain property, "that is, information data and pictures from the e-mail account gov.palin@yahoo.com ..." [Doc. 21: Superseding Indictment, p. 5, ¶ 18]. Paragraphs 19 – 25 then particularly describe the alleged parts of the scheme. Significantly, those paragraphs do not allege that it was part of the scheme for David Kernell to keep property permanently, to deprive the owner of the property, or to profit in any fashion from the property. The indictment says that David Kernell "disclosed the confidential and personal information in the e-mail account gov.palin@yahoo.com to third parties." [Doc. 21, ¶ 24]. There is no allegation that David Kernell tried to profit in any way because no such allegation is possible. The allegations in this case do not support in any way the idea that Mr. Kernell intended to, or did, deprive Governor Palin of property.

These allegations are a far cry from any traditional notion of fraud – where the defendant at least intends to obtain economic benefit or some recognizable property interest.

### F. The Rule of Lenity Applies to the Definition of Property

The United States Supreme Court has both held that the term "property" is ambiguous in Section 1341, and that the rule of lenity applies:

> Moreover, to the extent that the word "property" is ambiguous as placed in § 1341, we have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." <u>Rewis v. United States</u>, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). This interpretive guide is especially appropriate in construing § 1341 because, as this case **374 demonstrates, mail fraud is a predicate offense under RICO, 18 U.S.C. § 1961(1) (1994 ed., Supp. IV), and the money laundering statute, § 1956(c)(7)(A). In deciding what is "property" under § 1341, we think "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." <u>United States v. Universal C.I.T. Credit Corp</u>., 344 U.S. 218, 222, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

<u>Cleveland v. United States</u>, 531 U.S. 12, 25 (2000). Under the rule of lenity, "information data and pictures" cannot be interpreted to state a protected property interest.

### G. Accessing Computerized Information Is Not Wire Fraud.

The government has taken a simple allegation of unauthorized computer access and attempted to turn it into wire fraud. That unauthorized access to confidential computerized information does not constitute wire fraud should have been clear for over ten years. <u>United States v. Czubinski</u>, 106 F.3d 1069 (1st Cir. 1997). In <u>Czubinski</u>, the Court found that an IRS employee did not deprive

the IRS of a property interest sufficient to sustain a wire fraud conviction by accessing the confidential files of taxpayers.

Mr. Czubinski was an IRS employee who used his password to access confidential information regarding taxpayers. Many of the searches were related to his activities with the Ku Klux Klan and the David Duke campaign. The testimony of one of his associates was that he stated that he was accessing the information because he intended to construct dossiers on the subjects of his searches.[5]

> Czubinski accessed information regarding: the tax returns of two individuals involved in the David Duke presidential campaign; the joint tax return of an assistant district attorney (who had been prosecuting Czubinski's father on an unrelated felony offense) and his wife; the tax return of Boston City Counselor Jim Kelly's Campaign Committee (Kelly had defeated Czubinski in the previous election for the Counselor seat for District 2); the tax return of one of his brothers' instructors; the joint tax return of a Boston Housing Authority police officer, who was involved in a community organization with one of Czubinski's brothers, and the officer's wife; and the tax return of a woman Czubinski had dated a few times. Czubinski also accessed the files of various other social acquaintances by performing unauthorized searches.

Id. at 1072.

In finding that accessing confidential information was insufficient, the court first acknowledged that confidential information may constitute intangible "property" and that its unauthorized dissemination or other use may deprive the

---

[5] In reviewing the sufficiency of the evidence, the Court assumed that Mr. Czubinski made the statements attributed to him but found no evidence that he constructed the dossiers. Id. at 1072, 1075.

owner of its property rights.  Id. at 1074, citing Carpenter v. United States, 484 U.S. 19, 26 (1987) ( "Confidential business information has long been recognized as property...."). But what is required is a deprivation of a property right. The court noted that "In Carpenter, for example, the confidential information regarding the contents of a newspaper column was converted to the defendants' use to their substantial benefit. See Id. at 27, 108 S.Ct. at 321." Czubinski, 106 F.3d at 1074. Czubinski's conviction was overturned because, although he clearly violated his employer's trust, violated regulations and accessed confidential information, he did not convert the information to his personal use in any way that created a deprivation of a recognizable property interest. Id. See also Letscher v. Swiss Bank Corp., No. 94 CIV. 8277 (LBS), 1996 WL 183019, at *5 (S.D.N.Y. Apr. 16, 1996) (a bank's request and filing of former employee's confidential information without his permission did not constitute an offense under the mail or wire fraud statutes).

Here, there is similarly no allegation of a deprivation of a sufficient property interest to turn this case from a simple act of unauthorized access to the serious felony of wire fraud. There is no allegation of harm to a victim or benefit to Mr. Kernell. There is no claim that Mr. Kernell tried to sell the information data and pictures to tabloids. The only claim is that Mr. Kernell disclosed some of the information.

The statute requires at a minimum an economic basis. Illustrative of this approach is the analysis of the United States Court of Appeals for the Sixth

11
Case 3:08-cr-00142   Document 44   Filed 05/11/09   Page 11 of 16

Circuit in United States v. Douglas, 398 F.3d 407 (6th Cir 2005) where the court ultimately found that an indictment that alleged the defendants schemed to deprive union members of a contractual right to obtain skilled trade positions stated a cognizable property right. See also United States v. Henry, 29 F.3d 112, 114-15 (3d Cir. 1994) (fair bidding opportunity is not a property right). In Douglas, the district court had dismissed the indictment, finding that the right to compete for a job was not tangible enough under the statute. Douglas, at 417. The Sixth Circuit, noting that its interpretation was "expansive" focused on the economic benefits in finding the indictment sufficient. Id. at 416-419. See also United States v. Baldinger, 838 F.2d 176, 180 (6th Cir. 1988) (post-McNally, "We are thus led to conclude that the conduct alleged in Baldinger's indictment as violative of section 1341 fails to include the proprietary gain ingredient which the Supreme Court in McNally held was essential.").

    Here, it is neither alleged that the "information data and pictures" had any economic value or that the alleged access to the email caused any deprivation of property. This underscores the basic problem with this indictment. There is no allegation that Mr. Kernell intended to steal. This is a case in which the government is trying to come up with just one more theory of criminal liability in an effort to impose punishment on David Kernell in a fashion that was never intended by Congress and is prohibited by the statute.

## II. The Indictment Fails to State an Offense Because It Does Not Allege a Misrepresentation or Fraudulent Conduct Towards the Alleged Victim.

In order to constitute a scheme and artifice to defraud and for obtaining property by material false and fraudulent pretenses, the misrepresentations have to be directed at the victim. In this case, the indictment alleges misrepresentations to Yahoo! but not to Governor Palin. The indictment does not contain any claim that Mr. Kernell ever induced Governor Palin to act or not to act through any misrepresentation or otherwise.

Count 2, charging wire fraud, incorporates paragraphs 1-5 of the Introductory Allegations. Those paragraphs describe the Yahoo! servers and the process for resetting a password by providing information (presumably to Yahoo!).

Regarding Governor Palin, paragraph 5 states that the governor maintained and used the e-mail account gov.palin@yahoo.com. It is assumed that the "victim" of the wire fraud is alleged to be Governor Palin, although the indictment states that the scheme was for obtaining the information data and pictures "from the e-mail account gov.palin@yahoo.com." [Doc. 21, ¶ 18]

The mail and wire fraud statutes explicitly require an intent to obtain "money or property [from the one who is deceived] by means of false or fraudulent pretenses, representations, or promises." §§ 1341 and 1343; see United States. v. Lew, 875 F.2d 219, 221 (9th Cir.1989). This is known as the convergence doctrine.

The Sixth Circuit does not appear to have definitively ruled on this issue but has noted a circuit split:

> We note that the federal circuits are split as to whether a defendant may be convicted of mail fraud for deceiving only persons other than the intended victims of a scheme. Compare <u>United States v. Blumeyer</u>, 114 F.3d 758, 767-68 (8th Cir.1997)(noting split and following <u>United States v. Cosentino</u>, 869 F.2d 301, 307 (7th Cir.1989), to hold that defendant commits mail fraud by deceiving regulatory agency in order to forestall regulatory action which would impede scheme to obtain property from others) with <u>United States v. Sawyer</u>, 85 F.3d 713, 734 n. 18 (1st Cir.1996)(intended victims of scheme must be the ones defrauded); <u>McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.</u>, 904 F.2d 786, 794 (1st Cir.1990)(scheme to defraud cannot rest upon deception of one party which causes deprivation to another); <u>United States v. Utz</u>, 886 F.2d 1148, 1151 (9th Cir.1989)(defendant must intend to obtain money or property from victim of deceit). **We do not have to resolve this split**, however, because even the cases which have held that convictions may rest upon the deceit of a person other than the ultimate victim contemplated that the deception was causally related to the scheme to obtain property from the victim. See <u>Blumeyer</u>, 114 F.3d at 767-68; *361; <u>Cosentino</u>, 869 F.2d at 307.

<u>United States v. Frost</u>, 125 F.3d 346, 360-361 (6th Cir. 1997)(emphasis added).

In <u>United States v. Walters</u>, 997 F.2d 1219 (7th Cir. 1993), the court reversed a mail fraud conviction where a defendant sports agent signed athletes to contracts while they were still involved in college athletics. The universities were alleged to be the victims because they continued to pay for scholarships in violation NCAA rules. Although the schools lost scholarship money, that was not the object of the scheme and the fraud was not directed at the party alleged to be

the victim. Thus, the court reversed the convictions because it was not the universities who were defrauded.

In United States v. Evans, 844 F.2d 36 (2d Cir. 1988), the court reversed the mail fraud convictions because the misrepresentations were made to the United States but the scheme was not for obtaining government property. In a section of the opinion called "Whose Property Must Be Taken?" the court analyzed the statutory language, the history and purpose of the statute as it relates to this issue before deciding that the convictions should be reversed because the government had no property interest in the property allegedly obtained. Id. at 38-40.

In this case, there is no allegation that David Kernell participated in a scheme to defraud Governor Palin to obtain property from her. Although the information data and pictures are presumably alleged to have been Governor Palin's, there is no allegation of any false representations made to her. The indictment therefore does not allege a scheme to defraud and to obtain property from Governor Palin.

### III. Conclusion: This Is Not A Wire Fraud Case

Because the allegations regarding property are insufficient and there is no claim that Mr. Kernell deceived Governor Palin, Mr. Kernell respectfully asks the Court to grant his motion and to enter an order dismissing Count 2 of the Superseding Indictment.

Respectfully submitted this 11th day of May, 2009.

RITCHIE, DILLARD & DAVIES, P.C.

    /S/ WADE V. DAVIES
WADE V. DAVIES [BPR #016052]
ANNE E. PASSINO [BPR #027456]
606 W. Main Street, Suite 300
P. O. Box 1126
Knoxville, TN  37901-1126
(865) 637-0661
wdavies@rddlawfirm.com
apassino@rddlawfirm.com

*Counsel for David C. Kernell*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and exact copy of the foregoing has been filed electronically this 11th day of May, 2009. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

    /s/ Wade V. Davies
    WADE V. DAVIES

16
Case 3:08-cr-00142   Document 44   Filed 05/11/09   Page 16 of 16