UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-142 |
| | ) | Judges Phillips/Shirley |
| DAVID C. KERNELL, | ) | |
| a/k/a "rubico," | ) | |
| a/k/a "rubico10," | ) | |
| | ) | |
| Defendant. | ) | |


UNITED STATES' OPPOSITION TO ALL OF DEFENDANT'S MOTIONS TO DISMISS

The United States of America, by and through James R. Dedrick, United States

Attorney for the Eastern District of Tennessee, respectfully submits this response in

opposition to all of the Defendant's outstanding Motions to Dismiss the Superseding

Indictment (docket numbers 37, 38, 39, 40, 41, 42, 43, 44, and 45).

As set forth below, at this stage of the proceedings, in reviewing the charges

within the four corners of the indictment, each count is sufficiently alleged. Many courts

have previously considered and rejected many of the defense contentions raised in this

case. The defendant lacks standing to bring a facial challenge to the statutes on

vagueness grounds since his conduct is clearly proscribed. He also lacks standing to

assert a violation of the Eighth Amendment in the absence of any conviction or sentence.

Each of the motions to dismiss should be denied.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

ARGUMENT ......................................................................................................... 1

    I.    The Motion to Dismiss Standard is Deferential ............................................... 1

    II.   Count One States a Felony Offense for Identity Theft, Consistent with the
        Constitution, and Cannot be Dismissed. ......................................................... 2

        A.    Count One States an Offense of a Violation of 18 U.S.C. § 1028. ........ 2

                1.    Count One properly alleges that Defendant had the intent to
                        commit unlawful activity that constitutes a violation of
                        Federal law ......................................................................... 3

                2.    Count One properly alleges a "means of identification" ............. 4

        B.    Count One Charges a Felony. ............................................................... 7

        C.    Charging Defendant with a Violation of Section 1028 is Consistent
            with the Constitution. ........................................................................... 9

                1.    Congress had a rational basis to punish possession with
                        lawful authority as a misdemeanor but possession without
                        lawful authority as a felony ................................................. 9

                2.    Section 1028 is not vague, and does not allow for arbitrary
                        enforcement ........................................................................ 9

                  3.    Section 1028 was enacted consistent with the Commerce
                        Clause, and Defendant cannot argue that he should be
                        excised from the regulated class. ...................................... 11

    III.   Count Two States an Offense for Wire Fraud and Cannot be Dismissed. ...... 13

        A.    Count Two States an Offense of a Violation of 18 U.S.C. § 1343. ...... 13

        B.    "Property" Under The Wire Fraud Statute Includes Tangible and
            Intangible Property and Information .................................................... 15

                 1.    The Supreme Court and lower courts have repeatedly
                        treated information as "property" under the wire fraud
                        statute. ............................................................................... 15

                2.    The Superseding Indictment pleads facts that permit no
                        conclusion but that Governor Palin's account was property ....... 21

|   |   | 3. | The rule of lenity does not apply | 22 |

C. A Showing Of Economic Loss Or Motive Is Not Required ................ 23

D. The Federal Fraud Statute Does Not Impose A Technical Limitation Requiring A Direct Misrepresentation Or Fraudulent Conduct To The Victim ........................................................................................ 24

IV. Count Three States a Felony Offense for Computer Fraud, Consistent with the Constitution, and Cannot be Dismissed. ................................. 26

A. Count Three States an Offense of a Violation of 18 U.S.C. § 1030(a)(2). ..................................................................................... 26

1. Count Three pleads all the elements of an offense under section 1030(a)(2)(C). ............................................................... 26

2. Count Three does not charge Defendant with committing a crime in furtherance of itself ..................................................... 27

B. Count Three Charges a Felony. ......................................................... 28

1. Defendant's arguments about Tennessee privacy law do not support dismissal ......................................................................... 30

2. The Superseding Indictment amply satisfies *Apprendi* .............. 31

C. Charging Defendant with a Violation of Section 1030 is Consistent with the Constitution. ......................................................................... 32

1. Section 1030 is not vague ........................................................ 32

2. Section 1030(b)(2)(B)(ii)'s reference to state torts is neither "incongruous" nor "constitutionally unfair." ............................. 34

3. Section 1030 was enacted consistent with the Commerce Clause, and Defendant cannot argue that he should be excised from the regulated class ................................................. 34

V. Count Four States a Felony Offense for Destruction of Evidence, Consistent with the Constitution, and Cannot be Dismissed. ...................... 34

A. Count Four States an Offense of a Violation of 18 U.S.C. § 1519. ..... 34

1. Scienter Requirement ................................................................ 36

2. Defense Arguments Have Been Considered And Rejected By Other Courts ......................................................................... 38

3.  Review of the Legislative History is Unwarranted and Inappropriate .............................................................. 43

4.  The Legislative History Confirms The Broad Application Of Section 1519 ......................................................... 44

B.  Charging Defendant with a Violation of Section 1519 is Consistent with the Constitution. .......................................................... 46

1.  The Defendant Lacks Standing For A Facial Challenge To Section 1519 ............................................................... 46

2.  Other Courts Have Rejected Vagueness Challenges .................. 47

3.  Defendant Lacks Standing To Assert An Eighth Amendment Violation ............................................... 51

CONCLUSION ............................................................................. 53

CERTIFICATE OF SERVICE ......................................................... 54

# ARGUMENT

## I. THE MOTION TO DISMISS STANDARD IS DEFERENTIAL

An "indictment must: (1) set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (quotation marks and citations removed). Normally, an indictment satisfies this minimal standard simply by "using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense," all "accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *Id.* (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)); *see also Hamling v. United States*, 418 U.S. 87, 117-18 (1974); *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) ("An indictment is usually sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense."); *United States v. Monus*, 128 F.3d 376, 388 (6th Cir. 1997) (same, concluding that the statutory language of Section 1503 was sufficient to place the defendant on notice).

In considering a motion to dismiss an indictment, the Court is limited to reviewing the four corners of the indictment, and the truth of the allegations are presumed. *See, e.g., Costello v. United States*, 350 U.S. 359, 362-63 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."); *United States v. Powell*, 823 F.2d

996, 1000 (6th Cir. 1987) ("The Fifth Amendment does not require federal courts to examine the sufficiency of the evidence upon which a grand jury relies to bring a true bill."); *see also United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment. On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.") (citations omitted); *United States v. Perkins*, 748 F.2d 1519, 1524 (11th Cir. 1984) ("the validity of an indictment is determined 'from reading the indictment as a whole and ... by practical, not technical considerations'") (quoting *United States v. Markham*, 537 F.2d 187, 192 (5th Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977)).

II.    **COUNT ONE STATES A FELONY OFFENSE FOR IDENTITY THEFT, CONSISTENT WITH THE CONSTITUTION, AND CANNOT BE DISMISSED.**

A.    *Count One States an Offense of a Violation of 18 U.S.C. § 1028.*

Count One charges Defendant with violating 18 U.S.C. § 1028(a)(7) & (c)(3)(A), notifies him that one theory of liability might be aiding and abetting under 18 U.S.C. § 2, and fairly places Defendant on notice that 18 U.S.C. § 1028(b)(2)(B) defines the statutory maximum for that offense. The indictment does this, in part, by repeating the statutory language and describing the date and place of the offense. That, alone, satisfied the Government's obligation to plead the elements of the offense, put Defendant on fair notice, and enabled him to assert a double jeopardy defense against a future duplicative prosecution.

1. Count One properly alleges that Defendant had the intent to commit unlawful activity that constitutes a violation of Federal law

Section 1028(a) prohibits conduct when a defendant had "the intent to commit, or to aid or abet… any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law."  18 U.S.C. § 1028(a)(7).

The Superseding Indictment, tracking this language, charges that Defendant had "the intent to commit, and to aid or abet… any unlawful activity that constitutes a violation of Federal law, that is, Fraud and Related Activity in Connection with Computers, under 18 U.S.C. § 1030(a)(2)(C), and Wire Fraud, under 18 U.S.C. § 1343." This is more than what is required to plead the "intent" element of section 1028(a)(7): it pleads that Defendant's "intent" was to commit an additional violation of Federal law, and, going beyond what is required of an indictment, even informs the Defendant of which "violations" those were.  *Cf. United States v. Thompson,* 515 F.3d 556, 566 n.2 (6th Cir. 2008) (citing cases holding that it was unnecessary for an indictment to specify the brand name of a firearm).

Defendant argues this charge was insufficient because it did not "set out the essential elements of" the section 1030(a)(2)(C) or Wire Fraud offenses "or… explain how it is alleged they were committed."  (Doc. 42 p. 13).  This argument misreads section 1028(a)(7) and misunderstands the standard on a motion to dismiss.  The United States does not need to charge, or show at trial, that those furthered crimes ever occurred.  It need only show that defendant either had "the intent to commit" those furthered crimes, or, alternately, that defendant's conduct was "in connection with" such a crime.  As the Ninth Circuit held, under section 1028(a)(7), "the government must only prove that the defendant committed the unlawful act with the requisite criminal intent, not that the

defendant's crime actually caused another crime to be committed. … [A] § 1028(a)(7) conviction requires no evidence of an underlying crime." *United States v. Sutcliffe,* 505 F.3d 944, 960 (9th Cir. 2007). Thus, the required element is not that Defendant *committed* the additional violations of Federal law, but that he *had the intent* to do so. The Superseding Indictment charges that he did, so Count One cannot be dismissed for failure to plead the sub-elements of violations of section 1030(a)(2)(C) or section 1343.

2.     Count One properly alleges a "means of identification"

Tracking the statutory text, the Superseding Indictment charges that Defendant "did knowingly transfer, possess, and use…a means of identification of another person." This, alone, would have been enough to satisfy the easily-met pleading standard in *United States v. McAuliffe,* 490 F.3d 526, 531 (6th Cir. 2007).

Yet the Superseding Indictment gave Defendant more detail, going on to specify that the "means of identification" were "the Yahoo! ID and date of birth of Governor Sarah Palin." Defendant argues (Doc. 42, pp. 13-19) that those are not means of identification.

Even without consulting the statutory definition, it is not difficult to conclude that something that is called an "ID"—an abbreviation of the word "identification"—is, in fact, a "means of identification." Consulting the statutory definition makes it even clearer that a Yahoo! ID is a "means of identification":

> the term "means of identification" means ***any name*** or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—
>
> > (A) ***name***, social security number, ***date of birth,*** official State or government issued driver's license or identification number, alien registration number,

4

government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) *unique electronic identification* number, *address*, or routing code; or

(D) telecommunication identifying information or access device (as defined in section 1029(e))

18 U.S.C. § 1028(d)(7) (emphasis added).

A Yahoo! ID is a "name" in every sense of this definition. It names a Yahoo! user account, and that account's associated e-mail address. Standing alone, it "identifies" one and only one account, and thus identifies a specific individual. The word "ID" in the description "Yahoo! ID," in other words, is well-deserved, and qualifies as either a "name," under section 1028(d)(7)(A), or "unique electronic identification address" under section 1028(d)(7)(C). Furthermore, Governor Palin's date of birth was a "date of birth" under section 1028(d)(7)(A) — specifically listed as an example of a "means of identification." Certainly, the Yahoo! ID and date of birth together are sufficient to identify a particular individual. *See, e.g., United States v. Kowal*, 486 F.Supp.2d 923 (N.D. Iowa 2007) ("The court finds that the surname 'Tipton,' when used 'in conjunction with' the SSN ending in the four digits 0053 and the birth month of December is a means of identification of a 'specific individual,' namely, Larry William Tipton. *See* 18 U.S.C. § 1028(d)(7)(A). The phrase 'in conjunction with' in § 1028(d)(7) is a broad phrase of § 1028(c)(3)(A).").

Defendant argues the Yahoo! ID was "the opposite of a means of identification" because it was an "alias." It is clear from the statute, however, that all sorts of identifiers

qualify as a "means of identification" even if they contain *no* part of a person's full legal name. The statute even provides that *numbers,* such as an "identification number" or driver's license serial number, can serve as means of identification. *See* 18 U.S.C. § 1028(d)(7). Defendant's argument is similar to one rejected by the Ninth Circuit in *United States v. Blixt,* 548 F.3d 882, 887-88 (9th Cir. 2008). There, the defendant argued that a signature was not a "means of identification," because it was an indecipherable "series of lines, curves, and squiggles." *Id.* The court rejected that argument on the grounds that those lines, curves, and squiggles nonetheless had meaning: the "signature, however illegible, was… nothing more than his name written in a particular way and meant to identify him, specifically." *Id.* The same holds for a Yahoo! ID; no matter how inscrutable it might be on its face, it nonetheless "identif[ies] a specific individual." 18 U.S.C. § 1028(d)(7).

Nor is it dispositive that "[a]nyone can sign on to Yahoo!" with a name such as "gov.bredesen," as the defense suggests. Should someone do that, then under the statute "gov.bredesen" would indeed be a "means of identification" uniquely identifying him or her, even if Governor Phil Bredesen had no connection to the account. Nor is it dispositive that a given individual can have more than one Yahoo! ID. It is clear from the statute that one individual will normally have many "means of identification;" many people, for example, have a passport number as well as a Social Security number as well as a driver's license number as well as a name, and all of these are examples of "means of identification" listed in the statutory definition. Having more than one Yahoo! ID is consistent with that definition.

Defendant cites *United States v. Mitchell,* 518 F.3d 230, 235 (4th Cir. 2008), but that case supports the United States' position. The defendant in *Mitchell* forged a driver's license. The defendant picked a name at random from a phone book, and put that name—"Marcus Jackson"—on the license. More than one man has the name "Marcus Jackson," so the Fourth Circuit concluded that this, alone, was not "sufficient 'to identify a specific individual.'" *Id.* at 234 (*quoting* 18 U.S.C. § 1028(d)(7)). The court noted that "Marcus Jackson," when combined with another identifier such as a date of birth, would have been sufficient to identify a specific individual. The defendant in *Mitchell* did not combine the name with a correct date of birth of any real "Marcus Jackson," *see id.* at 235-36, or with any other correct identifier, so the court held the defendant had not used a "means of identification." *Mitchell* does not apply to this case: Defendant used Governor Palin's real date of birth, and, even if he had not, the name "gov.palin@yahoo.com" is, unlike "Marcus Jackson," globally unique.

### B. *Count One Charges a Felony.*

Defendant argues at length that he can see "no meaningful distinction" between the conduct Congress punished as a misdemeanor in section 1028(a)(4) and the conduct Congress punished as a felony in section 1028(a)(7), and thus asks for dismissal. (Doc. 42 pp. 5-12). Defendant's professed inability to distinguish between 1028's felony and misdemeanor provisions does not permit dismissal, because both Defendant's *premise* and Defendant's *conclusion* are wrong.

Defendant's *premise* is wrong because there are clear distinctions, readily apparent from the text: section 1028(a)(7) requires that the possession of the means of identification be "without lawful authority," while section 1028(a)(4) contains no such

requirement.  Additionally, section 1028(a)(7) prohibits "transfer" and "use" in addition to "possession," while 1028(a)(4) prohibits only "possession."  The memorandum Defendant cites from the Executive Office of United States Attorneys does not support Defendant's argument: it addressed which of section 1028(c)'s penalty provisions applied to which of section 1028(a)'s prohibitions.  It never even hinted that there has ever been any confusion over whether section 1028(a)(7) was a felony.  To the contrary, the penalty provision cited in the Superseding Indictment makes it clear that section 1028(a)(7) describes a felony.

Defendant's *conclusion* is wrong because even if there were "no meaningful distinction," that would mean only that Defendant's conduct violated both section 1028(a)(7)—under which he is charged—and also section 1028(a)(4).  The Sixth Circuit "has explicitly rejected the contention that when both a felony statute and a misdemeanor statute proscribe the defendant's actions, the prosecutor may only proceed under the misdemeanor statute;" instead, "[w]hen the same conduct is prohibited by two penal statutes, the government may proceed under either and the defendant may not complain if the government elects to proceed under the harsher one."  *United States v. Oldfield,* 859 F.2d 392, 398 (6th Cir. 1988) (internal citations and quotation marks omitted); *see also United States v. Batchelder,* 442 U.S. 114, 123-24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.").

C.    *Charging Defendant with a Violation of Section 1028 is Consistent with the Constitution.*

Defendant invites this Court to become the first in the nation to hold that section 1028, a key statute used to prosecute identity thieves, is unconstitutional.  As explained below, this Court should decline the invitation.

1.    Congress had a rational basis to punish possession with lawful authority as a misdemeanor but possession without lawful authority as a felony.

Congress could rationally have concluded that possessing a means of identification "without lawful authorization" deserved a harsher punishment than possessing a means of identification with lawful authorization.  18 U.S.C. § 1028(a)(7). This defeats both Defendant's Equal Protection argument, *see Innes v. Howell Corp.,* 76 F.3d 702, 708 (6th Cir. 1996) (under rational basis review, "any conceivable basis is sufficient to sustain [the statute]"), and Defendant's Eighth Amendment "disproportionate punishment" argument, *see United States v. Walls,* 546 F.3d 728, 738 (6th Cir. 2008) ("the Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are grossly disproportionate to the crime") (internal quotation marks removed)).  Additionally, because Defendant has been neither convicted nor punished, Defendant lacks standing to argue that Count One might, hypothetically, impose an unconstitutional punishment.  *See infra* at Part V.B.3.

2.    Section 1028 is not vague, and does not allow for arbitrary enforcement

Defendant cannot argue section 1028 was vague because Defendant personally knew that his conduct at issue here was illegal.  "Objections to vagueness under the Due

Process Clause rest on the lack of notice," *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988), and therefore there is no vagueness when "reasonable persons would know that their conduct is at risk." *Id.* Thus, a defendant who had actual notice that his conduct was illegal logically cannot claim that the statute is void for vagueness as applied to him. *See United States v. Washam,* 312 F.3d 926, 930 (8th Cir. 2002) (defendant's actual knowledge that conduct was illegal foreclosed vagueness challenge); *United States v. Saffo,* 227 F.3d 1260, 1270 (10th Cir. 2000) ("Saffo had knowledge of the illegality of her activities, and thus this is not a situation where she could not reasonably understand that her contemplated conduct is proscribed." (citation and quotation marks removed)).

Here, there is no doubt that Defendant understood his conduct violated the law; therefore, his vagueness challenge to section 1028 must fail. It simply defies belief to think that a man who used a Yahoo! name and a date of birth that were not his to reset a password for an account that was not his, read e-mail that was not sent to him, and then attempted to cover his tracks never once knew that his conduct placed him at risk of criminal sanction. *Cf. Maynard,* 486 U.S. at 361. Defendant therefore lacks standing to argue that section 1028 is vague: "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others" except in some First Amendment cases. *United States v. Williams,* 128 S.Ct. 1830, 1845 (2008) (*quoting Hoffman Estates v. Flipside,* 455 U.S. 489, 494-495 (1982)).

Finally, citing no favorable authority, Defendant argues that the term "without lawful authority" is "insufficient to create criminal liability," because the term is undefined. (Doc. 42 p. 12). The Due Process Clause does not require that every word in a statute be accompanied by a definition. *See United States v. Patterson,* 431 F.3d 832,

836 (5th Cir. 2005) (rejecting vagueness challenge based on a criminal statute not defining "unlawful user"). "Condemned to the use of words, we can never expect mathematical certainty from our language," and while "the fertile legal imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question," that does not render a statute vague. *Grayned v. City of Rockford,* 408 U.S. 104, 112 & n.15 (1972) (citations and punctuation omitted). Defendant's professed inability to tell whose "lawful authority" was required is an argument that the statute is broad, not that it provides no guidance at all. As Defendant notes, the Sixth Circuit has already rejected a different vagueness challenge to section 1028. *See United States v. Gros,* 824 F.2d 1487, 1497 (6th Cir. 1987). The *Gros* court cited with approval a Fourth Circuit case that rejected a defendant's "contention that section 1028(d)(1)'s definition of identification document is constitutionally over-broad or vague." *United States v. Quinteros,* 769 F.2d 968, 970 (4th Cir. 1985).

> 3. Section 1028 was enacted consistent with the Commerce Clause, and Defendant cannot argue that he should be excised from the regulated class.

As Defendant notes (Doc. 45, p. 2), there are "three general categories of regulation in which Congress is authorized to engage under its commerce power." *Gonzales v. Raich,* 545 U.S. 1, 16 (2005). Namely:

> First, Congress can regulate the channels of interstate commerce. Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. Third, Congress has the power to regulate activities that substantially affect interstate commerce.

*Id.* at 16-17 (citations omitted).

These three categories are independent. Yet, while listing all three, Defendant focuses only on the last (whether his conduct "substantially affect[ed] interstate commerce"). It is abundantly clear, however, that Congress had the right to regulate Defendant's conduct under either the first or second category. "As both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.'" *United States v. Sutcliffe,* 505 F.3d 944, 952-53 (9th Cir. 2007) (*quoting United States v. Trotter,* 478 F.3d 918, 921 (8th Cir. 2007) (per curiam) (*quoting United States v. MacEwan,* 445 F.3d 237, 245 (3d Cir. 2006))). The notion that Congress may, pursuant to the Commerce Clause power, regulate interstate electronic communication has been well-settled since at least 1877, when the Supreme Court held that the Commerce Clause gave Congress the authority to regulate telegraphs. *See Pensacola Tel. Co. v. Western Union Tel. Co.,* 96 U.S. (6 Otto) 1, 10 (1877) ("it cannot for a moment be doubted that this powerful agency of commerce and intercommunication comes within the controlling power of Congress").

Defendant claims the Superseding Indictment does not establish that his conduct had an effect on interstate commerce. It does not need to: Section 1028, as applied to this case, governs the use of the Internet, so its application is well within the power of Congress. Nor can defendant argue that his particular conduct did not affect interstate commerce. As the Supreme Court held the last time it considered the application of the Commerce Clause to a federal criminal statute, "where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class." *Raich,* 545 U.S. at 23 (citations and quotation marks removed). *Raich* rejected the argument that individuals raising their own

marijuana crop could not be regulated by Congress because their particular activity had no effect on interstate commerce. *See id.* Given that Defendant resided in Tennessee, used the Internet, victimized a California corporation, and victimized the governor of a different state, it is impossible to reach the conclusion that his conduct could not be regulated under the interstate commerce clause. *Cf. United States v. Klopf*, 423 F.3d 1228, 1239 (11th Cir. 2005) ("we now hold that the government must prove only a minimal nexus with interstate commerce in a § 1028(a) prosecution to satisfy the 'in or affects interstate or foreign commerce' requirement").

## III. COUNT TWO STATES AN OFFENSE FOR WIRE FRAUD AND CANNOT BE DISMISSED.

A. *Count Two States an Offense of a Violation of 18 U.S.C. § 1343.*

In considering a motion to dismiss an indictment, the Sixth Circuit has identified three elements under the fraud statute: (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of property. *United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (wire fraud); *see also United States v. McAuliffe*, 490 F.3d 526, 532 (6th Cir. 2007) (comparable elements for mail fraud).[1] The Superseding Indictment alleges each element of the wire fraud offense.

---

[1] Mail fraud cases may be considered in construing the wire fraud statute. *See Pasquantino v. United States*, 544 U.S. 349, 355 n.2 (2005) (noting that "we have construed identical language in the wire and the mail statutes *in pari* material"); *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here."); *United States v. McAuliffe*, 490 F.3d 526, 532 n.3 (6th Cir. 2007) ("The bank, mail, and wire fraud statutes all employ identical 'scheme to defraud' language and thus are to be interpreted *in pari* material.").

Count Two, paragraph 18, tracks the statutory language of the statute, and includes the first and third elements required for wire fraud along with materiality. The second element is alleged in paragraph 26, which expressly alleges "the transmission of, an electronic transmission between the defendant's computer in Knoxville, Tennessee and Yahoo! computers located outside the State of Tennessee."

Paragraphs 19-25, allege specific steps taken by the defendant to further the scheme and artifice to defraud. Paragraph 19 avers that "defendant KERNELL falsely represented his identity as the account holder of the e-mail account gov.palin@yahoo.com and concealed his true identity in resetting the password on the e-mail account." Paragraph 20 alleges that "defendant KERNELL used identification information belonging to Governor Palin without authorization to reset the password and obtain control and access to the e-mail account. The identification information included her Yahoo! ID, birthday, country of residence and postal code used to answer the identity validation questions for resetting the password." Paragraph 21 states that the defendant "obtained control and access to confidential and personal information held in the e-mail account gov.palin@yahoo.com." As noted in paragraph 22 the defendant "used at least one proxy server to conceal his true identity and location while he exercised control over the e-mail account." As part of the fraud scheme, paragraph 23 states that the defendant "reset the password and deprived the account holder of the information in the account." Paragraph 24 avers that the defendant "disclosed the confidential and personal information in the e-mail account gov.palin@yahoo.com to third parties." In furthering the scheme, paragraph 25 states that the defendant "removed, altered, concealed and

covered up records and files on his laptop computer concerning his involvement in the scheme."

The introductory allegations in the Superseding Indictment highlight the conduct of the defendant, which went beyond merely reviewing the contents of the e-mail account. In fact, as alleged, the defendant's conduct resulted in the disclosure of the contents of the e-mail account to others and posting of the information from the account on the Internet for others to see. The Superseding Indictment more than sufficiently provides notice to the defense of the fraud scheme in this case.

> B.    *"Property" Under The Wire Fraud Statute Includes Tangible and Intangible Property and Information*

The defense incorrectly suggests that the "indictment fails to allege a property interest protected under the wire fraud statute." Defense Motion, at 1. As noted above, the language in the indictment specifies that the form of the property included "information data and pictures from the e-mail account gov.palin@yahoo.com." Nothing more is required. The defense's narrow reading of the statute is inconsistent with the plain meaning of the statute and case law applying it.

> 1.    The Supreme Court and lower courts have repeatedly treated information as "property" under the wire fraud statute.

In *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court noted that "the phrase 'any scheme or artifice to defraud,'" was "to be interpreted broadly insofar as property rights are concerned." *McNally*, 488 U.S. at 356 (quoting *Durland v. United States*, 161 U.S. 306 (1896)); *see also United States v. Belt*, 868 F.2d 1208, 1212 (11th Cir. 1989) (noting broad interpretation given to property rights in *McNally*). With few

15

exceptions, the Supreme Court has interpreted the Wire Fraud statute to hew closely with the ordinary meaning of the term "property," going so far as to reference Black's Law Dictionary's definition of that term as "extend[ing] to every species of valuable right and interest." *Pasquantino v. United States*, 544 U.S. 349, 356 (2005) (*quoting* Black's Law Dictionary 1382 (4th ed. 1951)).[2]  The Supreme Court has also noted that "property," under the federal fraud statutes, entails "something of value."[3]

---

[2] In *Pasquantino*, the Supreme Court held that a scheme "to defraud a foreign government of tax revenue violates the  federal wire fraud statute" and that "Canada's right to uncollected excise taxes on the liquor petitioners imported into Canada is 'property' in its hands." *Pasquantino*, 544 U.S. at 353, 355.  The Defense Brief cites to *Pasquantino*, without referring to the Supreme Court definition of "property."  (Doc. 44, p. 4).

[3] *See, e.g., McNally v. United States*, 483 U.S. 350, 358 (1987) (noting "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching'") (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)) (footnote omitted); *see also Carpenter*, 484 U.S. at 27 ("As we observed last Term in *McNally*, the words 'to defraud' in the mail fraud statute have the 'common understanding' of 'wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of *something of value* by trick, deceit, chicane or overreaching.'") (quoting *McNally*, 483 U.S. at 358) (emphasis added; internal quotations omitted).  Other courts have applied the *McNally* "something of value" definition of "property" under the federal fraud statutes.  *See, e.g.*, *United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998) ("The phrase 'scheme or artifice ... for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' 18 U.S.C. § 1341, is broad enough to include a wide variety of deceptions intended to deprive another of money or property."); *United States v. Mullins*, 992 F.2d 1472, 1475 (9th Cir. 1993) (mileage credits for free airline tickets constitute "property" as a "thing of value" under the mail and wire fraud statutes), *cert. denied*, 509 U.S. 905 (1993); *United States v. Loney*, 959 F.2d 1332, 1336 (5th Cir. 1992) (applying the "something of value" definition from *McNally* to conclude that a flight coupon constituted "property"; "we construe 'property' in a broad sense for purposes of the federal fraud statutes").

It is no surprise, then, that the Supreme Court has held that "property" under the wire and mail fraud statute encompasses tangible and intangible property, and includes confidential information. In *Carpenter v. United States*, 484 U.S. 19 (1987), the Supreme Court explicitly noted that prior precedent did not confine "property" under the fraud statute to tangible matters and rejected the defense argument to confine the statute to tangible property:

> "Here, the object of the scheme was to take the Journal's confidential business information - the publication schedule and contents of the 'Heard' column - and its intangible nature does not make it any less 'property' protected by the mail and wire fraud statutes. *McNally* did not limit the scope of 1341 to tangible as distinguished from intangible property rights."

*Carpenter v. United States*, 484 U.S. 19, 25 (1987); *see also United States v. Schreier*, 908 F.2d 645, 647 (10th Cir. 1990) ("The Supreme Court has recognized that the taking of intangible property may be the basis of a wire fraud charge.") (citing *Carpenter*), *cert. denied*, 498 U.S. 1069 (1991).

In *Carpenter,* the Supreme Court held that the mail and wire fraud statutes were applicable to a reporter's scheme to sell the contents of a Wall Street Journal column to brokers for a profit. The Court explained that "the object of the scheme was to take the Journal's confidential business information . . . and its intangible nature does not make it any less 'property' protected by the mail and wire fraud statutes." *Id*. at 25. The owner of the information "had a property right in keeping confidential and making exclusive use, prior to publication," of the contents. *Id*. at 26. Further, a monetary loss was not required, as the owner of the information had "been deprived of its right to exclusive use

of the information, for exclusivity is an important aspect of confidential business information and most private property for that matter." *Id*. at 26.

After *Carpenter*, the Supreme Court reinforced the principle that confidential information constitutes "property" under the federal fraud statute. *See United States v. O'Hagan*, 521 U.S. 642, 654 (1997) (in securities and mail fraud case, explaining Carpenter: "A company's confidential information … qualifies as property to which the company has a right of exclusive use. The undisclosed misappropriation of such information, in violation of a fiduciary duty … constitutes fraud akin to embezzlement - the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.") (citations and quotation marks omitted), *on remand*, *United States v. O'Hagan*, 139 F.3d 641, 651-52 (8th Cir. 1998) ("The indictment, reasonably read, charges O'Hagan with the fraudulent use of confidential business information held by Grand Met and Dorsey & Whitney. Confidential business information is considered 'property' as that term is used in the federal mail fraud statute.").

*United States v Czubinski*, relied upon by the defense, supports the use of the wire fraud theory to obtain confidential information from a computer, assuming, as here, sufficient allegations and proof. (Doc. 44, p. 9-10). The First Circuit did not hold, as the defense suggests, the acquisition of taxpayer information via a computer could never satisfy the "property" element of the fraud statute. To the contrary, the circuit expressly noted "that confidential information may constitute intangible 'property' and that its unauthorized dissemination or other use may deprive the owner of its property rights." *Czubinski*, 106 F.3d at 1074. In fact, the First Circuit has subsequently cited *Czubinski* for the proposition that: "[c]onfidential information may be considered property for the

Case 3:08-cr-00142   Document 48   Filed 06/08/09   Page 22 of 58

purposes of §§ 1341 and 1343. *See United States v. Czubinski*, 106 F.3d 1069, 1074 (1st

Cir. 1997)." *United States v. Martin*, 228 F.3d 1, 16 (1st Cir. 2000). Finally, *Czubinski*

supports the use of wire fraud to obtain confidential information through a computer

where there is sufficient proof, which was lacking in that case. As the circuit explained:

> "The fatal flaw in the government's case is that it has not
> shown beyond a reasonable doubt that Czubinski intended
> to carry out a scheme to deprive the IRS of its property
> interest in confidential information. Had there been
> sufficient proof that Czubinski intended either to create
> dossiers for the sake of advancing personal causes or to
> disseminate confidential information to third parties, then
> his actions in searching files could arguably be said to be a
> step in furtherance of a scheme to deprive the IRS of its
> property interest in confidential information."

*Czubinski*, 106 F.3d at 1074.

     *Czubinski,* then, is in line with a large set of circuit court cases that have held that

intangible information is a form of property protected by the wire fraud and mail fraud

statutes. In particular, the following forms of information have been classified as

"property" under the wire or mail fraud statutes:

- Confidential business information stored in a computer, *see United States v. Seidlitz*, 589 F.2d 152, 160 (4th Cir. 1978);

- Social Security information of adopted children and their birth parents, *United States v. Musser*, 16 F.3d 1222, No. 93-4105, 1994 WL 54340 (6th Cir.) (per curiam), *cert. denied*, 513 U.S. 842 (1994);

- Information about telephone customers, see *United States v. Louderman*, 576 F.2d 1383 (9th Cir.), *cert. denied*, 439 U.S. 896 (1978); [4]

---

[4] The Ninth Circuit continues to cite to the *Louderman* decision. *See, e.g.*, *United States v. Weyhrauch,* 548 F.3d 1237, 1245 (9th Cir. 2008) (noting *Louderman* "involved a

- Standardized test results, *see United States v. Hedaithy*, 392 F.3d 580, 596-97 (3d Cir. 2004);

- Confidential information about a law firm client's recapitalization, *see United States v. Grossman*, 843 F.2d 78, 86 (2nd Cir. 1988);

- Confidential information about the possible locations of oil wells, *see United States v. Kent*, 608 F.2d 542, 546 (5th Cir. 1979);

- Confidential bid information to companies competing in a subcontract bidding process, *see United States v. Poirier*, 321 F.3d 1024, 1029-31 (11th Cir. 2003); *United States v. Belt*, 868 F.2d 1208, 1209 (11th Cir. 1989);

---

traditional wire fraud prosecution rather than an honest services mail fraud prosecution"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) ("Both statutes require a 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.' 18 U.S.C. § 1341, see also id. § 1343. This language has been given a broad interpretation, *see United States v. Louderman*, 576 F.2d 1383, 1388 (9th Cir. 1978), and may be read to reach certain types of fraudulent settlement communications."); *S.E.C. v. Clark,* 915 F.2d 439, 449 (9th Cir. 1990) ("It is well settled that misappropriation and use of confidential information in breach of a fiduciary or similar duty amounts to fraud within the meaning of those statutes. *See, e.g., Carpenter*, 484 U.S. at 27-28 (misappropriation of confidential newspaper information); *Louderman*, 576 F.2d at 1387-88 (same).") (other citation omitted); *see also United States v. Manarite*, 44 F.3d 1407, 1411 n.5 (9th Cir. 1995) ("The mail fraud and wire fraud statutes "share identical language" regarding the scheme requirements, so the wire fraud statute is read in light of the case law on mail fraud. *United States v. Louderman*, 576 F.2d 1383, 1387 n.3 (9th Cir.), cert. denied, 439 U.S. 896 (1978)."); *United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir. 1991) ("The court instructed the jury that the use of the mails and wires must be "part of the plan or scheme." This is an accurate statement of the law. *See Schmuck v. United States*, 489 U.S. 705 (1989) (mailing need not be essential to fraudulent scheme to be part of it); *United States v. Louderman*, 576 F.2d 1383, 1387 n.3 (9th Cir.), *cert. denied*, 439 U.S. 896 (1978) (wire fraud).").

- Trade secrets of a current employer, *see United States v. Martin*, 228 F.3d 1, 16-17 (1st Cir. 2000);

- Confidential information contained in an E911 text file, *United States v. Riggs*, 739 F. Supp. 414, 418-19 (N. D. Ill. 1990), *aff'd*, 967 F.2d 561 (11th Cir. 1992).

     2.     The Superseding Indictment pleads facts that permit no conclusion but that Governor Palin's account was property.

Among other allegations in the Superseding Indictment, paragraph 8 alleges: "In resetting the password to the e-mail account gov.palin@yahoo.com, defendant KERNELL established exclusive control over the confidential and personal information in the account and deprived the account holder of access to the account." The fact that Defendant was able to take *exclusive control* over the account, thereby *depriving* others from access to it, is consistent with the account being property. Exactly these attributes were crucial to the Supreme Court in *Carpenter v. United States*, 484 U.S. 19 (1987)*:* there, the owner of the confidential information "had a right to decide how to use it prior to disclosing it" to others. *Carpenter*, 484 U.S. at 26; *see also id*. at 26-27 (noting "exclusivity is an important aspect of confidential business information and most private property for that matter"). Other cases have noted these property attributes. *See, e.g., United States v. Carlo*, 507 F.3d 799, 802 (2d Cir. 2007) (per curiam) (noting "a defining feature of most property is the right to control the asset in question" and "include[s] the interest of a victim in controlling his or her own assets"); *United States v. Gray*, 405 F.3d 227 (4th Cir. 2005) ("A property owner has an intangible right to control the disposition of its assets.") (collecting cases); *United States v. Hedaithy*, 392 F.3d 580, 595 (3d Cir. 2004) (in recognizing confidential testing information constituted 'property,' noting

company was deprived of its right to exclude use of the information); *United States v Czubinski*, 106 F.3d 1069, 1074 (1st Cir. 1997) ("The government correctly notes that confidential information may constitute intangible "property" and that its unauthorized dissemination or other use may deprive the owner of its property rights.").

### 3.     The rule of lenity does not apply.

Given the definition of "property" used by the Supreme Court, the rule of lenity does not apply in this case. (Doc. 44, p. 9). Further, as noted above, case law has uniformly recognized that "property" under the federal fraud statute may take a variety of forms, and may include information. *See, e.g., Staples v. United States*, 511 U.S. 600, 619 n.17 (1994) ("In reaching our conclusion, we find it unnecessary to rely on the rule of lenity, under which an ambiguous criminal statute is to be construed in favor of the accused. That maxim of construction is reserved for cases where, after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute.") (quotation marks, brackets and other citations omitted) (citing *Chapman v. United States*, 500 U.S. 453, 463 (1991) (rule of lenity does not apply absent "grievous ambiguity or uncertainty" in the statute) (citation and quotation marks omitted)).[5]

---

[5] The defense citation is unhelpful to the money laundering case involving the use of narcotics trafficking proceeds in *United States v. Velez, Kuehne and Ochao*, Case No. 1:05-cr-20770-MGC, R&R: Document 228 (SDFL Feb. 20, 2009). One count involved a conspiracy to commit wire fraud using the Black Market Peso Exchange. The issue in the case concerned "whether a 'right' to seek forfeiture constitutes a cognizable 'property' right under the mail and wire fraud statutes." No related forfeiture rights are implicated in this case. No final ruling has been issued as the case remains pending before the district court.

C.    *A Showing Of Economic Loss Or Motive Is Not Required*

The defense incorrectly asserts that a showing of economic loss or motive is required to support wire fraud.  (Doc. 44, pp.  6-8).  Such a limitation is not included within the terms of the statute, which, as noted earlier, is intended to have broad application.

Not surprisingly, the Supreme Court, Sixth Circuit, and other courts have repeatedly held that there is no requirement of any economic loss.  *See Carpenter*, 484 U.S. at 26-27 (rejecting argument "that a scheme to defraud requires a monetary loss, such as giving the information to a competitor; it is sufficient that the Journal has been deprived of its right to exclusive use of the information, for exclusivity is an important aspect of confidential business information and most private property for that matter"); *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994) ("'[T]he mail and wire fraud statutes do not require proof that the intended victim was actually defrauded; the actual success of a scheme to defraud is not an element of either § 1341 or § 1343.'"); *United States v. Ames Sintering Co.*, 927 F.2d 232, 235 (6th Cir. 1990) ("The government need only charge that the defendant intended to defraud the victim of money or property, not that the victim was actually deprived of money or property."; success in the wire fraud scheme is not required); *United States v. Patterson*, 528 F.2d 1037, 1041 (5th Cir. 1976) ("no necessity for the government to prove actual financial loss" to establish wire fraud offense once intent to defraud was shown).

D.     *The Federal Fraud Statute Does Not Impose A Technical Limitation Requiring A Direct Misrepresentation Or Fraudulent Conduct To The Victim*

Notwithstanding the plain language of the statute, the defense asks this Court to be the first in the Sixth Circuit to impose a new limitation on the federal fraud statute: the defense suggests that the "misrepresentations have to be directed at the victim." (Doc. 44, p. 13).  The statute contains no such limitation, so this argument must be rejected.[6]

The plain language of the statute does not require that a misrepresentation be made only to the victim.  The wire fraud statute prohibits "*any* scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" involving the use of interstate wires "for the purpose of executing such scheme or artifice."  18 U.S.C. § 1343 (emphasis added).  By using the term "any," the statute applies to all variations of schemes to defraud using interstate wires, regardless of whether a direct misrepresentation was made to a particular victim. *See, e.g., United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting Webster's Third New International Dictionary 97 (1976)).

Other courts have considered the argument that misrepresentations have to be directed at the victim, and rejected it.  The First Circuit, for example, said:

> "Nothing in the mail and wire fraud statutes requires that the party deprived of money or property be the same party

_____

[6]  It is unnecessary for the Court to consider the defense request to impose a new limitation that a misrepresentation must be made directly to the victim.  A fraud scheme may involve more than one victim, as in the matter at bar.  One of the victims as part of the charged fraud scheme was Yahoo!, which limited access to the information data and picture, in the e-mail account to the account holder.

who is actually deceived. The phrase 'scheme or artifice ... for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' 18 U.S.C. § 1341, is broad enough to include a wide variety of deceptions intended to deprive another of money or property…. We see no reason to read into the statutes an invariable requirement that the person deceived be the same person deprived of the money or property by the fraud. If, for example, the role of a government regulator is to protect the monetary interests of others, a scheme to mislead the regulator in order to get at the protected funds will affect 'property rights' as required in McNally."

*United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998). The First Circuit also rejected a construction of its earlier cases that imposed such a limitation on the statute, including cases cited in the defendant's brief.

Not surprisingly, other courts have reached the same conclusion. *See, e.g., United States v. Olatunji*, 872 F.2d 1161, 1167 (3d Cir. 1989) (rejecting a requirement that a fraud indictment "must specifically allege that such false statements and representations were made directly to the ultimate victim"); *United States v. Bryant*, 556 F.Supp.2d 378 (D. N.J. 2008) (rejecting motion to dismiss indictment for failure to allege that a direct misrepresentation was communicated to the victim); *see also Gutstein v. United States*, 86 F.3d 1162, *2, 1996 WL 266493 (9th Cir. 1996) ("[W]e reject Gutstein's argument that the wire and securities fraud statutes contain a 'victim requirement,' and that because of EGT's and Harrison's 'blue sky' violations, he could not, as a matter of law, have been convicted of wire and securities fraud…. Gutstein's argument that he could not have been convicted of wire fraud, because the government did not prove that his conduct created a 'victim' who had a right to recover for damage to his or her property rights, necessarily fails").

Under the defendant's approach, if a custodian safeguards property and misrepresentations are made to a custodian (but not directly to the owner of the property), mail or wire fraud would not apply. The fraud statute was not intended to turn on such technicalities. As long as the elements off the offense apply to the facts of the case, a violation of the fraud statute has occurred.

## IV. COUNT THREE STATES A FELONY OFFENSE FOR COMPUTER FRAUD, CONSISTENT WITH THE CONSTITUTION, AND CANNOT BE DISMISSED.

### A. *Count Three States an Offense of a Violation of 18 U.S.C. § 1030(a)(2).*

#### 1. Count Three pleads all the elements of an offense under section 1030(a)(2)(C).

Count Three tracks the language of the statute, and therefore pleads all the elements required by the statute. As it read at the time of Defendant's offense, section 1030(a)(2)(C) provided, "Whoever… intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains… information from any protected computer if the conduct involved an interstate or foreign communication… shall be punished as provided in subsection (c) of this section." 18 U.S.C. § 1030(a)(2)(C) (prior to Sept. 26, 2008 amendment).[7]

Count Three tracks this language, charging that Defendant "intentionally and without authorization, and in excess of authorization, accessed a protected computer by means of an interstate communication and thereby obtained information." (Superseding Indictment at ¶ 27). Though not required, the Superseding Indictment gives additional

---

[7] After the date of Defendant's offense, The Identity Theft Enforcement and Restitution Act of 2008 amended the section to delete the requirement that conduct "involve an interstate or foreign communication." *See* Identity Theft Enforcement and Restitution Act of 2008, Pub. L. No. 110-326, § 203, 122 Stat. 3560, 3561 (Sept. 26, 2008).

detail. It describes the manner of access, the protected computer, the information obtained, and the interstate nature of the communication. (*Id.* at ¶¶ 2, 3, 6, 7, 10).

Defendant moves for dismissal because the Superseding Indictment does not allege his motive (Doc. 40, p. 3), his "primary purpose," *id.,* or identify the "privacy interest" invaded, *id.* at 4-5. The statute requires no such elements, and Defendant cites no cases holding that those elements must be proven to show a violation of section 1030(a)(2)(C). Section 1030 makes it a crime to access a computer without authorization and steal data, regardless of the defendant's purpose and regardless of the data's level of privacy or secrecy. *See United States v. Willis,* 476 F.3d 1121, 1125 (10th Cir. 2007) ("the requisite intent to prove a violation of § 1030(a)(2)(C)… is the intent to obtain unauthorized access of a protected computer" only). Therefore, Count Three cannot be dismissed on these grounds.

      2.      Count Three does not charge Defendant with committing a crime in furtherance of itself

The Superseding Indictment alleges that Defendant's illegal access furthered other crimes and torts, "including aiding and abetting other violations of" section 1030(a)(2)(c), *as well as* tortuous invasion of privacy. (Superseding Indictment ¶ 27). To survive a motion to dismiss, the United States does not need to give any more detail than that. However, the Superseding Indictment, once again, provides Defendant with more notice than it must. It describes how Defendant's conduct in changing Governor Palin's password not only furthered his additional criminal conduct, but also how he aided and abetted the illegal accesses by other people of Governor Palin's account: "Defendant KERNELL also posted the reset password and provided others with the means of access to the e-mail account, including confidential and personal information in

the account. At least one other individual successfully used the reset password to access the gov.palin@yahoo.com e-mail account." (Superseding Indictment ¶ 12).

Defendant discourses for pages on the incorrect assumption that "the Government has charged that Mr. Kernell committed a crime in furtherance of the same crime" (Doc. 40, p. 2). This is wrong: the Superseding Indictment charges Defendant with committing a crime in furtherance of *other crimes and torts.* While some of that furthered conduct might, also, be prohibited by section 1030(a)(2)(C), they are nonetheless different courses of conduct than the illegal access charged in Count Three.

Most of Defendant's argument must be rejected because of this fundamental error alone: Count Three does not "aggregate identical federal misdemeanor provisions into a felony" (*id.* at 2-4); does not allege "aiding and abetting" twice (*id.* at 4); and is not duplicitous (*id.* at 5-8). Even if it were duplicitous, duplicity is not grounds for dismissing an indictment. *See United States v. Duncan,* 850 F.2d 1104, 1108 n.4 (6th Cir. 1988) ("[a]s rules of pleading, the defects of duplicity and multiplicity are not fatal to an indictment but may be cured by reformulation.").

### B.      *Count Three Charges a Felony.*

Much of Defendant's motion to dismiss Count Three does not argue that Count Three fails to state an offense, but, rather, that "Count 3 Fails to State a *Felony* Offense." (Doc. 40, p. 2) (emphasis added). Defendant, then, appears to be using a motion to dismiss as a mechanism to influence any eventual sentencing. This is premature; should Defendant be convicted, he can argue at sentencing about the appropriate statutory maximum. For now, the only question is whether the Indictment is sufficient to enable

"[t]he defendant's ability to predict with certainty the judgment from the face of the felony indictment." *Apprendi v. New Jersey,* 530 U.S. 466, 478 (2000). It does.

Count Three charges an illegal computer intrusion under section 1030(a)(2)(C). If this was a first offense, then it is a misdemeanor under section 1030(b)(2)(A), unless it is enhanced to a felony by one of the factors listed in section 1030(b)(2)(B). The factor relevant to this case is listed in section 1030(b)(2)(B)(ii): it increases the statutory maximum sentence to five years if "the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." The Superseding Indictment charged that fact. It both cited section 1030(b)(2)(B)(ii) specifically and, echoing the language of the statute, charged that the offense was "in furtherance of the commission of a criminal and tortious act in violation of the laws of the United States and the State of Tennessee."

Count Three therefore charges Defendant with a felony violation of section 1030(a)(2)(C): it charges that his access not only constituted an illegal intrusion, but furthered *additional* crimes and torts by others. Thus, the penalty provision in section 1030(c)(2)(B)(ii) applies.

That, by itself, was all that was needed to plead the "fact" that Congress specified as being necessary to increase the statutory maximum. Yet the Superseding Indictment goes further: it describes some of the crimes and torts generally, by saying "including aiding and abetting other violations of 18 U.S.C. § 1030(a)(2)(C) (Fraud and Related Activity in Connection with Computers); and tortious invasion of privacy."

1. Defendant's arguments about Tennessee privacy law do not support dismissal

Seizing upon those helpful (though technically surplus) allegations, Defendant argues the entire charge is inadequate. Defendant argues that invasion of privacy torts differ from state to state (Doc. 40, p. 9-11), that Tennessee courts "likely" would not apply Tennessee law to such a claim (*id.* at 11-14), and that the Superseding Indictment fails to "allege a sufficient privacy interest" (*id.* at 4-5).

Every one of these arguments is a factual argument about whether the United States will be able to prove that the Defendant's conduct furthered a Tennessee tort. Therefore, every one of these arguments is utterly beside the point. An argument that the evidence does not show beyond a reasonable doubt that Defendant's offense furthered "any criminal or tortious act" is appropriate for the Defendant's closing argument, but not for a motion to dismiss. The Superseding Indictment need only allege the fact that the Defendant's conduct furthered other crimes and torts; additional detail is not required. *Cf. United States v. Branan,* 457 F.2d 1062, 1064 (6th Cir. 1972) ("an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.").

Regardless, Count Three could be punished as a felony even if Defendant prevails in his argument that his conduct did not further a tortuous invasion of privacy. Even if the jury concludes that Defendant's conduct furthered no "tortious invasion of privacy," the jury could still find that Defendant's conduct furthered some other "criminal" or "tortious" act, such as additional violations of section 1030, or other crimes and torts not specified in the Superseding Indictment.

30

2.    The Superseding Indictment amply satisfies *Apprendi*.

Taking this flawed argument one step further, Defendant argues that the

Superseding Indictment fails to satisfy *Apprendi v. New Jersey,* 530 U.S. 466 (2000),

because it fails to paint a complete picture of every aspect of every furthered crimes and

tort.  (Doc. 40, pp. 14-19).

Under *Apprendi,* "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490; *see also United

States v. Cotton,* 535 U.S. 625, 627 (2002) ("such facts must also be charged in the

indictment.").

Here, section 1030(b)(2)(B)(ii) specifies the "fact" that enhances the statutory

maximum, and the Superseding Indictment charged the fact.  A plain reading of section

1030(b)(2)(B)(ii) shows that the "fact" that increases the statutory maximum is that the

"offense was committed in furtherance of any criminal or tortious act in violation of"

state or federal law.  The Superseding Indictment both cited section 1030(b)(2)(B)(ii)

specifically and, echoing the language of the statute, charged that the offense was "in

furtherance of the commission of a criminal and tortious act in violation of the laws of the

United States and the State of Tennessee."  Though not required to, it then provided

further detail, saying that those crimes and torts "includ[ed]," among other possibilities,

"aiding and abetting other violations of 18 U.S.C. § 1030(a)(2)(C) (Fraud and Related

Activity in Connection with Computers); and tortious invasion of privacy."

Defendant argues that providing him with the luxury of descriptions of some of

the crimes and torts was not enough; he argues the Superseding Indictment must charge

all the elements of all the furthered crimes and torts (*id.* at 17-18) and specify the exact

common law Tennessee invasion of privacy tort that was furthered (*id.* at 18-19).

*Apprendi,* however, requires only pleading of the statutorily defined "fact" or

facts that enhance the statutory maximum. *See Apprendi*, 530 U.S. at 490. Here, that

"fact" is that "the offense was committed in furtherance of any criminal or tortious act in

violation of the Constitution or laws of the United States or of any State." 18 U.S.C.

§ 1030(b)(2)(B)(ii). Obviously, proving that fact to the jury will require the presentation

of evidence, and perhaps the proof of other subordinate factual propositions, but

Defendant cites no cases holding that the United States must plead any "fact" to enhance

a statutory maximum other than the "facts" set out in the statute itself. The Federal Rules

say that indictments need only state "the essential facts," Fed. R. Crim. P. R. 7(c)(1), and

there is no indication that the *Apprendi* court sought to change that rule. The purpose of

*Apprendi,* after all, was not to swell indictments with non-essential, non-statutory facts,

but simply to enable "[t]he defendant's ability to predict with certainty the judgment from

the face of the felony indictment." *Apprendi,* 520 U.S. at 478. The Superseding

Indictment easily allows Defendant to determine that Count Three does, indeed, charge

him with a felony.

      C.     *Charging Defendant with a Violation of Section 1030 is Consistent with the Constitution.*

          1.     Section 1030 is not vague

As he does with almost every other section of the United States Code under which

he is charged, Defendant argues that section 1030 is vague. But, as with every other code

section, the same response applies: because Defendant knew his conduct was illegal, he

lacks standing to challenge the vagueness of section 1030. *See supra* at § II.C.2.

Defendant's "vagueness" arguments are really arguments that section 1030 is broad, and that some of its terms are not defined. A defendant cannot make a vagueness challenge to a statute simply by claiming that it uses broad language. As the Seventh Circuit said in rejecting a similar challenge to section 1030 for being unconstitutionally vague,

> [Defendant's] problem is not that § 1030 has been turned in a direction that would have surprised reasonable people; it is that a broad statute has been applied exactly as written, while he wishes that it had not been. There is no constitutional obstacle to enforcing broad but clear statutes. *See Rogers v. Tennessee,* 532 U.S. 451, 458-62 (2001) (discussing *Bouie's* rationale and limits). The statute itself gives all the notice that the Constitution requires.

*United States v. Mitra,* 405 F.3d 492, 496 (7th Cir. 2005) (Easterbrook, J.) (rejecting vagueness definition to section 1030's definition of "computer"). Broad terms, like narrow terms, both put defendants on notice that certain conduct is prohibited. They both, therefore, satisfy the Due Process Clause. *See Maynard v. Cartwright,* 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice.").

Nor can Defendant prove vagueness merely by pointing to undefined words in the statute and declaring that he could read them in more than one way. "Condemned to the use of words, we can never expect mathematical certainty from our language," but the lack of a definition and the inherent indeterminacy of human language is not sufficient to render a statute vague. *Grayned v. City of Rockford,* 408 U.S. 104, 112 & n.15 (1972) (citations and punctuation omitted).

<ol start="2">
<li>Section 1030(b)(2)(B)(ii)'s reference to state torts is neither "incongruous" nor "constitutionally unfair."</li>
</ol>

Citing no part of the Constitution, or any other authority, Defendant argues it is "incongruous and constitutionally unfair" to enhance a sentence because the offense furthered a tort.  (Doc. 40, pp. 8-11).  Congress disagreed; section 1030(b)(2)(B)(ii)'s reference to "tortious act[s]" requires just such an enhancement.  18 U.S.C. § 1030(b)(2)(B)(ii).  The legislative history indicates that Congress believed that "[t]he seriousness of a breach in confidentiality depends, in considerable part, on the value of the information taken, or on what is planned for the information after it is obtained;" thus, "obtaining information of minimal value is only a misdemeanor, but obtaining valuable information, *or misusing information in other more serious ways,* is a felony."  S. Rep. No. 104-357, at 8 (Aug. 27, 1996) (emphasis added).

<ol start="3">
<li>Section 1030 was enacted consistent with the Commerce Clause, and Defendant cannot argue that he should be excised from the regulated class</li>
</ol>

The United States incorporates by reference its argument on this point with respect to Count One.

## V.    COUNT FOUR STATES A FELONY OFFENSE FOR DESTRUCTION OF EVIDENCE, CONSISTENT WITH THE CONSTITUTION, AND CANNOT BE DISMISSED.

A.    *Count Four States an Offense of a Violation of 18 U.S.C. § 1519.*

As set forth below, each court to have considered a similar challenge has rejected it.  No case has been identified concluding that Section 1519 is void for vagueness or unconstitutional as applied.  The plain language of the statute and the scienter requirement insure that the defendant's right to notice has been protected.

Count Four of the Superseding Indictment charges:

> Between on or about September 16, 2008, and on or about
> September 20, 2008, in the Eastern District of Tennessee,
> and elsewhere, defendant DAVID C. KERNELL did
> knowingly alter, destroy, and conceal a record and
> document with the intent to impede, obstruct and influence
> an investigation of a matter by, and within the jurisdiction
> of, the Federal Bureau of Investigation, and in relation to
> and contemplation of such a federal investigation.  [Title
> 18, United States Code, Section 1519]

Paragraph 14 of the Superseding Indictment further alleges:

> "After posting the new password to
> http://www.4CHAN.org, and in contemplation of an
> investigation by law enforcement authorities, defendant
> KERNELL, removed, altered, concealed and covered up
> records and files on his laptop computer relating to his use
> of, and his establishing his control over, the e-mail account
> of Governor Palin. Defendant KERNELL was concerned
> that the Federal Bureau of Investigation and other
> authorities would learn of, and obtain evidence concerning,
> his scheme to gain unauthorized control and access of the
> e-mail account and to disclose confidential and personal
> information from the account to others."

In 2002, Congress enacted Section 1519 as part of the Sarbanes-Oxley Act.[8]

Under traditional statutory construction, the starting point is always the plain meaning of
the language used in the statute.[9]  The purpose of Section 1519 was to close past

---

[8] *See* Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, Title VIII, §§ 802(a), 116 Stat.
800 (July 30, 2002).  Section 1519 provides:

> "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or
> makes a false entry in any record, document, or tangible object with the intent to
> impede, obstruct, or influence the investigation or proper administration of any
> matter within the jurisdiction of any department or agency of the United States or
> any case filed under title 11, or in relation to or contemplation of any such matter
> or case, shall be fined under this title, imprisoned not more than 20 years, or
> both."

[9] *See, e.g., Chrysler Corp. v. Comm'r*, 436 F.3d 644, 654 (6th Cir. 2006) ("we note that
legislative intent should be divined first and foremost from the plain language of the

loopholes that had been identified in other cases applying obstruction of justice

provisions and to protect the integrity of federal investigations and the administration of

justice.  Toward this end, Congress deliberately selected broad language for the new

obstruction provision, as noted below.

1.    Scienter Requirement

As in other cases, the scienter requirement provides an additional basis to dismiss

the vagueness challenge.[10]  Contrary to the defense claim, Section 1519 does not lack a

sufficient mental state.  (Doc. 38, pp.  17-19).

---

statute," which if "read unambiguously and reasonably" ends judicial inquiry); *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001) ("The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.") (citation omitted); *United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998) ("This court's first step in construing a statute is to review the language of the statute itself."); *see also Engine Manufacturer's Ass'n v. South Coast Air Quality Management District*, 541 U.S. 246, 252 (2004) ("'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'") (quoting *Park 'N Fly, Inc., v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).  *United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) ("Plain meaning is examined by looking at the language and design of the statute as a whole.") (citation omitted).


[10] *See also Colautti v. Franklin*, 439 U.S. 379, 395 n.13 (1979) (noting "the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid . . . [and] it does relieve the statute of the objection that it punishes without warning an offense of which the accused is unaware"); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . that [the conduct is proscribed]."); *United States v. Waymer*, 55 F.3d 564, 568 (11th Cir. 1995) ("The constitutionality of a vague statutory standard is closely related to whether the standard incorporates a requirement of mens rea."; "A statutory requirement that an act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the

There are two intent aspects to Count Four. The government is required to prove that the defendant "knowingly" acted (i.e., altered, destroyed, or concealed) and did so "with the intent to impede, obstruct, or influence the investigation or proper administration . . ." 18 U.S.C. § 1519. In other words, the defendant cannot be convicted where he accidentally destroys records; the statute requires that the defendant act with an intent to impede, obstruct, or influence the investigation or proper administration.

The government urges this Court to apply the precedent from other cases which have specifically noted the scienter requirement under Section 1519 in rejecting a vagueness challenge. *See, e.g., United States v. Velasco*, 2006 WL 1679586, at *4 (M.D. Fla. 2006) (concluding "that the presence of a scienter requirements [for Section 1519 and other statutes] cures any potential vagueness issue raised by these Defendants" and that "any alleged 'vagueness' or ambiguity in the statute will be cured by the Government's proof or resolved by a successful defense") (citing *Village of Hoffman*, 455 U.S. at 498; *Colutti*, 439 U.S. at 395 n.13); *United States v. Jho*, 465 F. Supp.2d at 636-37 ("Section 1519 contains a *mens rea* requirement in that it requires that the defendant act knowingly with the intent to obstruct justice"), *rev'd on other grounds*, 534 F.3d 398 (5th Cir. 2008).

The scienter element has not proven problematic in other trials and cases. The defense unnecessarily contorts the language of the statute. (Doc. 38, pp. 12-17). Based

crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.") (internal quotations omitted); *see also United States v. Triumph Capital Group, Inc.*, 260 F. Supp. 2d 470, 476 (D. Conn. 2003) ("When a statute contains a scienter requirement . . . it provides adequate notice of the proscribed conduct.").

on the established precedent in applying Section 1519, the government respectfully urges

the Court to deny the motion to dismiss as unconstitutionally vague.

> 2. Defense Arguments Have Been Considered And Rejected
> By Other Courts

Many of the arguments resurrected by the defense in this case have also been

considered and uniformly dismissed by other courts. For example, the defendant

contends that Section 1519 should be limited to the corporate setting and financial fraud.

(Doc. 38, pp. 7, 9-12). The Eleventh Circuit considered and disagreed with a similar

challenge to Section 1519:

> "Hunt makes much of the fact that § 1519 was
> passed as part of the Sarbanes-Oxley Act, which
> was targeted at corporate fraud and executive
> malfeasance. Indeed, the broad language of § 1519
> suggests it can be a useful tool in such arenas. But
> that same breadth bears no hint of any limiting
> principle cabining § 1519 to corporate fraud cases."

*United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) (narcotics detective convicted

by jury for knowingly making a false entry into a police incident report with the intent to

impede, obstruct, or influence an FBI investigation).

Not surprisingly, based on the language of Section 1519, the statute has applied in

the non-corporate context, including the destruction of computer records, and related

materials. *See, e.g.*, *United States v. Smyth*, 213 Fed.Appx. 102 (3d Cir. 2007) (charging

1519 in context of destruction of computer hard drive); *United States v. Jackson*, 2006

WL 1737193 (9th Cir. 2006) (law enforcement officer convicted at trial under Section

1519 for omitting a confession made by another officer from an investigative report);

*United States v. Fumo*, 2007 WL 3132816, at *19 (E.D.Pa. 2007) (affirming application

of Section 1519 to conspiracy to "obstruct justice by destroying electronic evidence,

including e-mail communications pertaining to matters within the scope of a federal criminal investigation"); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 252 (E.D.N.Y. 2007) (prosecution of a doctor under § 1519 for falsifying patient treatment records in connection with a Medicare fraud investigation); *see also United States v. Wortman*, 488 F.3d 752 (7th Cir. 2007) (affirming Section 1519 jury conviction of a girlfriend who destroyed a CD that contained evidence relating to a federal investigation of child pornography involving her boyfriend); *United States v. Ionia Management S.A.*, 526 F.Supp.2d 319, 329, 330 (D. Conn. 2007) (in environmental action, denying motion to set aside jury verdict on Section 1519 convictions for making false entries in a compliance program checklist), *aff'd*, 555 F.3d 303 (2nd Cir. 2009); *United States v. Sandstrom*, 2006 WL 1128802 (W.D. Mo. 2006) (defendants charged with § 1519 for destroying a car in connection with committing a hate crime in violation of 18 U.S.C. § 245); *see also United States v. Perkins*, 470 F.3d 150, 153 n.2 (4th Cir. 2006) (in civil rights prosecution involving use of excessive force, noting that a co-defendant was initially charged under Section 1519 with making a false entry in a police report); *United States v. Vega*, 2006 WL 1674155 (3d Cir. 2006) (court noted that defendant could have been charged with a violation of Section 1519 for urging an associate to eliminate or conceal an immigration document).

The defendant argues that Count Four fails to allege that "justice was actually obstructed." (Doc. 38, p. 3). The defense cites a series of inapplicable civil spoliation cases which have nothing to do with the language of Section 1519. Under the plain meaning of the statute, there is simply no requirement that justice be obstructed. It is not

surprising that the defense is unable to cite any case applying Section 1519 to impose such a limitation.

As part of this argument, the defense cites to *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (requiring "a relationship in time, causation, or logic" under Section 1503 between the challenged act and the proceeding sought to be interfered with), which construed a different obstruction statute, 18 U.S.C. Section 1503.  First, the language of Section 1519 was intended to apply to a broader scope of conduct than other obstruction of justice provisions.  Second, and more to the point, by enacting Section 1519, Congress expressly sought to avoid the narrow and technical application under the *Aguilar* case. As noted in the Senate Report:

> "Other provisions, such as 18 U.S.C. § 1503, have been narrowly interpreted by courts, including the Supreme Court in *United States v. Aguillar*, 115 S. Ct. 593 (1995), to apply only to situations where the obstruction of justice can be closely tied to a pending judicial proceeding.…  In short, the current laws regarding destruction of evidence are full of ambiguities and technical limitations that should be corrected.  This provision is meant to accomplish those ends.  Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation….  It also extends to acts done in contemplation of such federal matters, so that the timing of the act in relation to the beginning of the matter or investigation is also not a bar to prosecution.  *The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function*."

Sen. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002) (emphasis added).

The defendant claims he did not have a duty to preserve records before being notified about a federal investigation. (Doc. 38, p. 6). This claim again cannot avoid the plain language and purpose of the statute. Section 1519 prohibits the knowing altering, destroying, and concealing of records with the intent to impede, obstruct and influence a federal investigation of a matter and in relation to and contemplation of such a federal investigation. Not surprisingly, in construing Section 1519, the courts have concluded there is no need to establish a formal investigation had commenced at the time the defendant engaged in the obstructive conduct. *See, e.g., Ionia Management S.A.*, 526 F.Supp.2d at 329 ("In comparison to other obstruction statutes, § 1519 by its terms does not require the defendant to be aware of a federal proceeding, or even that a proceeding be pending"); *Jho*, 465 F.Supp.2d at 636 ("[I]mposing a requirement that the matter develop into a formal investigation ignores the plain meaning of the statute and the legislative history. All that is required is proof that [the defendant] knowingly made false entries in a document . . . .with the intent to impede, obstruct, or influence the proper administration of any matter within the jurisdiction of the United States [agency].").

There is also no requirement that the government must prove that the defendant actually knew of, or anticipated, a specific federal investigation in order to establish a violation of § 1519. *Ionia Management S.A.*, 526 F.Supp.2d at 329; *Jho*, 465 F.Supp.2d at 636 (stressing that legislative history requires that § 1519 was drafted "to avoid the requirement that the defendant know about the proceeding against him"; "Accordingly, the Court concludes that imposing a requirement that the matter develop into a formal investigation ignores the plain meaning of the statute and the legislative history.").

The plain language of the statute does not contain a materiality or prejudice requirement, contrary to the defense request to impose such a requirement. Not surprisingly, there is no case law cited by the defense justifying this position under the language of Section 1519. One district court has rejected a similar effort in a recent unpublished decision. *See United States v. Hooks*, 2007 WL 2572205 (W.D.Tenn. 2007) (rejecting materiality requirement on motion to dismiss Section 1519 count).

In a passing argument, without any meaningful authority or discussion, the defendant questions the authority of Congress to enact Section 1519 in the absence of a specific investigation or proceeding. (Doc. 38, pp. 20-21). This argument has also been rejected with related obstruction of justice statutes.[11]

Finally, based on the plain meaning of Section 1519, the foregoing precedent, the rule of lenity does not apply in this case. (Doc. 38, pp. 21-23). In fact other courts have already rejected this argument. See, e.g., *United States v. Velasco*, 2006 WL 1679586 (M.D.Fla. 2006) (rejecting application of rule of lenity based on claim that Section 1519

---

[11] *See, e.g., United States v. Tyler*, 281 F.3d 84, 92-93 & n.8 (3d Cir. 2002) (noting the authority of Congress to enact Section 1512 of the Witness Tampering Act under the Necessary and Proper Clause, "which has served as the textual source for criminal laws dating to the time of *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 417, 4 L.Ed. 579 (1819) (upholding "the punishment of the crimes of stealing or falsifying a record or process of a court of the United States, or of perjury in such court" as "certainly conducive to the due administration of justice" or alternatively "as a manifestation of Congress's constitutional authority to carry out its enumerated powers, including the creation of '[t]ribunals inferior to the [S]upreme Court.'  U.S. Const. art. I, § 8, cl. 9."); *Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949) ("The ... statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted...."); *see also United States v. Harris*, 498 F.3d 278, 291 (4th Cir. 2007) ("The jurisdictional basis for § 1512(a)(1)(C) and (a)(2)(C) is the federal interest in enhancing and protecting the critical role that witnesses play in the federal criminal justice process and protecting those witnesses themselves."); *see generally United States v. Feola*, 420 U.S. 671, 676 n.9 (1975) ("[W]here Congress seeks to protect the integrity of federal functions and the safety of federal officers, the interest is sufficient to warrant federal involvement.").

was vague and ambiguous); *see generally Staples*, 511 U.S. at 619 n.17 (rule of lenity inapplicable where statute is not ambiguous); *Chapman*, 500 U.S. at 463 (same).

3. Review of the Legislative History is Unwarranted and Inappropriate

Normally it is inappropriate to consult the legislative history.[12]  In this case, in seeking to avoid the breadth and straightforward application of the plain meaning of Section 1519, the defense urges the Court to resort promptly to the legislative history. (Doc. 38, p. 7).  Not only is this inappropriate, and unnecessary, it is inconsistent with the settled statutory construction canons.  More significantly, the defense selectively misconstrues the legislative history.  The government urges the Court to follow the Eleventh Circuit and avoid resorting to the legislative history:

> "Hunt's arguments in large part ignore the language of the statute [Section 1519] and attempt to channel this Court's analysis into the unwelcome morass of legislative history and Congressional intent.  When the text of a statute is plain, however, we need not concern ourselves with contrary intent or purpose revealed by the legislative history….  Hunt cannot avoid the result compelled by the plain language by selectively citing legislative history."

*United States v. Hunt*, 526 F.3d 739, 743-44 (11th Cir. 2008).

---

[12] *See, e.g., Ratzlaf v. United States*, 510 U.S. 135, 147-148, 114 S. Ct. 655, 662 (1994) (The Court "do[es] not resort to legislative history to cloud a statutory text that is clear," even when there are "contrary indications in the statute's legislative history") (footnotes omitted); *Koenig Sporting Goods, Inc. v. Morse Rd. Co. (In re Koenig Sporting Goods)*, 203 F.3d 986, 988 (6th Cir. 2000) ("When a statute is unambiguous, resort to legislative history and policy considerations is improper."); *United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998) ("Only when the language of the legislation is unclear should we look beyond the wording of the statute to the intent of the legislature."; no need to consider legislative history after reviewing plain meaning of statute).

4.    The Legislative History Confirms The Broad Application
Of Section 1519

If the Court accepts the defense invitation to wade through the legislative history,

when properly considered, the legislative history only confirms the broad application

Congress intended for Section 1519.  Senator Leahy, considered the primary author of the

measure, noted that it was intended to be used in "a wide array of cases."  148 Cong. Rec.

S7,418 (daily ed. July 26, 2002) (explaining that § 1519 "could be effectively used in a

wide array of cases where a person destroys or creates evidence with the intent to

obstruct an investigation or matter that is, as a factual matter, within the jurisdiction of

any federal agency or bankruptcy ... [and] it also covers acts either in contemplation of or

in relation to such matters") (statement of Sen. Leahy).

The Senate Report states:

> "Section 1519 is meant to apply broadly to any acts to
> destroy or fabricate physical evidence so long as they are
> done with the intent to obstruct, impede or influence the
> investigation or proper administration of any matter, and
> such matter is within the jurisdiction of an agency of the
> United States, or such acts done either in relation to or in
> contemplation of such a matter or investigation. This
> statute is specifically meant not to include any technical
> requirement, which some courts have read into other
> obstruction of justice statutes, to tie the obstructive conduct
> to a pending or imminent proceeding or matter.  It is also
> sufficient that the act is done 'in contemplation' of or in
> relation to a matter or investigation.  It is also meant to do
> away with the distinctions, which some courts have read
> into obstruction statutes, between court proceedings,
> investigations, regulatory or administrative proceedings
> (whether formal or not), and less formal government
> inquiries, regardless of their title.  Destroying or falsifying
> documents to obstruct any of these types of matters or
> investigations, which in fact are proved to be within the
> jurisdiction of any federal agency are covered by this
> statute."

Sen. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002).

The legislative history also confirms the congressional intent to apply Section

1519 to future investigations:

> "We recognize that section 1519 overlaps with a
> number of existing obstruction of justice statutes,
> but we also believe it captures a small category of
> criminal acts which are not currently covered under
> existing laws — for example, acts of destruction
> committed by an individual acting alone and with
> the intent to obstruct a future criminal
> investigation."

Sen. Rep. No. 146, 107th Cong., 2d Sess. 27 (2002) (emphasis added).

As Senator Leahy, the primary author of Section 1519, noted during the Senate

debate:

> "This section would create a new 20 year felony which
> could be effectively used in a wide array of cases where a
> person destroys or creates evidence with the intent to
> obstruct an investigation or matter that is, as a factual
> matter, within the jurisdiction of any federal agency or any
> bankruptcy. It also covers acts either in contemplation of or
> in relation to such matters."

148 Cong. Rec. S7, 418 (daily ed. July 26, 2002) (statement of Senator Leahy) (quoted in

*Jho*, 465 F.Supp.2d at 636).

Against this record, it is therefore not surprising the courts have repeatedly noted

that Congress meant what it said in enacting Section 1519; the terms of the provision

should apply broadly. *See, e.g., United States v. Lessner*, 498 F.3d 185, 196 n.5 (3d Cir.

2007) (noting congressional intent to apply Section 1519 "broadly"); *Ionia Management

S.A.*, 526 F.Supp.2d at 329, 330 (noting "broad scope" and coverage of Section 1519);

*United States v. Jho*, 465 F.Supp.2d 618 (E.D.Tex. 2006) ("not[ing] that the drafters

intended the new obstruction statute [under Section 1519] to apply broadly and be bound

only by an "intent" element and a "jurisdictional" element") (citation omitted), *rev'd on other grounds*, 534 F.3d 398 (5th Cir. 2008).

Section 1519 is violated, as alleged here, when a defendant knowingly alters, destroys, or conceals records or documents and does so with an intent to impede, obstruct or influence an investigation within the jurisdiction of a federal agency, here the FBI, or in relation to or contemplation of such a federal investigation. Count Four tracks the statutory language. The motion to dismiss Count Four should be denied.

**B.** *Charging Defendant with a Violation of Section 1519 is Consistent with the Constitution.*

Count Four is not unconstitutionally vague and has been used in a diverse range of factual settings in cases around the country, resulting in convictions after trial or by plea. As set forth below, the courts have uniformly rejected constitutional vagueness challenges to Section 1519 charges and have shown little difficulty in applying the statute or its elements.

1. The Defendant Lacks Standing For A Facial Challenge To Section 1519

The defendant asserts that "[b]oth Count 4 and the statute upon which it is based are unconstitutionally vague." (Doc. 38, p. 2). However, the defendant lacks standing to bring a "facial" challenge to enforcing the statute in any respect. The Court should not be drawn into considering hypothetical applications of the statute. The destruction of records or documents with the intent to impede, obstruct and influence an investigation of a matter by, and within the jurisdiction of, the Federal Bureau of Investigation, and in relation to and contemplation of such a federal investigation, as alleged, clearly violates Section 1519.

Case 3:08-cr-00142   Document 48   Filed 06/08/09   Page 50 of 58

Since the defendant has "engage[d] in some conduct that is clearly proscribed" under Section 1519, he cannot "complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).[13] Other courts have noted the lack of standing of defendants to challenge Section 1519. *See, e.g., United States v. Velasco*, 2006 WL 1679586, at *4 (M.D. Fla. 2006) (concluding that the "Defendants cannot establish that their conduct if proven would not fall within the clearly proscribed improper payment as contemplated by" Section 1519 and that the "Defendants have no standing to challenge the Act as ambiguous as applied") (citing *Village of Hoffman*, 455 U.S. at 498); *see also United States v. Fumo*, 2007 WL 3132816, *18, *19 (E.D.Pa. 2007) ("The court does not reach the issue whether § 1519 is facially unconstitutional for vagueness because the statute clearly reaches Senator Fumo's alleged conduct in violation of the statute" and the defendant "lacks standing to challenge the statute for vagueness."). Based on this settled authority, and in the absence of any standing, the Court should not consider any facial challenge to Section 1519.

    2.        Other Courts Have Rejected Vagueness Challenges

Every case considering a constitutional vagueness challenge to Section 1519 has rejected the argument. No case has been found upholding a constitutional challenge. This case should not be the first.

---

[13] *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

Other courts have denied motions to dismiss indictments based on a claim that Section 1519 was unconstitutionally vague to provide sufficient notice. *See, e.g., United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) ("Nothing here suggests the statute is, in the context before us, vague.… By its plain text, the statute placed Hunt on notice his conduct was unlawful."); *United States v. Jho*, 465 F.Supp.2d 618 (E.D.Tex. 2006) (same), *rev'd on other grounds*, 534 F.3d 398 (5th Cir. 2008); *United States v. Velasco*, 2006 WL 1679586, at *4 (M.D.Fla. 2006) (same).

The terms "record and document" are not unconstitutionally vague, as the defense claims. (Doc. 38, p. 20). These terms should be given their ordinary meaning.[14] Records may memorialize events or information in a variety of forms, including computer or in electronic form. *See, e.g.*, Black's Law Dictionary (8th ed. 2004) (defining record as: "Information that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form."; "A documentary account of past events, usu. designed to memorialize those events."). Of note, Section 1519 was enacted against the background of the destruction of electronic records. In general, "documents" refer to "Something tangible on which words, symbols, or marks are recorded." *See, e.g.*, Black's Law Dictionary (8th ed. 2004) (citing Fed. R.

---

[14] While it should be unnecessary to consult the legislative history, if the Court does so as urged by the defense, it only confirms that the terms records and documents were intended to apply to electronic records. The statute was enacted in the context of congressional concern over the destruction of records, including computer records. *See, e.g.*, Sen. Rep. No. 146, 107th Cong., 2d Sess. 4 (2002) (noting the concern in the Enron case concerning the "systematic destruction of records apparently extended beyond paper records and included efforts to 'purge the computer hard drives and E-mail system of Enron related files' not only in Houston but in Andersen's offices in Portland, Chicago, Illinois, and London, England").

Civ. P. 34(a)). Documents may be stored on computers or transmitted via computers.

Not surprisingly, other courts have upheld the application of Section 1519 to computer

and related records. *See, e.g.*, *United States v. Smyth*, 213 Fed.Appx. 102 (3d Cir. 2007)

(defendant pled guilty to violating Section 1519 for destroying a computer hard drive

with intent to obstruct a federal investigation of child pornography); *United States v.*

*Fumo*, 2007 WL 3132816, at *19 (E.D.Pa. 2007) (affirming application of Section 1519

to conspiracy to "obstruct justice by destroying electronic evidence, including e-mail

communications pertaining to matters within the scope of a federal criminal

investigation"); *see also United States v. Wortman*, 488 F.3d 752 (7th Cir. 2007)

(affirming Section 1519 jury conviction of a girlfriend who destroyed a CD that

contained evidence relating to a federal investigation of child pornography involving her

boyfriend).

Finally, the terms "in relation to or contemplation of" are not unconstitutionally

vague, as the defense asserts. (Doc. 38, pp. 20-21). Under Section 1519, the terms "in

contemplation of" (in other words, in anticipation), or "in relation to" (in other words

with reference to or with regards to) pertain to "any matter within the jurisdiction of any

department or agency of the United States or any case filed under title 11." Courts have

recognized the breadth of these terms in applying Section 1519. For example, the

Eleventh Circuit recently noted the breadth of the terms "in relation to" and rejected the

challenge as contrary to the plain language of Section 1519:

> "The plain language of section 1519 is broad, *see Morales v. Trans World
> Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of ['relating to']
> is a broad one[.]"), and encompasses actions that have "a connection with or
> reference to" an investigation by a federal agency. *See id.* at 384; Webster's New
> World Compact Desk Dictionary 408 (2d ed.2002) (defining "in relation to" as
> "concerning; regarding"). Because the Department of Health and Human

Services, which is a 'department or agency of the United States,' conducted the investigation of Dr. Hoffman-Vaile and the grand jury subpoenaed the missing records 'in relation to or in contemplation of' this investigation, her failure to produce the records with the photographs intact is obstructive conduct under section 1519. Although we need not consider legislative history when the statutory language is clear, *United States v. Williams*, 425 F.3d 987, 989 (11th Cir.2005) (per curiam), our conclusion that the broad language of section 1519 encompasses proceedings before the grand jury is also confirmed by the legislative history of the statute. *See* S. Rep. No. 107-146, at 14-15 (2002)."[15]

*United States v. Hoffman-Vaile*, _ F.3d _, 2009 WL 1458567 (11th Cir. 2009); *see also*

*United States v. Ionia Management S.A.*, 526 F.Supp.2d 319, 329 n.2 (D. Conn. 2007)

(noting "the statute's exceptional breadth, particularly the 'in relation to or contemplation

of' language seemingly encompassing not only pending investigations or matters, but

future ones as well"), *aff'd*, 555 F.3d 303 (2nd Cir. 2009); *United States v. Jho*, 465 F.

Supp.2d 618, 635-36 (E.D. Tex. 2006) (noting section 1519 was designed "to apply

broadly to any acts to destroy or fabricate physical evidence so long as they were done

with the intent to obstruct, impede or influence the investigation ... of any matter ... [or]

in relation to or contemplation of such a matter or investigation"); *see generally Smith v.*

*United States*, 508 U.S. 223, 237 (1993) (noting the terms "in relation to" under Section

---

[15] The Senate Report, referenced in the *Hoffman-Vaile* opinion, states:

> "Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either *in relation to or in contemplation of such a matter or investigation*. This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter. *It is also sufficient that the act is done 'in contemplation' of or in relation to a matter or investigation*."

S. Rep. No. 146, 107th Cong., 2d Sess., at 14-15 (2002) (emphasis added).

924(c) are expansive and mean "with reference to" or "as regards.") (quoting Webster's New International Dictionary at 2102).

3. Defendant Lacks Standing To Assert An Eighth Amendment Violation

Finally, the defense makes a passing argument, consisting only a few sentences, and lacking any meaningful authority, that Section 1519 "violates the Eighth Amendment's ban on cruel and unusual punishment." (Doc. 38, p. 23). No conviction has occurred and no sentence has been imposed in this case. In the absence of any punishment, the defendant lacks standing to raise this claim and there is no Eighth Amendment violation. *See, e.g., City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("Because there had been no formal adjudication of guilt against Kivlin at the time he required medical care, the Eighth Amendment [cruel and unusual deliberate indifference claim] has no application.") ("Eighth Amendment scrutiny is appropriate only after the state has secured a formal adjudication of guilt.") (quoting *Ingraham v. Wright*, 430 U.S. 651, 671, n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.")); *see also Houston v. Roe*, 177 F.3d 901, 907 (9th Cir. 1999) (petitioner lacked standing for Eighth Amendment arbitrary and capricious claim since he had not been sentenced to death).

If a conviction and sentence occur, any sentences within the statutory maximum would be presumptively constitutional. As a general matter, "A punishment within legislatively mandated guidelines is presumptively valid. Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir.

1998) (citations and quotations omitted); *see also Walls,* 546 F.3d at 738 ("the Eighth

Amendment does not require strict proportionality between crime and sentence.  Rather,

it forbids only extreme sentences that are grossly disproportionate to the crime") (internal

quotation marks removed)).

# CONCLUSION

For the foregoing reasons, and based on settled authority, all of Defendant's motions to dismiss should be denied.

Respectfully submitted this 8th day of June, 2009.

JAMES R. DEDRICK
United States Attorney

*S/ D. Gregory Weddle*
*S/ Mark L. Krotoski*
*S/ Josh Goldfoot*
_____

D. Gregory Weddle
Assistant U.S. Attorney
Mark L. Krotoski
Assistant U.S. Attorney
800 Market Street, Suite 211
Knoxville, TN 37902
865-225-1710

Josh Goldfoot
Computer Crime & Intellectual
    Property Section
Criminal Division
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20005

# CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2009, a copy of the foregoing UNITED STATES' OPPOSITION TO ALL OF DEFENDANT'S MOTIONS TO DISMISS was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*S/ D. Gregory Weddle*
_____
D. Gregory Weddle
Assistant U.S. Attorney
800 Market Street, Suite 211
Knoxville, TN 37902
865-225-1710