IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO.: 3:08-cr-142 |
| | ) | JUDGES PHILLIPS/SHIRLEY |
| DAVID C. KERNELL | ) | |

## REPLY TO GOVERNMENT'S RESPONSE TO
## MR. KERNELL'S MOTIONS TO DISMISS

## I.    INTRODUCTION

Before the Court are Mr. Kernell's motions to dismiss each of the four counts of the

Superseding Indictment.  Though each count suffers from independent defects, the indictment as

a whole suffers from the government's attempt to stretch statutes beyond the limits of their text

and the Constitution in order to impose liability for serious felonies to a set of alleged facts

where such liability is not justified.  The government has responded in a consolidated Response.

[Doc. 48].  This Reply first addresses two underlying fallacies in the government's position with

regard to each count and then turns to the issues as applied to the individual counts.  The

government's position depends first on the fundamental error that all it has to do is identify the

elements of the offenses (even when one of those elements is that another crime or tort has been

furthered). The cases cited by the government in the introductory section and throughout the

Response purport to stand for the proposition that for an indictment to be sufficient, it need only

allege the "elements" of the offense.[1]    The second fundamental error is the claim that the

accused cannot complain about vagueness if he knew he was doing something wrong.

---

[1] The government references the additional requirement that the words of the statute should be
"accompanied with such a statement of the facts and circumstances as will inform the accused of
the specific offense, coming under the general description with which he is charged." [Doc. 48 at
5] (quoting United States v. McAuliffe, 490 F.3d 526, 531 (6th Cir. 2007) (quoting United States
v. Superior Growers Supply, Inc., 982 F.2d 173, 176 (6th Cir. 1992))). However, the government

1

The parties' fundamental disagreement over the notice required for a valid indictment is especially important in this case where two of the charged offenses depend upon the government proving that the defendant committed the crime in order to further or in contemplation of a separate offense (or tort). Just tracking the language of a statute is particularly problematic when that statute requires proving that the crime furthered or was undertaken with the intent to commit one of the thousands of other crimes or even state law torts that appear in the statutes and case law.

While the government is correct to say that the court accepts allegations in the indictment as true [Doc. 48 at 5], where those facts do not allege a violation of the charged statute, dismissal is appropriate. Rule 12(b), Fed. R. Crim. P. Here, the allegations in the indictment do not properly allege violations of the four felonies the government has attempted to make from Mr. Kernell's actions alleged in the indictment.

## II. HOWEVER "DEFERENTIAL" THE STANDARD ON A MOTION TO DISMISS, ALLEGING ELEMENTS IS NOT ENOUGH: IDENTIFYING THE PREDICATE CRIME IS A REQUIREMENT, NOT A LUXURY.

> Even if the jury concludes that Defendant's conduct furthered no 'tortious invasion of privacy,' the jury could still find that Defendant's conduct furthered some other 'criminal' or 'tortious' act, such as additional violations of section 1030, or **other crimes and torts not specified** in the Superseding Indictment. . . . Defendant argues that providing him with the luxury of descriptions of **some** of the crimes and torts was not enough . . . .

*Government's Response* [Doc. 48 at 34, 35] (emphasis added).[2]

The Superseding Indictment contains introductory allegations incorporated within the four counts, but because the government is pursuing novel theories of prosecution based on

---

seems to limit its understanding of this to the requirement to charge the time and place of the alleged crime. See eg., [Doc. 48 at 6] ("The indictment [fairly places the defendant on notice], in part, by repeating the statutory language and describing the date and place of the office. That, alone, satisfied the Government's obligation to plead the elements of the offense, put Defendant on fair notice, and enabled him to assert a double jeopardy defense against a future duplicative prosecution.").

[2] To avoid repetition, all emphasis in the document was added.

2

"broad"[3] statutes and because the government now informs the defense that some of the specification of the counts is illusory or at least not binding, the indictment is fatally insufficient.

The Notice Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. IV.  See also Russell v. United States, 369 U.S. 749, 763 (1962) (holding that to meet this standard, an indictment must "sufficiently apprise[] the defendant of what he must be prepared to meet"). United States v. Cor-Bon Custom Bullet Co., 287 F.3d 576, 580 (6th Cir. 2002); United States v. Maney, 226 F.3d 660, 663 (6th Cir. 2000).

A vague indictment also contravenes the Grand Jury Clause of the Fifth Amendment, which requires that a defendant be charged with only those charges brought before the grand jury, because the Government may fill in elements of its case with facts other than those considered by the grand jury. See U.S. Const. amend. V; Russell, 369 U.S. at 766 (noting that such a situation "enables [the defendant's] conviction to rest on one point and the affirmance of the conviction to rest on another"); United States v. Sturman, 951 F.2d 1466, 1478 -1479 (6th

---

[3] Indeed, one of the government's primary themes is that it should be able to apply the statutes broadly.  Count 1: [Doc. 48 at 9] (quoting case from a district court in Iowa that "[t]he phrase 'in conjunction with' in § 1028(d)(7) is a **broad** phrase of § 1028(c)(3)(A).'"). Count 2: "[T]he statute, which, as noted earlier, is intended to have **broad** application."  [Doc. 48 at 27].  "By using the term 'any,' the statute applies to **all** variations of schemes to defraud . . . . 'Read naturally, the word "any" has an **expansive** meaning . . .'" [Doc. 48 at 28] (quoting United States v. Gonzales). "The defense's narrow reading of the statute is inconsistent with the plain meaning of the statute and case law applying it." [Doc. 48 at 19].  Count 3: "**Broad** terms, like narrow terms, both put defendants on notice that certain conduct is prohibited."  [Doc. 48 at 37].  Count 4: "Congress deliberately selected **broad** language for the new obstruction provision, as noted below." [Doc. 48 at 40]. "Section 1519 was intended to apply to a **broader** scope of conduct than other obstruction of justice provisions." [Doc. 48 at 44].  "[S]eeking to avoid the **breadth** and straightforward application of the plain meaning of Section 1519, the defense urges the Court to resort promptly to the legislative history." [Doc. 48 at 47]. "[T]he legislative history only confirms the **broad** application Congress intended for Section 1519."[Doc. 48 at 48]. "[T]he terms of the provision [section 15198] should apply **broadly**." [Doc. 48 at 49].  "Counts have recognized the **breadth** of these terms in applying Section 1519." [Doc. 48 at 53].

Cir. 1991) ("[W]hen reviewing the sufficiency of an indictment, [the court] must ask whether the omission complained of deprives the defendant of one of the protections which the guaranty of a grand jury indictment was meant to ensure." (citing Russell v. United States, 369 U.S. 749, 763-64 (1962)). The possibility that the government could use charges not considered by the grand jury is evident when the government refers to notice of "some" of the crimes and torts furthered but refers to that notice as unnecessary.

The Fifth Amendment indictment clause and Sixth Amendment notice clause require that all elements necessary to the conviction and punishment of the defendant be charged in an indictment and proven to a jury beyond a reasonable doubt. United States v. Booker, 543 U.S. 220 (2005); Blakely v. Washington, 542 U.S. 296 (2004); Ring v. Arizona, 536 U.S. 584 (2002); Apprendi v. New Jersey, 530 U.S. 466 (2000); and Jones v. United States, 526 U.S. 227 (1999).

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states, in pertinent part, that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Both the indictment and the government's response fall short of this standard. The government, in its response to Mr. Kernell's motions, trivializes its duty to provide sufficient notice and raises additional concerns. Not unexpectedly, the government asserts that the indictment is sufficient, see e.g., [Doc. 48 at 7] ("more than what is required");[4] [Doc. 48 at 8] ("[t]his, alone, would have been enough");[5] [Doc. 48 at 31] ("[t]hough not required . . . "),[6] and we disagree.

---

[4] "The Superseding Indictment, tracking this language [of 18 U.S.C. § 1028], charges that Defendant had "the intent to commit, and to aid or abet . . . any unlawful activity that constitutes a violation of Federal law, that is, Fraud and Related Activity in Connection with Computers, under 18 U.S.C. § 1030(a)(2)(C), and Wire Fraud, under 18 U.S.C. § 1343." This is more than what is required to plead the "intent" element of section 1028(a)(7): it pleads that Defendant's "intent" was to commit additional violations of Federal law, and going beyond what is required of an indictment, even informs the Defendant of which "violations" those were." [Doc. 48 at 7].

4

Surprisingly, though, in the Response submitted to this Court, the government asserts that the "Superseding Indictment need only allege the fact that the Defendant's conduct furthered other crimes and torts; additional detail is not required." [Doc. 48 at 34]. For example, by claiming that any conviction sought is not limited by the crime and tort specified in Count 3, the government abandons its duty to conform the proof to the allegations approved by the grand jury and charged in the indictment. The government argues as follows:

> Count Three . . . charges Defendant with a felony violation of section 1030(a)(2)(C): it charges that his access not only constituted an illegal intrusion, but **furthered *additional* crimes and torts by others**. **That, by itself, was all that was needed** to plead the 'fact' that Congress specified as being necessary to increase the statutory maximum. Yet the Superseding Indictment goes further: it **describes some of the crimes and torts generally**, by saying '**including** . . . ."

> Regardless, Count Three could be punished as a felony even if Defendant prevails in his argument that his conduct did not further a tortious invasion of privacy. Even if the jury concludes that Defendant's conduct furthered no 'tortious invasion of privacy,' the jury could still find that Defendant's conduct furthered some other 'criminal' or 'tortious' act, such as additional violations of section 1030, or **other crimes and torts not specified** in the Superseding Indictment.

> Though not required to, [Count 3] then provided further detail, saying that those crimes and torts 'include[ed],' **among other possibilities**, 'aiding and abetting other violations of 18 U.S.C. § 1030(a)(2)(C) . . . and tortious invasion of privacy.

[Doc. 48 at 33, 34, 35]. Ironically, the government concludes that, "[t]he purpose of *Apprendi*, after all, was not to swell indictments with non-essential, non-statutory facts, but simply to enable, '[t]he defendant's ability to **predict with certainty** the judgment from the face of the

---

"Seizing upon those helpful (though technically surplus) allegations, Defendant argues the entire charge is inadequate." [Doc. 48 at 34].

[5] "Tracking the statutory text, the Superseding Indictment charges that Defendant "did knowingly transfer, possess and use . . . a means of identification of another person." This, alone, would have been enough to satisfy the easily-met pleading standard . . . . [Doc. 48 at 8].

[6] "Count Three tracks this language [of section 1030(a)(2)(C)]. . . . Though not required, the Superseding Indictment gives additional detail. It describes the manner of access, the protected computer, the information obtained, and the interstate nature of the communication (*Id.* at ¶¶ 2, 3, 6, 7, 10)." [Doc. 48 at 31]. The government fails to mention that one of the issues raised in the motions is the failure to link the introductory allegations to the elements in the charged counts.

felony indictment." [Doc. 48 at 36]. In Count 1, the underlying crime of identity theft is defined with reference to "any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law," 18 U.S.C. § 1028(a)(7); in Count 3, the underlying crime of unauthorized access of a computer is augmented if "committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," 18 U.S.C. § 1030(c)(2)(B)(ii). As discussed below, it is not enough to state the "element" that another unnamed qualifying crime was committed by restating the language of the statute, as the government repeatedly suggests. Broad statutory language must be tethered to specific charges and specific facts.

In order to have a chance at predicting with certainty the crimes against which one must defend, it is altogether insufficient for the government to list "some" of the crimes that may or may not be pursued in the indictment and altogether fail to identity others. The government's tactic, besides failing to provide notice, would have the effect of constructively amending the indictment during trial.

> A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment. Amendments have been held to be prejudicial *per se* while variances may be subject to the harmless error rule. Variances which create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" constitute constructive amendments . . . [requiring application] of the prejudicial *per se* approach to such variances.

United States v. Piccolo, 723 F.2d 1234, 1239 (6th Cir. 1983) (quoting United States v. Beeler, 587 F.2d 340, 342 (6th Cir.1978)). Convictions are reversed when the indictments are constructively amended during the trial. See United States v. Dipentino, 242 F.3d 1090 (9th Cir. 2001). See also United States v. Piccolo, 723 F.2d 1234, 1238 (6th Cir. 1983) ("[I]t must be emphasized that conformity of the indictment with Constitutional standards and conformity of

6

evidence adduced at trial with the indictment are two wholly distinct areas of inquiry."). The Supreme Court has cautioned: "Undoubtedly the language of the statute may be used in the general description of the offense, but it ***must be accompanied with such a statement of the facts and circumstances*** as will inform the accused of the specific offense, coming under the general description with which he is charged." Hamling v. United States, 418 U.S. 87, 117-18 (1974) (emphasis added; citation omitted).

It is not enough, as the government asserts, to plead the statutory language. See [Doc. 48 at 34]. The indictment must be sufficiently detailed to "inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone." United States v. Cruikshank, 92 U.S. at 558. Furthermore, "[a]n indictment that requires speculation on a fundamental part of the charge is insufficient." United States v. Bobo, 344 F.3d 1076, 1084 (11th Cir. 2003) (dismissing health care fraud indictment).

In a series of cases, the Supreme Court has come to hold that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476. See Jones v. United States, 526 U.S. 227 (1999) (addressing notice and jury trial guarantees of Sixth Amendment and Due Process Clause of Fifth Amendment); Apprendi v. New Jersey, 530 U.S. 466 (2000) (same and Due Process Clause of Fourteenth Amendment)

> In his 1881 lecture on the criminal law, Oliver Wendell Holmes, Jr., observed: "The law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them. If you persist in doing them, it has to inflict the pains in order that its threats may continue to be believed." New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwarranted pains

should apply equally to the two acts that New Jersey has singled out for punishment. Merely using the label "sentence enhancement" to describe the latter surely does not provide a principled basis for treating them differently.

Apprendi, 530 U.S. at 476. Here, the government threatens Mr. Kernell with certain pains for allegedly accessing a computer without authorization, 18 U.S.C. § 1030(a)(2)(C), and with additional pains if the offense "was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," id. § 1030(c)(2)(B)(ii). As in Apprendi, the "procedural safeguards designed to protect [one] from unwarranted pains" should apply to the felony enhancement provision just as it applies to the underlying section 1030 violation alleged. One such protection is notice.

> Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt. Accordingly, some statutes come with the benefit of provisions straightforwardly addressing the distinction between elements and sentencing factors. Even without any such help, however, § 2119 at first glance has a look to it suggesting that the numbered subsections are only sentencing provisions. It begins with a principal paragraph listing a series of obvious elements (possession of a firearm, taking a motor vehicle, connection with interstate commerce, and so on). That paragraph comes close to standing on its own, followed by sentencing provisions, the first of which, subsection (1), certainly adds no further element. But the superficial impression loses clarity when one looks at the penalty subsections (2) and (3). These not only provide for steeply higher penalties, but condition them on further facts (injury, death) that seem quite as important as the elements in the principal paragraph ( e.g., force and violence, intimidation). It is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit. The "look" of the statute, then, is not a reliable guide to congressional intentions. . . .

Jones v. United States, 526 U.S. 227, 233 (1999).

In United States v. Teh, 535 F.3d 511, 511-17 (6th Cir. 2008), the defendant was indicted for smuggling goods into the United States, in violation of 18 U.S.C. § 545. Section 545 states in relevant part:

"Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or ... conceals ... or ... facilitates the transportation ... of such merchandise after importation, knowing the same to have been imported or brought into the United States **contrary to law** [s]hall be fined under this title or imprisoned not more than twenty years or both."

The indictment read as follows:

On or about September 15, 2004, in the Eastern District of Michigan, Southern Division, the defendant, THIAN TEH, did fraudulently and knowingly import merchandise **contrary to law**, that is, counterfeit copies of motion pictures in DVD format, in violation of the copyrights on the motion pictures, and did conceal and facilitate the transportation of said merchandise that had been imported **contrary to law**, then knowing that said merchandise had been imported and brought into the United States **contrary to law**, all in violation of Title 18, United States Code, Section 545. . . .

The defendant argued that the indictment did not give him notice as to all elements of the charged offense, "because the combination of the phrase 'contrary to law' and the reference to copyright violations is insufficient to charge the 'contrary to law' element of the offense." Id.[7]

The court found that "[b]ecause the indictment did not state which law Teh's actions were 'contrary to,' it failed to charge an offense."

Where, as here, the indictment follows the language of a statute, the indictment is only sufficient if the words of the statute "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." *Hamling v. United States,* 418 U.S. 87, 117 (1974) (citation and quotation marks omitted). The elements of an offense under the second paragraph of § 545 are that the defendant (1) fraudulently or knowingly, (2) imported or brought into the United States, (3) any merchandise, (4) contrary to law. . . . **An indictment only including the words "contrary to law"-without stating *which* law the defendant's conduct violated-is inadequate because it does not fully set forth the "contrary to law" element**. . . .

To be sure, because Teh's indictment alleges that the DVD movies were "counterfeit" and "in violation of ... copyrights," it is not as vague as the

---

[7]The Sixth Circuit used a plain error standard of review because the defendant did not challenge the indictment prior to his appeal. Unlike the defendant in Teh, Mr. Kernell has raised the issue of the sufficiency of the indictment pre-trial.

indictments found to be inadequate in *Keck, White* and *Babb*. But neither the word "counterfeit" nor the mention of "copyrights" established which, if any, statutory provision Teh's actions were "contrary to." . . . .

United States v. Teh, 535 F.3d 511, 511-17 (6th Cir. 2008). See also United States v. White, 87 Fed.Appx. 566, 572-74, 2004 WL 259234, at *5 (6th Cir. 2004).

The vagueness issues raised by Mr. Kernell similarly illustrate the problems caused by lack of notice. In United States v. Salisbury, 983 F.2d 1369, 1373 (6th Cir. 1993), the defendant was charged with "voting more than once." Even though the "factual basis of the indictment in the instant case consisted of a litany of actions which purportedly constituted 'voting more than once,'" the Sixth Circuit characterized the issue as whether the defendant received fair notice that her activities were encompassed under the statute's prohibition, holding the statute to be unconstitutionally vague as applied to the defendant.

> The indictment, like the statute, does not set forth a clear and unambiguous definition of the term "vote" or the phrase "voting more than once." It also does not describe which of Salisbury's activities specifically constitutes "voting" or "voting more than once." . . .
>
> [T]he problem in the instant case is not that the prosecution failed to set out a sufficiently detailed factual basis to support its charges, but that **the statute proscribing multiple voting fails to provide sufficient guidance to notify defendant that her activities were included in its prohibition** against multiple voting. On that basis, we held the indictment constitutionally invalid. The additional information provided by a **bill of particulars could not have cured** the constitutional infirmity of this indictment. . . . **A bill of particulars cannot be used to save an otherwise invalid indictment.** *Russell v. United States,* 369 U.S. at 769-770, 82 S.Ct. at 1050; *United States v. Sturman,* 951 F.2d 1466, 1479 (6th Cir.1992),*appeal pending,* 60 U.S.L.W. at 3689. . . .
>
> **The due process clauses of the Fifth and Fourteenth Amendments require criminal statutes to provide notice to the accused of the nature and specific elements of the crime charged.** *Colautti v. Franklin,* 439 U.S. 379, 390 (1979); *North American Van Lines v. United States,* 243 F.2d 693, 697 (6th Cir.1957). The "void for vagueness" doctrine requires that a statutory prohibition be sufficiently defined so that ordinary people, exercising ordinary common sense, can understand it and avoid conduct which is prohibited, without encouragement of arbitrary and discriminatory enforcement. , . . . The law must

10

be specific enough to give reasonable and fair notice in order to warn people to avoid conduct with criminal consequences. *Kolender v. Lawson,* 461 U.S. at 357; *Smith v. Goguen,* 415 U.S. 566, 574 (1974); *Stout v. Dallman,* 492 F.2d 992, 994 (6th Cir.1974); *United States v. Thomas,* 864 F.2d at 194-195. . . . .

The statute at issue in the instant case, however, unlike that in *Smith v. Goguen,* clearly prohibited some activities. *Smith v. Goguen,* 415 U.S. at 577-578. Such statutes, however, can nonetheless be void for vagueness. *Smith v. Goguen,* 415 U.S. at 578,. This is so because, though the terms and judicial constructions of a statute may make it apply unquestionably to certain activities, its application to other activities may remain uncertain due to the absence of a stated standard for inclusion or exclusion of activities from its scope. *Smith v. Goguen,* 415 U.S. at 577-578 . . . .

United States v. Salisbury, 983 F.2d 1369 (6th Cir. 1993).

An earlier case is perhaps even more instructive. In McKenna v. United States, 127 F. 88 (6th Cir. 1904), the defendant objected that the indictment was insufficient. The indictment stated "that the object of the conspiracy was to injure, oppress, etc., the parties named in the exercise of a right secured by the laws and Constitution of the United States," but the indictment "fail[ed] to state what particular right was intended to be affected by the conspirators." Id. Though pleading requirements have changed since McKenna was decided, its analysis is premised upon the basic idea that "in order to charge the offense intended by the statute, should allege the essential facts which constitute it." Id. (quoting Pettibone v. United States, 148 U.S. 1977). The Sixth Circuit reversed the judgments of conviction upon the defendant's objection to the indictment, reasoning:

> **When the fact which is made by the statute an essential element of the crime is a collective or general one, it is necessary to specify the particular thing intended to be charged**. This for several reasons: (1) To enable the court to see whether the particular fact is of the character intended by the general language of the statute- this is the province and duty of the court, and cannot be passed over by the conclusion of the pleader; (2) to apprise the respondent of the particular fact intended to be charged, in order that he may come prepared to meet it, and not be compelled to array a defense to all manner of charges which might be comprehended in the general words of the statute; and (3) that it may be known

11

what the judgment covers, and to what extent it is a bar to further prosecution. <u>Cruikshank v. United States</u>, 92 U.S. 542.

It would be difficult to find a case more fit for the application of this rule, for **the rights and privileges enjoyed by the public under the laws and Constitution of the United States are manifold**. This indictment does not allege (what is sought to be attributed to its language) that the right or privilege was that of voting for a member of Congress. It is true it states that certain things were done by the conspirators in pursuance of the plot. But this is no part of the offense. All that can be said of it is that it furnishes an inference as to what the conspiracy was. But this does not meet the requirement of proper pleading, the rule being that the offense must be directly charged, and cannot be made out by inference or implication. <u>United States v. Britton</u>, supra; <u>Pettibone v. United States</u>, supra. . . . .

Some defects in pleading, if not objected to seasonably, are said to be cured after verdict. But here the objection was raised at the threshold of the case. We do not inquire whether the defect we have been considering would have been cured if it had not been objected to prior to the motion in arrest of judgment.

<u>McKenna v. United States</u>, 127 F. 88, 91-92 (6th Cir. 1904). As was noted by the Sixth Circuit one hundred years ago, "the rights and privileges enjoyed by the public under the laws and Constitution are manifold." Today, the number of laws, violations, and torts is no less "manifold." Also, just as in <u>McKenna</u>, an inference from the introductory allegations about what crimes or torts the government may allege were committed as elements of Counts 1 and 3 is insufficient. The crime must be specified, and the facts must be linked to the elements.[8]

## III. MR. KERNELL HAS STANDING TO CHALLENGE EACH STATUTE CHARGED IN THE SUPERSEDING INDICTMENT.

The government repeatedly asserts that Mr. Kernell does not have standing to argue that the statutes being used to prosecute him are vague, because he "knew" his conduct was illegal. <u>See</u> [Doc. 48 at 13-14]; [Doc. 48 at 36]; [Doc. 48 at 50].

---

[8] The omission of an essential element of the offense from the indictment cannot be cured by a citation to the applicable statute. <u>See</u> <u>United States v. Hooker</u>, 841 F.2d 1225, 1227-28 (4th Cir. 1988) (reversing RICO conspiracy conviction on basis that indictment did not allege all essential elements of the offense even though jury instructions did).

Although the government correctly indicates that "[o]bjections to vagueness under the

Due Process Clause rest on the lack of notice," [Doc. 48 at 14] (quoting <u>Maynard v. Cartwright</u>,

486 U.S. 456, 361 (1988)),[9] it then suggests that one is on notice and lacks standing to challenge

the vagueness of a state if one "knew that [one's] conduct placed [one] at risk of criminal

sanction." [Doc. 48 at 14]. This is not the standard or the issue. One is not on notice, as the

government states, if one knows that something is "illegal." [Doc. 48 at 13, 14].

The government cites <u>United States v. Washam</u>, 312 F.3d 926 (8th Cir. 2002),[10] and

<u>United States v. Saffo</u>, 227 F.3d 1260 (10th Cir. 2000),[11] for its claim that "a defendant who had

actual notice that his conduct was illegal logically cannot claim that the statute is void for

_____

[9] In <u>Maynard</u>, the Supreme Court held that the "especially heinous, atrocious, or cruel" aggravating factor was unconstitutionally vague, using Eighth Amendment analysis because the issue was whether the challenged provision adequately informed a jury what they must find to impose the death penalty.

[10] In <u>Washam</u>, the defendant was convicted of illegally selling a chemical for human consumption. <u>Id.</u> at 930 ("[T]he evidence . . . shows that Washam knew his conduct was illegal because even though the **shipping label said not to ingest**, Washam told the buyers how much to ingest . . . and he commented about other chemicals that *were* legal for human consumption.") The defendant later challenged "the definition of a controlled substance analogue" as unconstitutionally vague as applied to the facts of his conviction. The Eighth Circuit stated that "[w]e think the government's 'actual notice' argument has some appeal," but also found that "even if we overlook Washam's actual knowledge that his conduct was illegal, we still find that the Analogue Statute is not vague as applied to him," <u>id.</u> at 930. <u>See also id.</u> at 929 (quoting <u>Connally v. Gen. Constr. Co.</u>, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.")). <u>Id.</u> at 929-30 ("A penal statute is void if it does not sufficiently define a criminal offense so that ordinary people can understand what conduct is prohibited. <u>Kolender</u>, 461 U.S. at 357. This inquiry looks at what a person of "common intelligence" would "reasonably" understand the statute to proscribe, not what the particular defendant understood the statute to mean. <u>Nat'l Dairy Prods.</u>, 372 U.S. at 32-33).

[11] In <u>Saffo</u>, after the defendant was convicted of a conspiracy to possess and distribute pseudoephedrine, used to manufacture methamphetamine, she challenged the statutes on appeal for the first time. Noting the "extensive steps" used to conceal her role in the distribution of pseudoephedrine, including lying to the DEA about her pseudoephedrine customers, the Tenth Circuit held that "the evidence at trial demonstrated that" the defendant "as applied to Saffo," the statute is not unconstitutionally vague." <u>Id.</u> at 1270.

vagueness as applied to him." [Doc. 48 at 14]. The "actual knowledge" standard has not been

embraced by the Supreme Court; moreover, in both cases cited by the government, the

defendants were prosecuted under statutes which proscribed the very conduct the defendants

knew to be illegal. The Supreme Court cases cited by the government set out the proper

analysis. See [Doc. 48 at 14] (citing United States v. Williams, 128 S.Ct. 1830, 1845 (2008), and

Hoffman Estates v. Flipside, 455 U.S. 489 (1982)). In Williams, the defendant pleaded guilty to

pandering and possessing child pornography, reserving the right to challenge the constitutionality

of the pandering provision. Williams, 128 S.Ct. at 1837-38.

> Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due
> Process Clause of the Fifth Amendment. A conviction fails to comport with due
> process if **the statute** under which it is obtained fails to provide a person of
> ordinary intelligence fair notice of what is prohibited, or is so standardless that it
> authorizes or encourages seriously discriminatory enforcement.

Id. at 1845 (internal citations omitted). The Williams Court then quoted from Hoffman that "[a]

plaintiff who engages in some conduct that is clearly proscribed cannot complain of the

vagueness of the law as applied to the conduct of others," to support its holding that there is "no .

. . indeterminancy" in the statute, having been narrowly tailored and "carefully crafted" to

combat the singular harm of child pornography. Id. In context, this quote means that a statute

must clearly proscribe conduct for a defendant to comport with the Due Process Clause. In

Hoffman, the Supreme Court had explained why "[v]ague laws offend several important values:"

> The standards for evaluating vagueness were enunciated in Grayned v. City of
> Rockford, 408 U.S. 104, 108-09 (1972):
>
> > First, because we assume that man is free to steer between lawful
> > and unlawful conduct, we insist that laws give the person of
> > ordinary intelligence a reasonable opportunity to know what is
> > prohibited, so that he may act accordingly. Vague laws may trap
> > the innocent by not providing fair warning. Second, if arbitrary and
> > discriminatory enforcement is to be prevented, laws must provide
> > explicit standards for those who apply them. A vague law

impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications."

These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates-as well as the relative importance of fair notice and fair enforcement-depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Hoffman, 455 U.S. at 498-99. See also id. 495 n.7 ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.") (quoting Parker v. Levy, 417 U.S. 733, 756 (1974)). The indictment contains no allegation sufficient to deny Mr. Kernell standing.

## IV. REPLY TO RESPONSE TO MOTION TO DISMISS CHARGE OF ANTICIPATORY OBSTRUCTION OF JUSTICE [DOCS. 37 & 38]

In his Motion to Dismiss Count 4, Mr. Kernell argued that Count 4 and the statute upon which it is based are unconstitutionally vague, both facially and as applied, and Count 4 fails to state an offense for the following reasons: (1) because the relatively untested section 1519 does not tether the *mens rea* (in the last 2 clauses) or *actus reus* (at all) to a particular proceeding, it violates due process to impose criminal liability prior to an investigation and without a limiting specific intent; (2) section 1519 was not meant to apply to individuals who have no duty to preserve materials before an investigation exists, because the Act's overarching purpose -- and

15

Congress' common understanding -- was to combat institutional fraud; and (3) the rule of lenity resolves doubts in favor of defendants. [Doc. 38].[12]

In its response, the government chides the defense for "unnecessarily contort[ing] the language of" section 1519 [Doc. 48 at 41] and "inappropriate[ly]" citing legislative history [Doc. 48 at 47].[13] Yet, the government does not engage the argument that one of the final clauses lacks a specific intent element unless the statute itself is contorted and read ungrammatically. [Doc. 38 at 12-17]. Instead, the government repeatedly asserts that the government must prove no more than what the statute says, even though the sufficiency of what the statute says is at issue. [Doc. 48 at 45];[14] [Doc. 48 at 50];[15] [Doc. 48 at 50].[16] The government claims that the "plain language

---

[12] Mr. Kernell also showed that (1) the fact that one of the final clauses in the statute is not modified by a specific intent element, and the resulting lack of clarity, means that legislative history is a proper tool of statutory construction for section 1519, and (2) that the Supreme Court effectively read a prejudice requirement into another obstruction statute, section 1503, in United States v. Aguilar, 515 U.S. 593 (1995), and a similar requirement is within section 1519. Indeed, some courts have found that the materiality requirement absent from some of other obstruction statutes is conceptually justifiable only when "endeavor" is included among elements. See United States v. Craft, 105 F.3d 1123, 1128 (6th Cir. 1997) ("In a section 1503 proceeding, the government need not show that the act actually obstructed justice. If the act had "the natural and probable effect of impeding justice" it constitutes an "endeavor" to obstruct justice in violation of section 1503."). There is no such "endeavor" element in the text of section 1519, further necessitating proof of intent, prejudice, and materiality.

[13] Interestingly (even if not directly responsive to the issue), despite its protestations that legislative history is "inappropriate and unnecessary" [Doc. 48 at 47], the government uses a non-contextualized excerpt from the legislative history of section 1030 to justify its conclusion that using a state law tort to transform a federal misdemeanor into a felony comports with the Constitution. [Doc. 48 at 38].

[14] "Section 1519 prohibits the knowing altering, destroying, and concealing of records with the intent to impede, obstruct and influence a federal investigation of a matter in relation to and contemplation of such a federal investigation." [Doc. 48 at 45].

[15] "Section 1519 is violated, alleged here, when a defendant knowingly alters, destroys or conceals records or documents and does so with an intent to impede, obstruct or influence an investigation within the jurisdiction of a federal agency, here the FBI, or in relation to or contemplation of such a federal investigation." [Doc. 48 at 50].

[16] "The destruction of documents with the intent to impede, obstruct and influence an investigation of a matter by, and within the jurisdiction of, the Federal Bureau of Investigation,

of the statute and the scienter requirement insure that the defendant's right to notice has been protected" [Doc. 48 at 34], but does not discuss to which elements the scienter requirement applies. Therefore, whether or not, as the government claims, section 1519 is properly applied in a non-corporate context is a secondary issue. [Doc. 48 at 42].[17] The issue which must be answered first is whether or not section 1519 is unconstitutionally vague for failing to include a "specific intent" requirement when prosecuting individuals who alter or destroy documents "in relation to or contemplation of" an investigation. The cases cited throughout the Response do not resolve this issue, because the charges in those cases (1) were based on pending investigations, (2) alleged that the defendant had the intent to obstruct, and/or the issue was not discussed. See [Doc. 48 at 38-55] (citing United States v. Velasco,[18] 2006 WL 1679586, at *4 (M.D. Fla. 2006) (defendant charged with falsifying a document "with the intent to impede, obstruct and influence the investigation being conducted by the Office of the Inspector General"); United States v. Jho,[19] 465 F.Supp.2d at 636-37 (defendant had a duty to record an entry into the Oil Record Book anytime he knew that the oil pollution equipment on the Pacific Ruby was not operating properly, and the US Coast Guard's investigation was already ongoing when the alleged failure to keep a record occurred); United States v. Ionia Management SA,[20] 526 F.Supp.2d 319 (D. Conn. 2007) (after defendant convicted of violating 18 U.S.C. § 1001 in 2004, district court imposed special condition of probation of a stringent compliance program which included ongoing investigation by the Coast Guard, periodic reports, and certifying

---

and in relation to and contemplation of such a federal investigation, as alleged, clearly violates Section 1519." [Doc. 48 at 50].

[17] Mr. Kernell argued that the purpose was to combat "institutional" fraud and was meant to apply when there is a duty to preserve materials. [Doc. 38].

[18] Cited at [Doc. 48 at 41, 46, 51, 52].

[19] Cited at [Doc. 48 at 41, 45, 49, 52, 54].

[20] Cited at [Doc. 48 at 43, 45, 49, 54].

accuracy of Oil Record Book; thereafter, defendant was charged under the "intent" prong of

section 1519 for falsifying the records required as part of court-ordered compliance with the

intent to impede an investigation by the U.S. Coast Guard); United States v. Hunt,[21] 526 F.3d

739 (11th Cir. 2008) (holding that section 1519's plain language placed the defendant "on notice

that his action of knowingly making a false statement about the circumstances of Woodard's

arrest with the intent to impede an FBI investigation was conduct sufficiently proscribed by

section 1519"); United States v. Smyth,[22] 213 Fed.Appx. 102 (3rd Cir. 2007) ("[Defendant] was

identified in connection with an investigation into a child pornography distribution ring being

conducted by the Federal Bureau of Investigation ('FBI'). After being contacted by an FBI agent

in November of 2003, Smyth agreed to provide his computer hard drive to the FBI; however, he

provided a worthless part of the computer and dumped the actual hard drive in a body of water to

prevent the FBI from retrieving and analyzing it."); United States v. Jackson, 2006 WL 1737193

(9th Cir. 2006) (defendant, a criminal investigator, was convicted "of falsifying records in a

federal investigation, in violation of 18 U.S.C. § 1519, by omitting a confession made by another

FPS officer from an official investigation report," no discussion of relation/contemplation);

United States v. Fumo,[23] 2007 WL 3132816 (E.D. Pa. 2007) (motion to dismiss count based on

section 1519 denied because "[t]aking the government's allegations as true, Senator Fumo, with

actual knowledge of investigations by the FBI, the IRS, and a grand jury . . . did destroy e-mail

and other electronic evidence 'in order to prevent the FBI, the IRS, and this federal grand jury

from receiving or reviewing such evidence in the course of the investigation,' and holding

indictment not vague because, "[t]he indictment does not allege that Senator Fumo acted in

---

[21] Cited at [Doc. 48 at 42, 47, 52].
[22] Cited at [Doc. 48 at 42, 53].
[23] Cited at [Doc. 48 at 42, 51, 53].

response to a contemplated investigation; all of the allegations relate to an actual, ongoing investigation of which Senator Fumo allegedly had knowledge"); United States v. Hooks, 2007 WL 2572205 (W.D. Tenn. 2007) (defendant charged with making a false entry in "an invoice, with the intent to impede, obstruct, and influence the investigation or proper administration of a matter within the jurisdiction of the United States Department of Justice;" opinion does not discuss the relation or contemplation prong); United States v. Mermelstein, 487 F.Supp.2d 242 (E.D.N.Y. 2007) (defendant "charged with fraudulently billing health care benefit programs . . . and conspiring with his office manager to create false medical records to support his fraudulent claims;" defendant challenged specificity of section 1519 charge, and count held sufficient because it tracked the statute's language; no discussion of relation/contemplation prong); United States v. Wortman,[24] 488 F.3d 752 (7th Cir. 2007) (upholding conviction for "knowingly altering, destroying, and mutilating a tangible object with the intent to impede, obstruct, and influence the investigation" where defendant "broke the CD after learning that the FBI suspected her boyfriend of illegally possessing child pornography and after FBI agents explicitly told her not to touch the CDs" and government offered evidence that defendant asked another person to lie to FBI in attempt to conceal what she had done); United States v. Sandstrom, 2006 WL 1128802 (W.D. Mo. 2006) (this is an order ruling on defendant's motion to sever counts, having been charged "with the intent to impede, obstruct, and influence the possible investigation of a matter and matters within the jurisdiction of a department or agency of the United States" for burning of the vehicle occupied by the defendants during the murder; no discussion of constitutionality); United States v. Perkins, 470 F.3d 150 (4th Cir. 2006) (discussion of section 1519 reference in footnote that co-defendant was initially charged with section 1519 violation for

---

[24] Cited at [Doc. 48 at 43, 53].

making a false allegation in police report; no discussion of merits of charging section 1519 or explanation for subsequent omission of the count among counts to which co-defendant pleaded guilty); United States v. Vega, 2006 WL 1674155 (3rd Cir. 2006) (conviction for corrupt persuasion withstood challenge to sufficiency of the evidence because testimony at trial indicated that defendant's statement to a witness "could reasonably be construed as advising [her] to destroy the I-94 that she had received from [him]" which was a document "relevant to a pending criminal investigation" which, if destroyed, "would have violated federal law," citing 18 U.S.C. § 1519); United States v. Lessner, 498 F.3d 185 (3d Cir. 2007) (defendant appealed factual basis of guilty plea to obstruction; court held conviction sufficient because defendant, a team leader for federal agency whose mission is to procure supplies for the Department of Defense, "the plain language of the statute requires . . . the 'intent' to impede an investigation or case" and factual basis for guilty plea was that after Special Agents from the Defense Criminal Investigative Service ('DCIS') executed search warrants in connection with investigating the illegal awarding of defense contracts, advised defendant that they were about to conduct a lawful and authorized search, and instructed her to remove only personal items from her work space but she threw an appointment book in the trash and called other employees to ask them to remove items from her desk); United States v. Hoffman-Vaile, 2009 WL 1458567 (11th Cir. 2009) (defendant challenged application of section 1519 to judicial proceedings; court notes that the grand jury subpoenaed the missing records "in relation to or in contemplation of" this investigation, but proof showed that defendant "knew that the records were to be produced with the photographs intact, and that she instructed her employees to remove the photographs before the files were produced").

The government also states that "the defense selectively misconstrues the legislative history" of section 1519 and that "[i]f this Court accepts the defense invitation to wade through the legislative history, when properly considered, the legislative history only confirms the broad application Congress intended for Section 1519." [Doc. 48 at 47, 48]. However, as a counter-argument to the different types of legislative history materials cited in Mr. Kernell's Motion to Dismiss Count Four [Doc. 38] the government repeatedly cites to one senate report. See [Doc. 48 at 44] (citing Sen. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002)); [Doc. 48 at 48] (same); [Doc. 48 at 54 n.15] (same); [Doc. 48 at 54] (quoting case citing same); [Doc. 48 at 49] (same at 27); [Doc. 48 at 52 n.14] (same at 4) and a page from the Congressional Record. See [Doc. 48 at 48](citing 148 Cong. Rec. S7418); [Doc. 48 at 49](same). Even so, the expressed desire for a broad statute that the government says is reflected does not answer whether such a broad statute is constitutional or whether the relation/contemplation prong is modified by a specific intent element. As such, Count 4 fails to state a claim. Cf. United States v. Abrams, 539 F.Supp. 378, 386 (S.D.N.Y. 1982) (granting defendant's motion to dismiss obstruction of justice counts for lack of factual specificity even though the counts tracked the language of the statute and indicated the time period of the charges) ("The counts provide no other factual specifics. They do not name the persons alleged to have been prevented from communicating to federal authorities; they do not identify the criminal statutes to which the obstructed information pertained. Nor do they detail any of the alleged acts of bribery or misrepresentation, or identify with any precision the criminal investigators involved.").

As with the other counts, and as discussed more fully in Section III, the government incorrectly asserts that Mr. Kernell lacks standing to challenge section 1519 [Doc. 48 at 50]. Mr. Kernell therefore incorporates his argument in section III with respect to Count 4.

## V. REPLY TO RESPONSE TO MOTION TO DISMISS COMPUTER FRAUD COUNT AND ITS FELONY ENHANCEMENT [DOCS. 39 & 40]

In his motion and memorandum, Mr. Kernell has shown that Count 3 of the Superseding Indictment fails to state an offense because it improperly aggregates two misdemeanors in an attempt to create a felony and because state law tort standards are insufficient to support federal felony liability.

As with the other counts, and as discussed more fully in Section II, the government claims that Count 3 "pleads all elements required by the statute" and, "[t]hough not required . . . gives additional detail" such as naming a crime and tort furthered by the defendant's alleged conduct, but indicates that there may be "other crimes and torts not specified in the Superseding Indictment." [Doc. 48 at 30-31, 34]. See also [Doc. 48 at 35] ("Though not required to [Count 3] then provided further detail, saying that those crimes and torts "include[ed]," among other possibilities, "aiding and abetting other violations of 18 U.S.C. §1030(a)(2)(C) . . . and tortious invasion of privacy.") For the reasons previously discussed, Count 3 is insufficient.

### A. Count 3 does not "describe" the manner of access, the protected computer, the information obtained, or the interstate nature of the communication.

One of the reasons Count 3 provides insufficient notice is it fails to identify certain elements. The government asserts, though, that it "describes the manner of access, the protected computer, the information obtained, and the interstate nature of the communication." [Doc. 48 at 31] (citing ¶¶ 2, 3, 6, 7, 10 which are paragraphs in the introductory allegations, not Count 3). The facts alleged in the introductory allegations, though incorporated, are not paired or linked with the elements. Besides failing to provide notice, this deficiency in the indictment allows the government to change its theory of the case if its current theory were to change. Nor do these introductory paragraphs tell us which computer the alleged "protected computer" was.

B.  Count 3 is duplicitous within the four corners of the indictment.

The government informs that, "Defendant discourses for pages on the incorrect assumption that 'the Government has charged that Mr. Kernell committed a crime in furtherance of the same crime.'  This is wrong: the Superseding Indictment charges Defendant with committing a crime in furtherance of *other crimes and torts*."  [Doc. 48 at 32] ("Count 3 . . . does not allege 'aiding and abetting' twice . . . .").  Because the sufficiency of the indictment is judged within its four corners, as pointed out by the government on the first page of its Response [Doc. 48 at 1], Mr. Kernell stands by his arguments.  Compare [Doc. 21, *Superseding Indictment* at Count 3, ¶ 27] ("[D]efendant DAVID C. KERELL, in furtherance of the commission of a criminal and tortious act . . . including aiding and abetting **other violations** of 18 U.S.C. §1030(a)(2)(C) . . . and tortious invasion of privacy . . . .") with [Doc. 48, *Government's Response*, at 33] ("Count Three . . . charges that his access not only constituted illegal intrusion, but furthered *additional* crimes and torts **by others**.").  See also [Doc. 40 *Motion to Dismiss* at 4] (noting that Count 3 alleges that "DAVID C. KERNELL, in furtherance of the commission of a criminal and tortious act . . . including **aiding and abetting** other violations . . . accessed a protected computer . . . and did **aid and abet** in same."); [Doc. 40 at 6] ("If the felony provision is not removed, Counts 3 will remain duplicitous because the same crime is charged multiple times within the same count.").

C.  The difference between a felony and a misdemeanor goes to the elements of the offense, not sentencing.

Based on Mr. Kernell's arguments that Count 3 fails to state all of the required elements, including the felony enhancement elements of section 1030(c)(2)(B), the government goes so far as to say that "Defendant . . . appears to be using a motion to dismiss as a mechanism to influence any eventual sentencing."  [Doc. 48 at 32].  See also [Doc. 48 at 34] (characterizing

23

Mr. Kernell's argument that it does not appear Tennessee law would apply under this State's choice of law analysis as "utterly beside the point" and "appropriate for Defendant's closing argument, but not for a motion to dismiss"). On the contrary, the entire section was about the legal standard to be applied, the proper subject of a motion to dismiss.

D. <u>Whether or not a Tennessee law would apply is a legal argument, not a factual argument</u>.

Mr. Kernell has challenged whether a federal district court in a criminal matter would apply Tennessee law under this State's choice of law jurisprudence, or whether analysis under the appropriate legal framework would result in the application of another state's tort law. [Doc. 40 at 8-14]. The government incorrectly characterizes the issue as a factual argument. [Doc. 48 at 34]. The decision about what law to apply is a legal decision for a court, not for a jury.

The only case cited by the government to support the sufficiency of Count 3 for its argument that "[t]he Superseding Indictment need only allege the fact that the Defendant's conduct furthered other crimes and torts; additional detail is not required," [Doc. 48 at 34] is <u>United States v. Brannan</u>, 457 F.2d 1062 (6th Cir. 1972), which the government quotes as standing for the proposition that "an indictment for conspiring to commit an offense – in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." However, the government omits the rest of that sentence and the following sentence:

> It is well settled that in an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, <u>Williamson v. United States</u>, 207 U.S. 425, 447 or to state such object with the detail which would be required in an indictment for committing the substantive offense, Thornton v. United States, 271 U.S. 414, 423. **In charging such a conspiracy "certainty to a common intent, sufficient to <u>identify the offense</u> which the defendants conspired to commit, is all that is necessary."** <u>Williamson v. United States</u>, *supra,* 207 U.S. 447.

United States v. Branan, 457 F.2d 1062, 1064 (6th Cir. 1972). See also id. (quoting Davis v. United States, 253 F.2d 24 (6th Cir. 1958) (approving government's citation to specific section of statutes violated as object of conspiracy). Even though Branan was decided before the Apprendi/Jones decisions, the Sixth Circuit (citing Supreme Court precedent) required the government to inform the defendant not just that he was involved in the conspiracy, the object of which was an offense, but that he was involved in a conspiracy, the object of which was an identified offense.

      E.  Count 3 fails to satisfy Apprendi.

The government insists that the indictment is sufficient under Apprendi because "section 1030(b)(2)(B)(ii) specifies the "fact" that enhances the statutory maximum, and the Superseding Indictment charged that fact," [Doc. 48 at 35], citing only Apprendi and United States v. Cotton, 535 U.S. 625 (2002), in support of their argument. Apprendi is discussed in Section II. Cotton Supports Mr. Kernell's position. In Cotton, the defendant was convicted under an indictment that "charged a conspiracy to distribute and to possess with intent to distribute a 'detectable amount' of cocaine and cocaine base," but that "did not allege any of the threshold levels of drug quantity that lead to enhanced penalties under § 841(b)." Id. at 627-28. The defendant did not challenge the sufficiency of the indictment at trial, even though the trial court made a finding of drug quantity that implicated the enhanced penalties. Id. at 628. After the convictions were reversed, upon appeal to the Supreme Court, the government conceded that "the indictment's failure to allege a **fact, drug quantity**, that increased the statutory maximum sentence rendered respondents' enhanced sentences erroneous under the reasoning of Apprendi and Jones. The

Government also concedes that such error was plain." Id. at 632.[25] See also United States v. Stewart, 306 F.3d 295 (6th Cir.2002) (concluding that sentences imposed on two defendants violated *Apprendi* because a judge, rather than a jury, determined the drug quantities for which the defendants were sentenced) (quoted by United States v. Lentsch, 369 F.3d 948, 952 (6th Cir. 2004)); United States v. Bright, 52 Fed.Appx. 812, 813, 2002 WL 31809279, *1 (6th Cir. 2002) (holding that defendant's argument that indictment was defective failed because "indictment expressly indicated the quantity of drugs used to determine maximum sentence as required by Apprendi). According to the government's reasoning, in drug cases, the government need only plead the "fact" that the defendant distributed drugs in an amount would trigger the mandatory minimum, giving no additional specificity. This is not what Cotton says. Cotton says that the "fact" is the drug quantity. Here, the government cannot rely on mere citation to section 1030(b)(2)(B)(ii) without specifying the crimes and/or torts the computer fraud allegedly furthered. This is especially true because Mr. Kernell has raised the sufficiency of the indictment pretrial.

   F.   Section 1030 is unconstitutionally vague, and Mr. Kernell has standing to challenge it.

The government challenges Mr. Kernell's standing to challenge the constitutionality of applying section 1030 to the conduct alleged in the Superseding Indictment. Standing is addressed in Section III.

In defense of the constitutional sufficiency of section 1030, as charged in Count 3, the government says that "[a] defendant cannot make a vagueness challenge to a statute simply by

---

[25] Because the defendants did not object to the indictment at trial, and because the "overwhelming and uncontroverted evidence" was that they were involved in a vast drug conspiracy, the Supreme Court ruled that the plain error did not affect the defendants' substantial rights. Id. at 634.

claiming that it uses broad language." [Doc. 48 at 37]. In his Motion to Dismiss Count 3, Mr.

Kernell asserted that both Count 3 and the statute upon which it is based are constitutionally

vague, facially and as applied. [Doc. 40 at 19-25]. The government's response that "[b]road

terms, like narrow terms, both put the defendants on notice that certain conduct is prohibited,"

[Doc. 48 at 37] does not respond to the substance of the issues raised in the Motion to Dismiss.

The government's citation to a Seventh Circuit opinion holding that rejected a vagueness

challenge to the term "computer," even if correctly decided, misses the point. [Doc. 48 at 37]

(citing United States v. Mitra, 405 F.3d 492 (7th Cir. 2005)). In Mitra, the defendant was

convicted of violating section 1030(a)(5) for repeatedly interfering with an entire city's

"computer-based radio system for police, fire, ambulance, and other emergency

communications" over the course of a year by blocking the transmission of signals between the

communications towers and preventing the public safety departments from being able to

coordinate responses to disturbances. Id. at 493. The court noted that, "[a]s more devices come

to have built-in intelligence, the effective scope of the statute grows. . . . What protects people . .

. is not judicial creativity but the requirements of the statute itself: the damage must be

intentional, it must be substantial (at least $5,000 or bodily injury or danger to public safety), and

the computer must operate in interstate or foreign commerce." Id. Here, not only does section

1030(a)(2) lack the concrete requirements of section 1030(a)(5) to "protect[] people" from

statutory growth, but Mr. Kernell challenges whether a common law tort is a sufficiently definite

concept to put a defendant on notice, not an issue like whether a computerized radio is a

computer.

VI.     REPLY TO RESPONSE TO MOTION TO DISMISS ALLEGATIONS OF
        "IDENTITY THEFT" [DOCS. 41 & 42]

As Mr. Kernell set out more fully in his motion and memorandum, the identity theft statute is inapplicable as a matter of law because a Yahoo! ID is not a "means of identification" but is an alias; the alleged means of identification is insufficient to describe a specific person; there is no rational basis for the felony/misdemeanor distinction; and because the indictment fails to set out the essential elements of the offenses Mr. Kernell allegedly intended to commit.

A. <u>A sufficient indictment requires more than citation to the statutory language, date, and place</u>.

The government incorrectly argues that the statutory language of section 1028(a)(7) is enough to satisfy the government's obligation to plead the elements of the offense. In his Motion to Dismiss, Mr. Kernell questioned whether the government's failure "to set out the essential elements of" Computer Fraud and Wire Fraud in Count 1 "calls for dismissal pursuant to <u>Apprendi</u>" [Doc. 42 at 13], and the government responded:

> Section 1028(a) prohibits conduct when a defendant had "the intent to commit, or to aid or abet . . . any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law." The Superseding Indictment, tracking this language, charges that Defendant had "the intent to commit, and to aid or abet . . . any unlawful activity that constitutes a violation of Federal law, that is, Fraud and Related Activity in Connection with Computers, under 18 U.S.C. §1030(a)(2)(C), and Wire Fraud, under 18 U.S.C. § 1343." This is **more than what is required** to plead the "intent" element of section 1028(a)(7): it pleads that Defendant's "intent" was to commit additional violations of Federal law, and, **going beyond what is required** of an indictment, even informs the Defendant of which "violations" those were.

[Doc. 48 at 7]. <u>See also</u> <u>id.</u> at 6 ("The indictment [fairly places Defendant on notice], in part, by repeating the statutory language and describing the date and place of the offense. That, alone, satisfied the Government's obligation . . . "). If the government's argument is the same for Count 1 as it is for Count 3, the government is also claiming that though it did "more than what is required" by "even inform[ing]" Mr. Kernell which violations are used to prove that he violated section 18 U.S.C. § 1028(a)(7), it is not limited to the two violations charged in the

28

indictment, and could decide to pursue convictions on alternate theories depending upon the proof at trial. See [Doc. 48 at 34].

As discussed more fully in Section II, this is a fundamental error. As this error relates to Count 1, the only authority cited by the government is a "cf." citation to United States v. Thompson, 515 F.3d 556, 566 n.2 (6th Cir. 2008), with the parenthetical observation that a footnote "cited cases holding that it was unnecessary for an indictment to specify the brand name of a firearm." [Doc. 48 at 7].[26] The two cases cited in the footnote, though, are United States v. Robinson, 904 F.2d 365 (6th Cir. 1990), and United States v. Hartz, 458 F.3d 1011 (9th Cir. 2006). In Robinson, though, the issue was whether the trial court's jury instructions were a constructive amendment of the indictment, Robinson, 904 F.2d at 368-69; in Hartz, the defendant questioned the sufficiency of the evidence, not the sufficiency of the indictment. Hartz, 458 F.3d at 1024-25. Respectfully, whether the brand name of a firearm is an essential element is a categorically different issue from whether a defendant is sufficiently put on notice when the indictment charges a violation of "any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law," without specifying which violation the defendant "had 'the intent to commit, and to aid or abet,'" [Doc. 48 at 7].

---

[26] In Thompson, the defendant and his co-defendant were separately charged with violating 21 U.S.C. § 924(c). The defendant was charged only with using and carrying his firearm (a "Ruger") during a drug trafficking crime, while his co-defendant was charged with using, carrying, and discharging his firearm (a "Glock") during a drug trafficking crime. The issue was whether the indictment gave Thompson sufficient notice that he was subject to the 10-year mandatory minimum for his co-defendant's discharge of the "Glock," under a theory of aiding and abetting. The Sixth Circuit held that the indictment was insufficient for this purpose. Thompson, 515 F.3d at 567 ("Because the indictment did ntogive Thompson fair notice that he could be held responsible for discharge of the Glock, the district court impermissibly exceeded the scope of the indictment at the sentencing stage.").

B.  **Mr. Kernell is entitled to be on notice of the crimes alleged as a part of the identity theft statute regardless of whether the government has to prove the crimes occurred.**

In response to Mr. Kernell's position that the indictment should have included the elements of the crimes, the government has argued that they do "not need to charge, or show at trial, that those furthered crimes ever occurred." [Doc. 48 at 7]. Whether or not the government is correct, this is not the issue raised by Mr. Kernell. Even assuming that the government does not have to obtain convictions for the underlying violations, the government must still prove Mr. Kernell intended the specific violations to occur to sustain a conviction for section 1028(a)(7). As such, the elements of the violations should have been included in the indictment.[27]

The government cites United States Sutcliffe, 505 F.3d 944 (9th Cir. 2007), for its argument that, "[t]he United States does not need to charge, or show at trial, that those furthered crimes ever occurred. It need only shows that defendant either had 'the intent to commit' those furthered crimes, or, alternatively, that defendant's conduct was 'in connection with' such a crime." [Doc. 48 at 7]. In Sutcliffe, the defendant, a computer technician, was fired for failing to disclose his past criminal convictions; upon termination, "Defendant began picketing outside the Global Crossing building with a sign referring to a website he had created. On this website, Defendant displayed [thousands of] Global Crossing employees' personal information, including payroll information, social security numbers, birth dates, and residential addresses, with some of this information hyperlinked to an article about identity theft." Id. at 950. In Sutcliffe, the issue was whether the government sufficiently proved the essential elements of section 1028(a)(7), not whether the government sufficiently pleaded them in the indictment. Sutcliffe, 505 F.3d at 959. An additional difference between Sutcliffe and Mr. Kernell's case is that Sutcliffe was indicted

_____

[27] The alternative methods for felony liability under the statute, that the defendant aided and abetted the underlying crimes or that the identity theft was "in connection with" the underlying crimes, would in fact require the government to prove that the underlying crimes occurred.

under section 1028(a)(7) before the statute was amended to add the phrase "or in connection

with" after "or to aid or abet." Id. at 959 n.5. This is significant because Sutcliffe held that the

proof was sufficient because

> [A] conviction under § 1028(a)(7) is based on the defendant's unlawful action of
> transferring or using another individual's means of identification **with the intent**
> to commit or to aid or abet other unlawful activity. Thus, the defendant's action in
> itself constitutes the crime for which he is convicted-a "separate and distinct
> offense" from the crime that he intends to commit or to aid or abet. We therefore
> hold that the government must only prove that the defendant committed the
> unlawful act with the **requisite criminal intent**, not that the defendant's crime
> actually caused another crime to be committed.

Id. at 960 (internal citations omitted). If you remove the specific intent element for identity theft

committed "in connection with" other violations, then the crime of identity theft committed "in

connection with" another violation, the government must prove the "connect[ed]" crime even if

it does not obtain a conviction as it must when a defendant is charged with, for example, aiding

and abetting[28] conspiracy,[29] or violating the Racketeer Influenced and Corrupt Organizations

(RICO) provisions of Title 18.[30] See also 6th Cir. Crim. Pattern Jury Instruction 3.01A

---

[28] "There is no question that a conviction for aiding and abetting a crime requires proof that the underlying crime was committed . . . . It is axiomatic that a criminal conviction requires the occurrence of a crime. Thus, a defendant can only be convicted for aiding and abetting where some underlying crime has been committed. Indeed, "[a]iding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense." Sutcliffe, 505 F.3d at 960.

[29] "It is well settled that in an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, Williamson v. United States, 207 U.S. 425, 447 or to state such object with the detail which would be required in an indictment for committing the substantive offense, Thornton v. United States, 271 U.S. 414, 423. In charging such a conspiracy "certainty to a common intent, sufficient to **identify the offense** which the defendants conspired to commit, is all that is necessary." Williamson v. United States, supra, 207 U.S. 447." United States v. Branan, 457 F.2d 1062, 1064 (6th Cir. 1972).

[30] "In order to sustain its burden of proof for the crime of participating in the affairs of an interstate enterprise through a pattern of racketeering activity . . . the government must prove the following . . . essential elements beyond a reasonable doubt . . . . [including] at least two

31

(instructing that one element of conspiracy requires the jury to find "that two or more persons conspired, or agreed, to commit the crime of []."); id. 4.01 (aiding and abetting) (requiring the jury to find "that the crime of [] was committed"). Cf. United States v. Hayes, 129 S.Ct. 1079 (2009) (noting that the "indictment identified [the defendant's] predicate misdemeanor crime" required to charge him with violating sections 922(g)(9) and 924(a)(2) for possessing firearms after having been convicted of a misdemeanor crime of domestic violence).

> It is well settled that in an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, Williamson v. United States, 207 U.S. 425, 447 or to state such object with the detail which would be required in an indictment for committing the substantive offense, Thornton v. United States, 271 U.S. 414, 423. In charging such a conspiracy "certainty to a common intent, sufficient to **identify the offense** which the defendants conspired to commit, is all that is necessary." Williamson v. United States, *supra,* 207 U.S. 447.

United States v. Branan, 457 F.2d 1062, 1064 (6th Cir. 1972). See also id. (quoting Davis v. United States, 253 F.2d 24 (6th Cir. 1958) (approving government's citation to specific section of statutes violated as object of conspiracy).

If specifying an element is essential for the unanimity of a jury verdict, it is logically inconsistent to claim that it is neither an essential element nor essential information to have presented to a grand jury and charged in the indictment.

C. Yahoo!'s corporate decision to name one of its features a Yahoo! ID does not make it a statutorily-defined "means of identification."

---

racketeering acts within ten years of each other." O'Malley, *Federal Jury Practice & Instructions* §56.03 (5th ed.). "The term 'racketeering activity' . . . mean[s] specific illegal acts. [*Describe the acts of racketeering and the defendant(s) charged in the acts . . . For each act of racketeering, list the elements of the offense and any appropriate definition or explanation*]. It is not sufficient that some members of the jury find that the defendant committed two of the racketeering acts charged while other members of the jury find that the defendant committed different racketeering acts. You must be unanimous as to which acts, if any, you believe Defendant [] committed." Id. § 56.06.

The government incorrectly and simplistically claims that "[e]ven without consulting the statutory definition, it is not difficult to conclude that something that is called an 'ID' – an abbreviation of the word 'identification' – is, in fact, a 'means of identification.'" [Doc. 48 at 8]. The government then selectively highlights the statutory definition of a "means of identification," sidestepping the requirement that in order to be a means of identification, the "name" must identify a "specific person." As discussed in Mr. Kernell's Motion, a Yahoo! ID does not identify a specific person.

The problem with using a Yahoo! ID as a "means of identification" is not the degree of correlation between a person's legal name and the person's Yahoo! ID, as the government suggests. See [Doc. 48 at 10] ("Should someone [sign on to Yahoo! with a name such as "gov.bredesen"], then under the statute 'gov.bredesen' would indeed be a means of identification" uniquely identifying him or her, even if Governor Phil Bredesen had no connection to the account."). The reason a Yahoo! ID is not a "means of identification" under the statute is that email accounts, no matter who signs on, are not necessarily identified with individuals, let alone "a specific individual." Contrary to the government's assertion, therefore, it is indeed "dispositive that a given individual can have more than one Yahoo! ID," [Doc. 48 at 10] ("[M]any people, for example, have a passport number as well as a Social Security number as well as a driver's license as well as a name," the government argued.). The government concludes that "[i]t is clear from the statute that one individual will normally have many 'means of identification' . . . [and] [h]aving more than one Yahoo! ID is consistent with that definition," [Doc. 48 at 10], but it is categorically different for a specific individual to have both a Social Security number and a passport number than for a specific individual to have many Social Security numbers or many passport numbers.

33

The government relies upon United States v. Kowal, 486 F.Supp. 2d 923 (N.D. Iowa 2007), to argue that "the Yahoo! ID and date of birth together are sufficient to identify a particular individual." [Doc. 48 at 9]. In Kowal, the defendant first obtained the birth certificate of a deceased individual, then used the birth certificate to obtain a driver's license; using the birth certificate and driver's license, the defendant applied for a social security number; using the birth certificate, driver's license, and social security number, the defendant applied for a U.S. passport; and while the defendant was "living under the name" of the deceased individual, he married a woman and applied for a real estate license. The defendant challenged the sufficiency the "means of identification" charged in Count 5 (surname and birth month), but the court used the incorporation of Count 4[31] which contained the victim's social security number to find that the combination of the specific individual's surname, birth month, and Social Security Number identified a specific individual. It is not clear how the court would have ruled had it not decided to consider the use of the social security number, because the cited published cases rely upon government-issued identification materials. See Kowal, 486 F.Supp. 2d at 937 (citing United States v. Oates, 427 F.3d 1086 (8th Cir.2005) (social security number used to obtain credit card account number); United States v. Scott, 448 F.3d 1040 (8th Cir.2006) (social security cards used to obtain fraudulent bank account numbers to print counterfeit checks); United States v. Crounsset, 403 F.Supp.2d 475, 482-83 (E.D.Va.2005) (alien registration number)). The

---

[31] Count 5 charged that, "On or about September 10, 2004, in the Northern District of Iowa, [D]efendant, MICHAEL EDWARD KOWAL, a/k/a "Michael William Tipton," a/k/a "Larry William Tipton," during and in relation to the offense set out in COUNT 4 [of the Indictment], [[FN1]] did knowingly use without lawful authority a means of identification of another person. Specifically, [D]efendant used the last name ("Tipton") and month of birth ("December") of "Larry William Tipton," an actual person." Id. at 926. "Count 4 of the Indictment charges Defendant with using a fraudulently obtained SSN, that is, the SSN ending in the four digits 0053, for the purpose of obtaining an Iowa real estate license, in violation of 42 U.S.C. § 408(a)(7)(A)." Id.

government's argument that a Yahoo! ID identifies a specific person [Doc. 48 at 10] cites United

States v. Blixt, 548 F.3d 882 (9th Cir. 2008), but Blixt and its holding that a signature is "meant

to be a particularized rendering of [a] name" and therefore "meant to identify him, specifically."

Id. at 888. The Court reasoned:

> Concluding that a forged signature constitutes a means of identification does not
> lead to an unreasonable result. Rather, recognizing a signature as a subset of
> "name" is consistent with the statute's purpose. *See* House Report No. 108-528,
> 2004 U.S.C.C.A.N. 779, 780 (June 8, 2004) ("The terms 'identity theft' and
> 'identity fraud' refer to all types of crimes in which someone wrongfully obtains
> and uses another person's personal data in some way that involves fraud or
> deception, typically for economic or other gain ..."). Here, Blixt's forgery of
> Fitzgerald's signature without authorization and for her personal economic gain
> falls precisely within this description of "identity theft" or "identity fraud."

Id. at 888. As a matter of law, a Yahoo! cannot identify a specific individual. With or without

additional information, it cannot be used with another piece of information to identify a specific

individual.

> D.  The government must identify the "means of identification" used.

The government must identify the means of identification alleged to have been used to

commit one of the felony provisions of the identity theft statute.

> Tracking the statutory text, the Superseding Indictment charges that Defendant
> "did knowingly transfer, possess, and use . . . a means of identification of another
> person." This alone would have been enough to satisfy the easily-met pleading
> standard in United States v. McAuliffe, 490 F.3d 526, 531 (6th Cir. 2007).

[Doc. 48 at 8]. As discussed in Section II, this is insufficient. To provide notice, to prevent

constructive amendment and/or variance, and to preserve unanimity, the government must

identify the "means of identification" used.

> E.  The government does not address Mr. Kernell's argument about the
>     felony/misdemeanor distinction.

The government does not address Mr. Kernell's argument that the felony and misdemeanor provisions lack meaningful distinction. [Doc. 48 at 11].  Instead, the government argues that "there are clear distinctions, readily apparent from the text: section 1028(a)(7) requires that the possession of the means of identification be 'without lawful authority,' while section 1028(a)(4) contains no such requirement." [Doc. 28 at 11-12]. Contrary to the government's position, the misdemeanor provision does have a lawful authority element. Section 1028(a)(4) makes it a crime to possess an identification document "(**other than one issued lawfully for the use of the possessor**)."  The government's reliance on the "clear distinction, readily apparent" that the felony provision (a)(7) is modified by "without lawful authority" while the misdemeanor provision (a)(4) is modified by "other than one issued lawfully" would seem to be a less clear and less apparent distinction.

Further, the government wholly relies on the claimed distinction between the felony and misdemeanor provisions created by the words "without lawful authorization" in subsection (a)(7) for its argument that there is a "rational basis" to defeat Mr. Kernell's Equal Protection argument.  [Doc. 48 at 13] ("Congress could rationally have concluded that possessing a means of identification 'without lawful authorization' deserved a harsher punishment than possessing a means of identification with lawful authorization.").  The government's premise is wrong, because there is a lawful authority defense to a section (a)(4) allegation.

## VII. REPLY TO RESPONSE TO MOTION TO DISMISS COUNT II ON THE BASIS THAT THE INDICTMENT FAILS TO ALLEGE FACTS CONSTITUTING WIRE FRAUD [DOCS 43 & 44]

Mr. Kernell has shown that the government's attempt to characterize this case as wire fraud fails because "information data and pictures" cannot satisfy the statutory requirement that the scheme be to obtain property.

36

The government's response to Mr. Kernell's motion to dismiss Count 2 for failure to allege "facts" constituting wire fraud begins with a recitation of the elements of wire fraud and re-recitation of the allegations in paragraphs 18-25 of the Superseding Indictment, concluding that "[t]he Superseding Indictment more than sufficiently provides notice to the defense of the fraud scheme in this case." [Doc. 48 at 17-19]. The issue raised by Mr. Kernell, though, is that even assuming the truth of the allegations in paragraphs 18-25, the indictment fails to allege facts which would constitute wire fraud as a matter of law. [Doc. 44].

The government then argues that Count 2 alleges a sufficient property interest to sustain a conviction of wire fraud when it alleges that Mr. Kernell "did knowingly devise, and intend to devise, a scheme and artifice to defraud, and for obtaining property, that is, information data and pictures from the e-mail account gov.palin@yahoo.com." [Doc. 21 at Count 2 ¶ 18]. See [Doc. 48 at 17]. The government believes that "information data and pictures" is "property" because the term has been interpreted broadly to include "something of value" and "confidential information." [Doc. 48 at 20, 21]. The government does not address its failure to describe the "information data and pictures," [Doc. 44 at 3 n.2] (noting that although paragraph 10 of the introductory allegations describes some "confidential and personal information" in the e-mail account, the government excluded this description by only incorporating paragraphs 1-5 into Count 2).

However broadly the courts have interpreted "property," the common thread is the nexus between the information and a commercial interest or monetary value. See [Doc. 48 at 20-25] (citing Pasquantino v. United States, 544 U.S. 349 (2005) (foreign government's tax revenues constituted property); Carpenter v. United States, 484 U.S. 19 (1987) (confidential business information); United States v. O'Hagan, 521 U.S. 642 (1997) (confidential information of a

company which, when disclosed, violated a fiduciary duty); <u>United States v. Seidlitz</u>, 589 F.2d 152, 160 (4th Cir. 1978) (confidential business information: computer software system into which company had invested money for economic advantage); <u>United States v. Musser</u>, 16 F.3d 1222 (6th Cir. 1994) (social security numbers used by defendant to search for adopted children and parents, a service for which he charged a fee and profited economically); <u>United States v. Louderman</u>, 576 F.2d 1383 (9th Cir. 1978) (defendant ran business that charged creditors money for the illegally obtained information about debtors; court instructed jury that "property" was defined as "confidential and nonpublic commercial information"); <u>United States v. Hedaithy</u>, 392 F.3d 580, 596-97 (3rd Cir. 2004) (defendant falsely obtained access to TOEFL and printed score report, deemed "property" because the reports were considered "confidential information acquired or compiled by a corporation in the course and conduct of its business"); <u>United States v. Grossman</u>, 843 F.2d 78, 86 (2d Cir. 1988) (defendant used confidential client information to buy, and advise his relatives to buy, stock in a client company; information property because it is a commercial business interest); <u>United States v. Kent</u>, 608 F.2d 542, 546 (5th Cir. 1979) (confidential commercial information considered property because it was confidential commercial property); <u>United States v. Poirier</u>, 321 F.3d 1024, 1029-31 (11th Cir. 2003) (scheme in which defendant's accomplice sent confidential commercial documents for money ($40,000) and the documents about the bidding process that had commercial value); <u>United States v. Belt</u>, 868 F.2d 1208, 1209 (11th Cir. 1989) (defendant solicited illegal bribes from companies, supplied the companies with confidential bid information--which had commercial value--and received money after the companies were accepted on jobs); <u>United States v. Carlo</u>, 507 F.3d 799 (2d Cir. 207) (scheme to mislead developers so as to earn fee while developers exposed to risk of a project's failure and experienced "negative financial effects"); <u>United States v. Gray</u>,

38

405 F.3d 227 (4th Cir. 2005) (defendant fraudulently received insurance proceeds following death of husband and paramour causing insurance company to suffer monetary losses)). These cases discuss confidential, not personal, information that existed in reference to a commercial purpose.

Next, the government argues that a showing of economic loss or motive is not required to support wire fraud, but Mr. Kernell's argument was not based on the monetary success of the scheme to defraud, as implied by the cases cited by the government, but on whether "information data and pictures" meets the traditional definition of property as required by the Supreme Court. Compare [Doc. 48 at 27] ("The Defense incorrectly asserts that a showing of economic loss or motive is required to support wire fraud.") with [Doc. 44 at 6-8] (arguing that all elements of wire fraud cannot be established without an economic motive because the cognizable property right, an essential element of wire fraud, is defined by looking to traditional concepts of property). See also United States v. Ames Sintering Co., 927 F.2d 232 (6th Cir. 1990) ("Only those cases in which a conviction was based entirely on the intangible rights theory have been overturned on McNally's authority.") (citing United States v. Runnels, 877 F.2d 481, 482 (6th Cir. 1989) (conviction reversed)); United States v. Patterson, 528 F.2d 1037 (5th Cir. 1976) (property subject of scheme to defraud was telephone company's lawful revenues).

## VIII. REPLY TO RESPONSE TO MOTION TO DISMISS FOR FAILURE TO ESTABLISH INTERSTATE COMMERCE JURISDICTION [DOC. 45]

Mr. Kernell has respectfully moved this Court for an order dismissing Counts 1 and 3 of the Superseding Indictment for failure to set forth any facts that would establish interstate commerce, an essential jurisdictional element. [Doc. 45 at 1]. More particularly, Mr. Kernell pointed out:

The government must show that the possession, transfer, and use of a means of identification (Count 1) or a single electronic communication (Count 3) substantially affected interstate commerce. Because the government cannot show a substantial interstate effect, the constitutional nexus is insufficient, and these counts fail as a matter of law.

Id. at 1-2. See also id. at 5 ("[T]here is no suggestion within the four corners of the indictment that a single transmission among the countless daily transmissions on the Internet could have substantially affected interstate commerce.").

The government's Response is unresponsive to the specific arguments made by Mr. Kernell, arguments based on the particular statutes the government has charged him with violating. [Doc. 48 at 15-17, 38]. As stated in the Motion and correctly re-stated by the government, there are generally three "categories of regulation in which Congress is authorized to engage under its commerce power." Id. at 15 (quoting Gonzales v. Raich, 545 U.S. 1, 16 (2005)). This is not the issue. It is true that "while listing all three [categories], Defendant focuses only on the last (whether his conduct 'substantially affect[ed] interstate commerce')," and this was intentional because that is the category Congress specifically chose to rely on. 18 U.S.C. §1028(c)(3)(A).

The government broadly claims that, "It is abundantly clear, however, that Congress had the right to regulate Defendant's conduct under either the first or second category." [Doc. 48 at 16]. Because the government begins from this false premise, it incorrectly concludes that the indictment "need not" establish that Mr. Kernell's conduct had an effect on commerce, because "Section 1028, as applied to this case, governs the use of the Internet, so its application is well within the power of Congress." [Doc. 48 at 16]. First, as noted by the government, section 1028 does not relate to the Internet. It is therefore no resolution to the issue that the Internet has been recognized as an instrumentality and channel of commerce in other cases based on other statutes.

40

More importantly, Mr. Kernell focused on the third category because section 1028 calls for analysis under the third category. See 18 U.S.C. §1028(c)(3)(A) ("the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce").

## IX. CONCLUSION

For the foregoing reasons and those set out in Mr. Kernell's motions, Mr. Kernell respectfully asks this Court to dismiss all counts of the Superseding Indictment.

Respectfully submitted this 15th day of June, 2009.

RITCHIE, DILLARD & DAVIES, P.C.

　　/s/ WADE V. DAVIES　　　　
WADE V. DAVIES [BPR #016052]
　/s/ ANNE E. PASSINO　　　　
ANNE E. PASSINO [BPR #027456]
606 W. Main Street, Suite 300
P. O. Box 1126
Knoxville, TN 37901-1126
(865) 637-0661

*Counsel for David C. Kernell*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been filed electronically this 15th day of June, 2009. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

　　/s/ Wade V. Davies　　　　　
WADE V. DAVIES