IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:08-CR-142 |
| | ) | |
| | ) | (PHILLIPS / SHIRLEY) |
| DAVID C. KERNELL, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.§ 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Kernell's Motion to Dismiss Count II on the Basis That the Indictment Fails to Allege Facts Constituting Wire Fraud [Doc. 43], filed on May 11, 2009. On June 30, 2009, the parties appeared before the undersigned for a hearing on the pending motions. Assistant United States Attorneys Greg Weddle, Mark Krotoski, and Josh Goldfoot appeared on behalf of the government. Attorneys Wade Davies and Anne Passino represented the defendant, who was also present. After hearing the arguments of the parties on these motions, the Court took the motions under advisement. On September 4, 2009, the defendant filed a Supplement to Motions to Dismiss [Doc. 79] on the issue of vagueness, pursuant to Local Rule

1

7.1(d).[1]  On September 9, 2009, the government opposed [Doc. 80] the supplemental filing, arguing that it has no application to this case.  After reviewing these supplemental filings, the Court again took the motions under advisement.[2]

## I. POSITIONS OF THE PARTIES

The defendant is charged in a four-count Superseding Indictment [Doc. 21], with identity theft, wire fraud, computer fraud, and anticipatory obstruction of justice in relation to the alleged unauthorized access of Governor Sarah Palin's Yahoo! e-mail account in September 2008.  The defendant asks [Doc. 43] the Court to dismiss Count 2, which alleges wire fraud, because the allegations in the Superseding Indictment do not constitute wire fraud as a matter of law.  Specifically, he contends that the allegation that he obtained "information data and pictures" does not constitute "property" under 18 U.S.C. § 1343 as a matter of law.  He also argues that the acts alleged do not constitute wire fraud because the alleged misrepresentations were not made to the victim, Governor Sarah Palin.  The Government responds [Doc. 48] that it has properly pled all the elements of wire fraud.

---

[1]Rule 7.1(d) prohibits supplemental filings without the Court's prior approval, with the exception of a brief of up to five pages "to call to the court's attention developments occurring after a party's final brief is filed."  E.D.TN. LR 7.1(d).  A response of up to five pages is due within five days.  Id.

[2]On October 9, 2009, the Court declared [Doc. 86] this case to be complex for purposes of the Speedy Trial Act, due to the novel legal issues raised in the multiple pending dispositive motions, including the instant motion to dismiss.  See 18 U.S.C. § 3161(h)(7)(B)(ii).

2

## II. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. Amend. V. "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landam, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landam, 251 F.3d at 1079. A defendant may challenge a defect in the indictment, such as its failure to state an offense, before trial. Fed. R. Crim. P. 12(b)(2).

Count 2 charges the defendant with a violation of 18 U.S.C. § 1343 as follows:

> On or about September 16, 2008, in the Eastern District of Tennessee and elsewhere, defendant KERNELL did knowingly devise, and intend to devise, a scheme and artifice to defraud, and for obtaining property, that is, information data and pictures from the e-mail account gov.palin@yahoo.com, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. . . . . defendant

3

**DAVID C. KERNELL**,

> for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining property, did knowingly transmit, and cause to be transmitted, and aided and abetted the transmission of an electronic transmission between the defendant's computer in Knoxville, Tennessee and Yahoo! computers located outside the State of Tennessee.

The defendant contends that the wire fraud charge must be dismissed (1) because the allegation that he obtained "information data and pictures" from Governor Palin's email account does not constitute a deprivation of property as a matter of law and (2) because the allegations of misrepresentation were not made to the victim of the scheme to defraud as required by law. Finally, the defendant also makes a general argument that the government has transformed this case into a wire fraud case by engaging in an overly broad reading of the wire fraud statute.

Section 1343 provides, in pertinent part, that

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. Thus, the elements of wire fraud are (1) "a scheme to defraud," (2) "use of wire communications in furtherance of the scheme," and (3) "that the scheme . . . intended to deprive a victim of money or property." United States v. Ames Sintering Co., 927 F.2d 232, 234 (6th Cir. 1990). The defendant's challenges center on the third element.

4

Case 3:08-cr-00142   Document 114   Filed 03/17/10   Page 4 of 18

## A. Property Allegation

The defendant contests whether "information data and pictures" can be "property" under 18 U.S.C. § 1343. He contends that the taking of information data does not comport with traditional notions of property and that the information alleged in this case has no economic value. He asserts that because the definition of property is ambiguous, the rule of lenity should be applied to hold that the unauthorized access of information data and pictures is not the taking of property. Finally, he argues that the language "information data and pictures" does not comport with Rule 7 of the Federal Rules of Criminal Procedure because it is not specific enough for him to determine what he is alleged to have taken. In this regard, he contends that the more specific allegations in introductory paragraph 10 of the Superseding Indictment are not incorporated into Count 2.

The government argues that traditional notions of property include the right to exclude others and that the defendant deprived the victim of that particular property right by resetting the password on her email account, taking control of the account, and then granting members of the public access to the account. It contends that the taking of "property" under section 1343 does not require that the perpetrator derive economic gain from the taking. Finally, it asserts that the "information data and pictures" alleged in the Superseding Indictment are the contents of Governor Palin's email account.

As set out above, the commission of wire fraud involves devising "any scheme or artifice to defraud, or for obtaining money or property[.]" 18 U.S.C. § 1343. "Property" is not defined in the statute, but Supreme Court case law provides guidance as to what constitutes property for purposes of section 1343.[3] In McNally v. U.S., the Supreme Court held that fraudulent schemes

---

[3] The Court notes that cases analyzing the mail fraud statute, 18 U.S.C. § 1341, are relevant to the instant inquiry under the wire fraud statute, 18 U.S.C. § 1343, because the pertinent language is the same. Carpenter v. U.S., 484 U.S. 19, 25 (1987).

under the mail fraud statute are only those schemes that intend to deprive the victim of money or property, rather than the intangible right to honest government services.[4] 483 U.S. 350, 357-58 (1987). In Carpenter v. U.S., the high Court clarified that the mail and wire fraud statutes protect intangible *property*, such as confidential business information. 484 U.S. 19, 25 (1987). Moreover, the Supreme Court held that deprivation of property in the mail and wire fraud statutes does not require that the victim suffer monetary loss:

> Petitioners cannot successfully contend . . . that a scheme to defraud requires a monetary loss, such as giving the information to a competitor; it is sufficient that the [victim the Wall Street] Journal has been deprived of its *right to exclusive use* of the information, for exclusivity is an important aspect of confidential business information and most private property for that matter.

Id. at 26-27 (emphasis added). Thus, the Court upheld the mail and wire fraud convictions of individuals who deprived the Wall Street Journal of its interest in the confidentiality of its stories until their publication. Id.

In the instant case, the Government contends that Defendant Kernell deprived Governor Sarah Palin of the exclusive use of her email account, thereby depriving her of a property right. The defendant argues that the "information data and pictures" in Governor Palin's email account was personal information, not confidential business information, and, thus, lacked any economic value. Citing to United States v. Czubinski, 106 F.3d 1069 (1st Cir. 1997), he asserts that the mere unauthorized access of confidential computer information does not constitute wire fraud. He

---

[4]The Court notes that Congress subsequently altered this holding by enacting section 1346, which states that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. The defendant asserts and the government does not contest that the intangible right to honest services is not at issue in this case.

6

maintains that in the instant case, the accessing of Governor Palin's computerized information caused no harm to Palin and no benefit to him. Thus, he concludes that the alleged conduct cannot constitute wire fraud as a matter of law.

In Czubinski, upon which both the defendant and the government rely, the First Circuit addressed whether an IRS employee's unauthorized accessing of taxpayer income tax return information constituted wire fraud. 106 F.3d at 1071. Defendant Czubinski conducted unauthorized searches of the IRS files of various political and social acquaintances. Id. at 1072. Although a witness testified that Czubinski had once stated an intention to create dossiers on persons involved in the white supremacist movement, there was no evidence that Czubinski ever did anything more than view the confidential information in question. Id.

Relying on Carpenter, the First Circuit observed that "confidential information" can be intangible property under section 1343 and that the "unauthorized dissemination or other use may deprive the owner of property rights." Czubinski, 106 F.3d at 1074 (citing Carpenter, 484 U.S. at 26). Accordingly, the court determined that "a necessary step toward satisfying the 'scheme to defraud' element in this context is showing that the defendant intended to 'deprive' another of their protected right." Id. Looking to the facts before it, the First Circuit held that "merely accessing confidential information, without doing, or clearly intending to do more," is not the equivalent of depriving another of a property right:

> Binding precedents, and good sense, support the conclusion that to "deprive" a person of their intangible property interest in confidential information under section 1343, either some articulable harm must befall the holder of the information as a result of the defendant's activities, or some gainful use must be intended by the person accessing the information, whether or not this use is profitable in the economic sense. Here, neither the taking of the IRS' right to "exclusive use" of the confidential information, nor Czubinski's gain

7

> from access to the information, can be shown absent evidence of his "use" of the information. Accordingly, without evidence that Czubinski used or intended to use the taxpayer information (beyond mere browsing), an intent to deprive cannot be proven, and, *a fortiori*, a scheme to defraud is not shown.

Id. at 1074-75 (footnote omitted). The court noted that if the government had shown that Defendant Czubinski disclosed or intended to disclose the confidential information to another, then it would have established deprivation of a property right. Id. at 1075 n.7. Nevertheless, "[m]ere browsing of the records of people about whom one might have a particular interest, although reprehensible, is not enough to sustain a wire fraud conviction on a 'deprivation of intangible property' theory." Id. at 1076.

In the instant case, the defendant likens his conduct to that of Defendant Czubinski, contending that he did not use the information contained in Governor Palin's email account. To the contrary, Count 2 of the Superseding Indictment alleges in paragraphs 21, 23, and 24 that the defendant "obtained control of and access to confidential and personal information" in Palin's email account, "reset the password and deprived the account holder of the information in the account[,]" and "disclosed the confidential and personal information" in the account to third parties. Accordingly, the Court finds that the allegations in Count 2 go beyond mere browsing of Palin's email account and amount to the deprivation of her property right to the exclusive use of that information.

The Court finds that Sixth Circuit case law also supports this finding. See United States v. Baldinger, 838 F.2d 176 (6th Cir. 1988). In Baldinger, the defendant, a polygraph examiner, sent letters to the customers of a fellow polygraph examiner Fleming falsely claiming that Fleming was conducting polygraph examinations without a license. Id. at 177-78. The indictment charged

8

Baldinger with twenty counts of mail fraud, alleging that his scheme deprived Fleming and his customers of "'their right to conduct business free of false, fictitious, and fraudulent information concerning the status of Fleming's polygraph license.'" Id. at 178. The Sixth Circuit analyzed the then recently decided cases McNally and Carpenter:

> while the Supreme Court recognized both tangible and intangible property interests, they nonetheless clearly intended to exclude from the reach of the mail fraud statute claims which did not involve a direct intention to deprive another of a recognized and traditional property right (tangible or intangible) through the employment of fraud or other artifice and the use of the public mail. In our view, therefore, McNally rejects that line of cases which predicates criminal liability only upon general acts of dishonesty or illegality unrelated to motives of property gain, whatever its nature.

Id. at 179. The appellate court held that the indictment failed to allege the essential element of "proprietary gain": "The indictment permits the jury to return a guilty verdict based upon no more than general allegations of dishonesty, allegations which, for the most part, amount to defamation and not to the traditional notions of fraudulent misconduct which [the mail fraud statute] seeks to prohibit." Id. at 180 (explaining that the government could not in hindsight proceed upon a theory that the defendant sought to deprive the victim of his good will because the defendant had no opportunity to defend against that theory).

The Court finds that the present indictment does not suffer from the same shortcoming as that in Baldinger because it alleges more than just the unauthorized access of Governor Palin's information. The present indictment alleges that Defendant Kernell gained a property right in that he acquired exclusive control of Governor Palin's account and disclosed the information therein to third parties.

The defendant argues that Count 2 fails to allege a deprivation of property under section

9

1343 because it alleges no economic benefit to him from the personal information contained in Governor Palin's email account. At first blush, Balinger might seem to lend some support to this contention because the court stated that Congress intended the relevant language in the mail and wire fraud statutes to apply to only those schemes that seek to "'transfer something of economic value to the defendant.'" Id. at 180 (quoting Comment, The Intangible Rights Doctrine and Political-Corruption Prosecutions Under the Mail Fraud Statute, 47 U. Chi. L. Rev. 562, 566 (1980)). Nevertheless, the Court finds the defendant's contention that the government must allege that he gained some economic benefit to be inconsistent with both the plain language of section 1343 as well as Congress's intent in enacting the statute. Initially, the Court notes that section 1343 expressly applies to schemes "for obtaining money or property[.]" Money and property are stated in the alternative, and, as discussed above, property can be an intangible property right, such as the right to exclude others. This language contains no express requirement that a perpetrator derive *economic* benefit from the property.

Secondly, the policy behind enacting the statutory language reveals that Congress's focus was on the harm to the victim, not the benefit to the perpetrator. The Supreme Court in McNally observed that that "[i]nsofar as the sparse legislative history reveals anything, it indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property." 483 U.S. at 356. In his brief supporting his motion, the Defendant characterizes the analysis of the legislative history in McNally as placing the "emphasis . . . on whether there was an economic loss to the victim or whether the defendant obtained money or property from the victim." [Doc. 44, p.5] The Supreme Court's holding in United States v. Cleveland, that "for purposes of the mail fraud statute, the thing obtained must be property in the

hands of the victim" rather than the defendant, also supports this interpretation. 531 U.S. 12, 15 (2000) (concluding that licenses for video poker machines were not property to the issuing government entity). The Court has already found that the instant indictment adequately alleges that the Defendant obtained property from Governor Palin. The Court finds that section 1343 does not require the Government to also prove that the Defendant derived an economic benefit from that taking of property. See, e.g., United States v. Seidlitz, 589 F.2d 152, (4th Cir. 1978) (holding that defendant had requisite "fraudulent intent" under the wire fraud statute even though the government did not show that the defendant used the victim's computer data in his own business or attempted to sell it to others).

Finally, the defendant argues that the Court must apply the rule of lenity in determining whether the "information data and pictures" alleged in the indictment constitutes property as a matter of law. The government contends that the rule of lenity does not apply in this case because case law has recognized that information can be property. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." United States v. Santos, 128 S. Ct. 2020, 2025 (2008).

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

Id.

The rule of lenity applies only when the statute remains ambiguous after traditional methods of statutory construction have been employed. United States v. Hayes, 129 S. Ct. 1079, 1088-89 (2009). In Cleveland, the Supreme Court, examining whether licenses for video poker machines

11

were "property" to the issuing government entity, observed that the rule of lenity would be properly applied to the term "property" in the mail fraud statute "to the extent that the word 'property' is ambiguous" therein. 531 U.S. at 25. In the present case, the Court finds that whether confidential information constitutes property under the wire fraud statute is not, or at least is no longer, ambiguous. See Carpenter, 484 U.S. at 26 (confidential business information is property under the mail and wire fraud statutes); Czubinski, 106 F.3d at 1074 ("confidential information" is property under section 1343); see also Cleveland, 531 U.S. at 19 (quoting Carpenter's holding that "'[c]onfidential business information has long been recognized as property'"). Accordingly, the rule of lenity does not apply.

The defendant also challenges the language "information data and pictures" as being insufficient under Rule 7 of the Federal Rules of Criminal Procedure. Rule 7(c)(1) requires that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.] Fed. R. Crim. P. 7(c)(1). Rule 7(c)(1) further provides, and the defendant acknowledges, that a "count may incorporate by reference an allegation made in another count[,]" but the defendant argues that in the instant case, Count 2 fails to incorporate paragraph 10[5] of the introductory allegations, which provides more detail on what "information data and pictures"

---

[5]Paragraph 10 of the introductory allegations in the Superseding Indictment states as follows:

> After defendant KERNELL established control over the e-mail account, he read, copied, and used the contents of the account. The confidential and personal information included, and was not limited to, other e-mail addresses of her family members, pictures of her family members, at least one cell phone number of her family member, the dates of birth of Governor Palin and another member of her family, and Governor Palin's address book for her Yahoo! e-mail account.

comprises. At the June 30 hearing, the government argued that the property alleged in Count 2 is the contents or the information and pictures contained in Governor Palin's email account, not the account itself.

The Court finds that the language in Count 2 "property, that is, information data and pictures from the e-mail account gov.palin@yahoo.com" complies with Rule 7(c)(1). It provides the defendant with the essential facts that serve both to inform him of the charge against him and to permit him to contest a future prosecution for this same offense. See Hamling, 418 U.S. at 117; Landham, 251 F.3d at 1079. Although incorporation of introductory paragraph 10 would have provided more detail as to the property obtained by the defendant's alleged scheme, the Court finds that the language in Count 2 is sufficient to satisfy Rule 7. Moreover, the inclusion of introductory allegation 10 serves to guard against surprise at trial. See generally United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993).

### B. Misrepresentation to Victim

The defendant also contends that Count 2 fails to state a violation of the wire fraud statute because it does not allege that the claimed misrepresentations were made to the victim of the fraudulent scheme. He argues that the indictment states the alleged misrepresentations were made to Yahoo!, not to Governor Palin. He asserts that in order to state a violation of section 1343, the indictment must allege that he intended to get money or property from the one deceived by the alleged scheme. The Government responds that the plain language of the wire fraud statute does not require that the misrepresentation be made to the victim of the scheme but, instead, prohibits "*any* scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent

13

pretenses, representations, or promises[.]" See 18 U.S.C. § 1343 (emphasis added). Alternatively, it argues that Yahoo!, as a custodian of the contents of Governor Palin's email account, was also a victim of the defendant's scheme.

Initially, the Court observes that a finding that Yahoo! is also a victim of the defendant's alleged scheme to defraud, as the government has asserted in a footnote of its response and argued at the June 30 hearing, does not resolve the issue. Even if Yahoo! were a victim, there is still an apparent disconnect between the person or entity to whom the misrepresentation was made (i.e., Yahoo!) and the person or entity that was deprived of property (i.e., Governor Palin). The government has not explained or even alleged that the "information data and pictures" were the property of Yahoo! but, instead, argues that Yahoo! was the custodian of Governor Palin's property. Thus, considering Yahoo! to be a victim of the alleged scheme does not resolve or moot the present issue as the government suggests.

Both parties note that the circuits are split as to whether the deception of the fraudulent scheme must be directed to the victim of the scheme, i.e., the individual or entity who suffered the loss of money or property. The First, Third, and Eighth Circuits have held that the plain language of section 1343 does not require that the person deceived by the scheme be the same person deprived of money or property. United States v. Christopher, 142 F.3d 46, 54 (1st Cir.) (rejecting the "convergence theory" and denying is application in earlier cases), cert. denied, 525 U.S. 1054 (1998); United States v. Blumeyer, 114 F.3d 758, 768 (8th Cir. 1997) (holding that "a defendant who makes false representations to a regulatory agency in order to forestall regulatory action that threatens to impede the defendant's scheme to obtain money or property from others is guilty of conducting a 'scheme or artifice . . . for obtaining money or property by means of false or fraudulent

14

pretenses, representations, or promises'" under the mail fraud statute); United States v. Olatunji, 872 F.2d 1161, 1168 (3rd Cir. 1989). The Second, Seventh, and Ninth Circuits have required a "convergence" between the party receiving the misrepresentations and the party deprived of money or property. United States v. Walters, 997 F.2d 1219, 1227 (7th Cir. 1993) (holding that "only a scheme to obtain money or other property from the victim by fraud violates" the mail fraud statute); United States v. Lew, 875 F.2d 219, 221 (9th Cir. 1989) (determining that the defendant's scheme to make false statements to the United States in order to obtain money from his alien clients did not constitute fraud); United States v. Evans, 844 F.2d 36, 39 (2d Cir. 1988) (opining that the deceived victim of the scheme must lose money or property but concluding that the facts of the case did not require it to be decided on this basis).

The Sixth Circuit has recognized but not weighed in on this split in the circuits. United States v. Frost, 125 F.3d 346, 360 (6th Cir. 1997). In Frost, the court held that it did "not have to resolve this split, however, because even the cases which have held that convictions may rest upon the deceit of a person other than the ultimate victim contemplated that the deception was causally related to the scheme to obtain property from the victim." Id. Applying the facts of the case before it, the court determined that the plagiarism (the deception perpetrated upon the University of Tennessee) was "irrelevant to the success of the scheme to obtain a government contract" from NASA. Id. at 361. Applying this analysis in the present case, the Court finds the deception of Yahoo!, as alleged in the indictment in paragraphs 19 through 23, was causally related to Governor Palin's alleged deprivation of control over her email account. There is a causal connection between the deception and the deprivation of property.

The Court finds that the approach adopted by the First, Third, and Eighth Circuits–that the

15

person deceived by the scheme does not have to be the same person who was deprived of money or property–conforms to the plain language of the statute, which prohibits "any" scheme to defraud. See 18 U.S.C. § 1343. Additionally, imposing a requirement that the misrepresentation must be made to the person deprived of their property requires the Court to read language into the statute that its drafters did not include. Finally, requiring a causal connection between the scheme and the deprivation of money or property, as suggested by the Sixth Circuit in Frost, protects against the possibility that the statute will be applied in situations that Congress did not intend to reach. Accordingly, the Court finds that the indictment did not have to allege that the defendant made misrepresentations to Governor Palin and that the allegations in the indictment do sufficiently state the offense of wire fraud as a matter of law.

**C. Vagueness**

Finally, the Court considers the defendant's argument in his supplemental filing [Doc. 79] that the government is attempting to stretch the wire fraud statute beyond the limits of its text and the Constitution in order to impose liability when such liability is not justified by the alleged facts. Although the supplement appears to relate primarily to his motion to dismiss Count 3 of the indictment, the defendant states that it supplements each of his motions to dismiss on the issue of vagueness. The defendant cites the Court to the Central District of California's recent decision in United States v. Lori Drew, No. CR 08-0582-GW, 2009 WL 2872855 (C.D. Cal. Aug. 28, 2009). He argues that the court's reasoning in the Drew decision challenges the government's overbroad reading of the statutes with which he charged as violating because such a broad reading removes the minimal guidelines established by Congress to govern law enforcement. The defendant analogizes

16

from the California court's ruling that allowing an individual's violation of a website's terms of service to constitute federal computer fraud in violation of 18 U.S.C. § 1030 would convert the statute into an "overwhelmingly overbroad enactment that would convert a multitude of otherwise innocent Internet users into misdemeanant criminals." Id. at *16. The defendant maintains that the essential holding of Drew is that the government's use of an overbroad interpretation of the statute expanded the statute to make it void-for-vagueness.

The government responds [Doc. 80] that Drew is a narrow ruling that a violation of a website's terms of service alone cannot constitute intentionally accessing a computer without authorization under the computer fraud statute. See id. at *16. Thus, it argues that Drew does not apply to this case.

The Court questions the applicability of the defendant's supplemental filing to his motion to dismiss Count 2 because he has not alleged that the wire fraud statute is void for vagueness. Nevertheless, the defendant does contend that Count 2 represents "a stretch of logic and law" in equating his conduct to "a scheme to defraud and to deprive Governor Palin of property." [Doc. 44 at p.1] In this regard, the Court finds that the defendant's attempt to analogize to Drew breaks down with the initial premise that the government has engaged in an overbroad reading of section 1343. To the contrary and as set out above, the indictment tracks the language of the statute and sufficiently states wire fraud as a matter of law. The Court cannot as a matter of law find that the facts alleged do not fit within the statute.

## III. CONCLUSION

After careful consideration of the motion, the parties' filings, oral argument, and the relevant legal authorities, the Court finds that Count 2 of the Superseding Indictment alleges facts that, if proven at trial, would satisfy the statutory elements of wire fraud under 18 U.S.C. § 1343. Accordingly, for the reasons set forth herein, the Court **RECOMMENDS** that the Defendant's Motion to Dismiss Count II on the Basis That the Indictment Fails to Allege Facts Constituting Wire Fraud [**Doc. 43**] be **DENIED**.[6]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).