UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-142 |
| | ) | Judges Phillips/Shirley |
| DAVID C. KERNELL, | ) | |
|     a/k/a "rubico," | ) | |
|     a/k/a "rubico10," | ) | |
| | ) | |
|         Defendant. | ) | |

UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM

COMES NOW the United States, by and through its undersigned counsel and hereby respectfully submits its Supplemental Sentencing Memorandum in this case.

For the reasons set forth below, under the applicable Sentencing Guidelines and Section 3553(a) sentencing factors, the government recommends a sentence of 18 months, the middle of the sentencing range.

I.    Formal Objections

While the government concurs with the Presentence Investigation Report that an Offense Level 14 applies in this case, there is one Sentencing Guideline that has not been applied and should be, even though it does not affect the overall offense level.

For Count Three, the three level enhancement applies under Section 3A1.2(a) (offense motivated by the government status of the victim). That guideline provides that "[i]f (1) the victim was (A) a government officer or employee;... or (C) a member of the immediate family of a person described in subdivision (A) or (B); and (2) the offense of conviction was motivated by such status, increase by **3** levels." U.S.S.G. § 3A1.2(a) (emphasis added).

As the governor of a state, Governor Sarah Palin was a "government officer or employee." Courts have found all manner of government officer, from law enforcement agents to postmasters to presidents and vice-presidents, to qualify for protection under § 3A1.2(a). *See United States v. Talley*, 164 F.3d 989, 1004 (6th Cir.1999) (FBI agent); *United States v. Polk*, 118 F.3d 286, 298 (5th Cir. 1997) (IRS employees); *United States v. McAninch*, 994 F.2d 1380, 1386 (9th Cir. 1993) (President); *United States v. Bailey*, 961 F.2d 180, 182 (11th Cir. 1992) (postmaster).

Moreover, Governor Palin's status as a candidate for national office also places her in the category of person meant to be protected by § 3A1.2. Her status as a major party's nominee for Vice-President entitled her to payment from the Presidential Election Campaign Fund and to Secret Service protection. *See* 26 U.S.C. § 9004(a)(2)(B); 18 U.S.C. § 3056(a)(7). The Sixth Circuit applied § 3A1.2 to a family member of Vice President Albert Gore, Jr., at a time when Vice President Gore was also candidate for President. *See United States v. Mitchell*, 59 F. App'x 701, 702 (6th Cir. 2003). The defendant in *Mitchell* threatened a member of Gore's family. The threat was motivated by Gore's status as a presidential candidate–and, in particular, his challenge to the results of the election in Florida–not by his status as Vice-President. *Id.* at 701-02.

Similarly, the evidence shows that the defendant selected Governor Palin as a victim because of Governor Palin's status as the Republican Vice Presidential candidate. For example, the defendant told others on 4chan.org:

> I read though the emails… ALL OF THEM… before I posted, and what I concluded was anticlimactic, there was nothing there, nothing incriminating, nothing that would derail her campaign as I had hoped, all I saw was personal stuff, some clerical stuff from when she was governor….

2

Shortly after the incident, defendant Kernell bragged to his friends, including Ben Reed on Facebook, "i hacked sarah palin's yahoo email acct." *See* Gov't Exh. 545. The defendant, then, chose this particular victim because he "hoped" to find "incriminating" material, or material that would "derail her campaign." Thus, his offense in Count Three "was motivated by" Governor Palin's status as a "government officer or employee." U.S.S.G. § 3A1.2(a).

This sets the defendant's conduct in Count Three apart and requires a 3-level increase under § 3A1.2(a). The defendant's motivation was not curiosity or playfulness, but a desire to victimize a government official because of her status. The Guidelines require that such a motivation be taken into account.

Finally, Application Note 5 further advises that "If the official victim is an exceptionally high-level official, such as the President or the Vice President of the United States, an upward departure may be warranted due to the potential disruption of the governmental function." U.S.S.G. § 3A1.2, (n.5). While the government is not requesting an upward departure from the applicable Sentencing Guideline range, it does believe that this Application Note supports the requested term of imprisonment, and may offset any downward departure bases offered by the defense.

II.     Clarifying Record On Cases Cited By The Defense

At the sentencing hearing, the government will respond to several of the contentions raised in the defendant's Sentencing Memorandum. However, the government believes it is important to correct a potential misunderstanding that may be caused by the list of Section 1519 cases cited by the defendant.

3

The defendant attempts to survey selected cases reported in online computer databases and, from them, piece together generalizations about typical sentences for violations of section 1519. These efforts to draw conclusions from scant available facts cannot compete with the superior research and expert judgment employed by the United States Sentencing Commission. "[T]he Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 108-109 (2007) (quotation marks omitted). The product of that expertise is the Sentencing Guidelines. Those guidelines, therefore, provide the most appropriate manner to minimize unwarranted sentencing disparities. *See, e.g., United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009) ("The best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly."); *United States v. Myktiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.").

The superiority of the Guidelines is particularly apparent here. As discussed further below, the defendant selected several cases that are quite different from this case. They involve corporations ineligible for prison sentences, involve guilty pleas rather than trials, involve binding settlement agreements, and involve negotiated plea agreements that contained concessions not present here. Consequently, it is inappropriate to compare the sentences imposed in these cases with the one at bar as part of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

4

conduct," under Section 3553(a)(6). Rather, the Guidelines provide the appropriate considerations.

### Incomplete Records

A review of the cases noted by the defense is hampered by the fact that many records are unavailable to verify the circumstances of the cases relied upon by the defense.[1] Nonetheless, a host of distinguishing features has been identified for those cases cited by the defense in which at least some of the records are available for review.

### Corporation Plea Agreements

Initially, the defense cites to at least seven cases which involved negotiated plea agreements with companies and organizations, including some international corporations.[2] Corporations cannot be subjected to a prison term. *See, e.g.*, U.S.S.G. § 8C1.1 (describing means to determine corporate fine). Therefore, it is misleading for the defendant to request a comparable prison term with an organization that cannot be incarcerated.

---

[1] For some plea agreements, access has been denied by the Court suggesting perhaps cooperation terms. *See, e.g., United States v. Martha Russell & Viola Bush*, No. 2:08-CR-00184 (EDPA), Plea agreements unavailable. (Doc. Nos. 39, 40). Some cases have several matters filed under seal. Consequently a complete understanding of many of the cases is not possible.

[2] *See* Defendant's Sentencing Memorandum, at 28, 36, 37, 39 (Doc. No. 207), relying on probation sentence imposed on corporations and organizations in:

(1) *United States v. Fleet Management Limited*, No. 3:08-CR-00160 (NDCA));
(2) *United States v. Paccship (UK) Ltd.*, No. 4:08-CR-00016 (EDNC) (involving a private corporation incorporated in the United Kingdom);
(3) *United States v. Heogh Fleet Services A/S*, No. 3:03-CR-05765 (WDWA) (involving a ship management company headquartered in Norway);
(4) *United States v. Garfeld Foundation, Inc., and Opportunities Investment Associates of Greater Milwaukee*, No. 2;04-CR-00297 (ED Wis.) (Company collecting rents for property leased to a non-profit organization and a wholly-owned subsidiary of the non-profit organization);
(5) *United States v. Accord Ship Management PVT Ltd.*, No. 3:0T-CR-00390(DPR) (a private company based in Mumbai, India);
(6) *United States v. Irka Shipping S.A.*, No. 1:10-CR-00372 (D. Md.) (Panamanian corporation with its headquarters in Greece).

5

Convictions By Negotiated Plea Agreements

Defendants who enter into a plea agreement are not similarly situated to defendants convicted following a contested trial. Virtually all of the cases cited by the defense are the product of negotiated plea agreements.

The defendant chose to exercise his right to trial. It is inappropriate for the defendant to request a sentence that is based on other cases which were resolved by negotiated plea terms. *See United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir. 2006) ("There would be considerably less cooperation – and thus more crime – if those who assist prosecutors could not receive lower sentences compared to those who fight to the last.").

Of critical significance, the plea agreements included the inducement of a lower sentence upon demonstration of acceptance of responsibility. *See, e.g.*, U.S.S.G. § 3E1.1.[3] In this case, the defendant himself has never accepted responsibility for his conduct to *any and all of the victims* affected by his actions. The defendant did exercise his constitutional right to receive a fair trial. The trial evidence shed light on the defendant's lack of character and his persistent disregard of the consequences his actions would have on others.

Additionally, in at least six of the cases relied upon by the defense, plea agreements were offered as binding under Fed. R. Crim. P. 11(c)(1)(C).[4] If the Court rejected the negotiated

---

[3] As the Sentencing Guidelines make clear:

"This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 (n.2).

[4] While several of the plea agreements relied upon the defense were not available for review, in the following cases binding plea agreement were offered and accepted by the Court:

(1) *United States v. Mary Kay Hamîlton*, No. 4:08-CR-00024 (WDKY), Fed. R. Crim. P. 11(c)(1)(C) Plea agreement ¶ 17 (noting plea agreement is "null and void" if not accepted by the Court)

6

probationary sentence in those plea agreements, the plea terms were not binding on any of the parties. In this case, there was no comparable "walk away" plea agreement reflecting the resolution and negotiation of other key terms.

Many of the plea agreements for the cases relied upon by the defense include an obligation that the defendant provide truthful cooperation.[5] In this case, the defendant exercised

---

(Doc. No. 96);

(2) *United States v. Fleet Management Limited*, No. 3:08-CR-00160 (NDCA) (Doc. No. 343) (noting binding plea agreement under Fed. R. Crim. P. 11(c)(1)( C));

(3) *United States v. Heogh Fleet Services A/S*, No. 3:03-CR-05765 (WDWA), Plea agreement ¶ 7 (Doc. No. 29) (noting binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C));

(4) *United States v. Accord Ship Management PVT Ltd.*, No. 3:0T-CR-00390 (DPR), Plea agreement ¶ 16 (noting binding plea agreement under Fed. R. Crim. P. 11(c)(1)( C); "If the Court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, and afford the defendant an opportunity to withdraw the guilty plea....") (Doc. No. 3);

(5) *United States v. Irka Shipping S.A.*, No. 1:10-CR-00372 (D. Md.), Fed. R. Crim. P. 11(c)(1)(C) Plea agreement ¶ 16 ("If the sentencing judge rejects this Plea Agreement, it shall be null and void at the option of either the government or Defendant.") (Doc. No. 10);

(6) *United States v. Saleh Zaghal*, No. 1:05-CR-00071 (DDC),Fed. R. Crim. P. 11(c)(1)(C) Plea agreement ¶ 3 (if the Court rejects the plea agreement, the Court "will inform the parties of its rejection of the plea agreement and will afford him an opportunity to withdraw the plea") (Doc. No. 6).

[5] Several cases identified by the defense included cooperation terms, the violation of which would result in a breach of the plea agreement, including the following cases:

(1) *United States v. James V. Modica, III*, No. 3:06-CR-00169 (MDFL), Defendant agrees to provide truthful cooperation in the Plea Agreement ¶¶ 10, 12 (Doc. No. 8);

(2) *United States v. Jimmie Lvnn Garrison*, No, 4:08-CR-00024 (WDKY), Plea agreement ¶ 13 (including requirement of truthful cooperation) (Doc. No. 96);

(3) *United States v. Bennie Duck*, No. 5:07-CR-00028 (EDTX), Plea Agreement ¶ 6 (including requirement of truthful cooperation) (Doc. No. 11);

(4) *United States v. Paccship (UK) Ltd.*, No. 4:08-CR-00016 (EDNC), Plea agreement, ¶ 2(g) ("The defendant shall continue to cooperate fully with the USA-EDNC and the Department, and with all other authorities and agencies designated by the USA-DNC and the Department, and shall truthfully disclose all information with respect to the activities of the defendant ...") (Doc. No. 13);

(5) *United States v. Donald Clark Luger*, No. 1:09-CR-00044 (DND), Plea agreement ¶ 24 ("If the defendant should fail in any way to cooperate fully, completely, and truthfully, the United States will be released from its commitments and this agreement will be null and void.");

(6) *United States v. Irka Shipping S.A.*, No. 1:10-CR-00372 (D. Md.), Plea agreement ¶ 8 (agreement to provide full and complete cooperation concerning other violations) (Doc. No. 10);

(7) *United States Y. Cecelia M. Grimes*, No. 1:08-CR-00208 (DDC), Plea agreement ¶ 4 (promise "to continue to cooperate completely, candidly, and truthfully in any investigation by the United States Attorney's Office for the District of Columbia, the United States Department of Justice, and law-enforcement agencies") (Doc. No. 6).

7

his Fifth Amendment Privilege Against Self-Incrimination at trial, which is his right to exercise. However, he cannot ask for a sentence similar to other cases in which the negotiated plea agreement required truthful cooperation.

Several of the negotiated plea agreements were to a one-count information, notwithstanding other charges that may have been filed. In these cases, based on the negotiated resolution, the defendant was able to avoid additional charges that may have applied.

Similarly, some plea agreements contained promises from the government not to file additional charges. For example, in *United States v. James V. Modica, III*, No. 3:06-CR-00169 (MDFL), one of the negotiated terms in the plea agreement was that the government agreed "not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement." *United States v. James V. Modica, III*, No. 3:06-CR-00169 (MDFL), Plea agreement, ¶ 6 (Doc. No. 8). On other cases relied upon by the defense, comparable non-prosecution terms were included in other negotiated plea agreements.[6]

---

(8)      *United States. Tommy Keyes*, No. 3:10-CR-00102 (MDFL), Plea agreement ¶ 7 (promise to provide full and truthful cooperation) (Doc. No. 22)

(9)      *United States v. Vincent B. Genovana*, No. 3:03-CR-05596 (WDWA), Plea agreement ¶ 8 (promise to provide complete and truthful cooperation) (Doc. No. 13).

[6] Non-prosecution promises were negotiated in the following plea agreements:

(1)      *United States v. Bennie Duck*, No. 5:07-CR-00028 (EDTX), Plea Agreement ¶ 7 (government agreement "not to prosecute Defendant for any additional non-tax-related charges based upon the conduct underlying and related to Defendant's plea of guilty and made known to the United States Attorney's Office prior to plea") (Doc. No. 11);

(2)      *United States v. Heogh Fleet Services A/S*, No. 3:03-CR-05765 (WDWA), Fed. R. Crim. P. 11(c)(1)(C) Plea agreement ¶ 10 (promise to dismiss remaining counts and of non-prosecution for additional offenses arising out of the charged conduct, including of any affiliated entities) (Doc. No. 29);

(3)      *United States v. Garfeld Foundation, Inc., and Opportunities Investment Associates of Greater Milwaukee*, No. 2;04-CR-00297 (ED Wis.) Plea agreement ¶ 10 (promise "not to charge Opportunities Industrialization Center of Greater Milwaukee, as an entity, with a criminal offense

Other plea agreements contained specific negotiated inducements including that the government would not request an upward departure. *See, e.g.*, *United States v. James V. Modica, III*, No. 3:06-CR-00169 (MDFL), Plea agreement, ¶ 9 (Doc. No. 8). In some cases, the sentence was the result of downward departure motions, either by the government or the defense. *See, e.g.*, *United States v. Chrís Ann Tyus*, No. 2:03-CR-00147 (MDAL) (government motion for a downward departure filed under seal) (Doc. No. 28) (plea agreement and judgment also unavailable).

The defense incorrectly claims that there are a number of "cases in which the defendants were convicted of orchestrating long-term fraudulent schemes, causing significant environmental harm, involving large monetary losses or bodily harm, and occurring after the initiation of an investigation." As already noted, these cases largely were the product of negotiated plea agreements. Defendant's Sentencing Memorandum, at 26 (Doc. No. 207). However, a brief review of some Section 1519 cases shows the opposite of the point the defense seeks to make. There are other Section 1519 cases involving other comparable charges which resulted in significant prison terms. A few are noted below:

---

for information now known by the government.") (Doc. No. 5);
(4) *United States v. Irka Shipping S.A.*, No. 1:10-CR-00372 (D. Md.), Plea agreement ¶ 10 (promise to bring other identified environmental offenses);
(5) *United States Y. Cecelia M. Grimes*, No. 1:08-CR-00208 (DDC), Plea agreement ¶ 1 (government promise not to pursue further criminal prosecution "for the conduct set forth in the attached Statement of the Offense or for any other conduct of which the Government is aware on the date that your client's guilty plea is entered") (Doc. No. 6);
(6) *United States. Tommy Keyes*, No. 3:10-CR-00102 (MDFL), Plea agreement ¶ 4 (government promise not to pursue further criminal prosecution known and "related to the conduct giving rise to the plea agreement") (Doc. No. 22);
(7) *United States v. Vincent B. Genovana*, No. 3:03-CR-05596 (WDWA), Plea agreement ¶ 10 (promise not to prosecute for additional conduct known or arising out of the investigation) (Doc. No. 13).

9

| Case | Circumstances / Notes |
|---|---|
| *United States v. Thomas Michael Gotham*, No. 3:08-cr-313 (MDFL) | • Plea agreement to a one count information charging Section 1519. *See* Doc. No. 11.<br>• Defendant used evidence eliminator to remove child pornography from his computer after being contacted by agents<br>• Sentenced to **24 months** imprisonment. *See* Doc. No. 24. |
| *United States v. Ronald E. Jarboe*, No. 3:07-cr-00116 (WDKY) | • In health care prosecution, plea agreement to Conspiracy, False Statements Relating to Health Care Matters, Section 1519, Statements or Entries, and Wire Fraud. *See* Doc. No. 59.<br>• Defendant falsely told an investigator that subpoenaed records had not been destroyed when he had caused records to be destroyed.<br>• Sentenced to **21 months** imprisonment. *See* Doc. No. 83. |
| *United States v. Jensen*, No. 07-4079, 2007 WL 2733721 (10th Cir. 2007) (unpublished opinion) | • Defendant plea agreement to Section 1519 count<br>• Corrections Center employee falsified inmate records in exchange for favors<br>• Affirming sentence of **27 months** |
| *United States v. Hyatt*, No. 08-12610, 369 Fed.Appx. 48, 2010 WL 774323 (11th Cir. 2010) | • Co-defendant sentenced to **12 months** in prison for making a false entry in a bankruptcy record ("inadvertently omitted tens of thousands of dollars in gambling winnings from bankruptcy form") in violation of Section 1519 and sufficient evidence supported the conviction |
| *United States v. Holden*, 557 F.3d 698 (6th Cir. 2009) (MDTN) | • Affirming convictions on appeal in which one defendant was convicted of false reporting under Section 1001 and of "falsifying documents with the intent to impede an investigation within the jurisdiction of the EPA" in violation of Section 1519 and received a **32 month** sentence, and a second defendant who was convicted only of false reporting was sentenced to **24 months** |
| *United States v. Geffrey Alan Yielding*, No. 4:08-cr-213 (EDARK) | • After jury convictions in a health care fraud scheme for (1) violating the healthcare anti-kickback statute and for (2) aiding and abetting falsifying a document under Sections 2 and 1519<br>• Sentenced to **78 months**, including 60 months on count one and 78 months on the Section 1519 count. *See* Doc. No. 136. |
| *United States v. Lanham*, 617 F.3d 87, 881-823, 887 (6th Cir. 2010) | • Defendants convicted at jury trial of conspiracy to violate civil rights and making a false entry in violation of 18 U.S.C. § 1519; defendants were sentenced to **180 and 168 months** which was affirmed on appeal<br>• Case also involved falsification of records in anticipation of a federal investigation and sufficient evidence supported the conviction on appeal; "Lanham also argues that there had to be an ongoing or imminent federal investigation at the time the reports were written to meet the requirements of the statute. The language in 18 U.S.C. § 1519 clearly states that |

10

| | |
|---|---|
| | the falsification could be done 'in relation to or contemplation of any' investigation or matter within United States jurisdiction. The conspiracy to harm J.S. was within the jurisdiction of the United States, and the falsification was presumably done in contemplation of an investigation that might occur.") |
| *United States v. Hoffman-Vaile*, 568 F. 3d 1335, 1340 (11th Cir. 2009) | • Affirming conviction for health care fraud, filing false claims, and obstruction of justice for altering records that had been subpoenaed by a grand jury in violation of Section 1519 and sentence for a total of **78 months** imprisonment; "The district court sentenced Dr. Hoffman-Vaile to 60 months of imprisonment for each count of fraud and false claims, to be served concurrently, and 18 months of imprisonment for the obstruction conviction." |
| *See also United States v. Rappe*, 614 F.3d 332, 333-34 (7th Cir. 2010) | • Noting the sentencing "court imposed sentences of **60 months'** imprisonment on the counts of conspiracy and destruction of property to prevent seizure, and 120 months each on the obstruction-of-justice and SORNA counts" and remanding on the SORNA sentencing |

In sum, the defendant is essentially asking this Court to give a sentence that is comparable to others even though he never entered a plea agreement; has never accepted responsibility for his conduct and put the government to its proof on all charged elements; has not agreed to provide truthful cooperation (as was required in some of the cases relied upon by the defense); and he is not a corporation. The cases relied upon by the defense are further summarized in Exhibit One.

III. <u>Conclusion And Recommended Sentence</u>

As discussed above and in the prior Sentencing Memorandum, the applicable Sentencing Guideline and Section 3553(a) sentencing factors support the requested imprisonment in this case. Based on the seriousness of the offense, including the steps taken to destroy records, the government urges the Court to impose the requested prison term in this case. Based on the foregoing, and consistent with the evidence at trial, the government respectfully requests that the

11

Court sentence the defendant to a mid-range term of eighteen months in prison, a three year term of supervised release, and a mandatory special assessment of $125.

Respectfully submitted this 10th day of November, 2010.

>WILLIAM C. KILLIAN
>United States Attorney
>
>*s/ D. Gregory Weddle*
>*s/ Mark L. Krotoski*
>*s/ Josh Goldfoot*
>D. Gregory Weddle
>Mark L. Krotoski
>Assistant United States Attorney
>800 Market Street, Suite 211
>Knoxville, TN 37902
>865-225-1710
>
>Josh Goldfoot
>Computer Crime & Intellectual
>  Property Section
>Criminal Division
>U.S. Department of Justice
>1301 New York Ave. NW
>Washington, DC  20005

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2010, a copy of the foregoing Government's Supplemental Sentencing Memorandum was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's electronic filing system.

>*s/ D. Gregory Weddle*
>D. Gregory Weddle
>Assistant United States Attorney